STATE OF WYOMING )
) ss
COUNTY OF _____ )

IN THE DISTRICT COURT

FILED
U.S. DISTRICT COURT
DISTRICT OF JUDICIAL DISTRICT

Plaintiff/Petitioner: _____ , )
(Print name of person filing)

FOIC
US department of
vs. The treasury President Joseph
App intment Biden

Civil Action Case No. 29 _____

MARGARET BOTKINS, CLERK
CHEYENNE

23-CV-241-J

Defendant/Respondent: _____ )
(Print name of other party)

Veterans Benifits Administration

---

to include
complaint

MOTION FOR 5USC sec 551(11) Reilf, The Rehabilitation Act + 1973 (Rehab Act)
Settlement Security transcations
(describe what you are requesting from the Court)

Secure the beccsings of liberty $12.9 settlement security transactions

I am the ☐ Plaintiff/Petitioner ☐ Defendant/Respondent in this action. I am requesting that: $12.9

(Describe what you would like the Court to do for you) — TYPE OR PRINT CLEARLY- Settlement Securities transfer

An extension to Prepare all documents needed Denyed A Preappointment Discrimination SOFR new York Fed charge "excessive fees") Unable to APA Administrative proceedure Act danyed access to Account Us depart of Treasury extension to be included into subpoint evidence Re antion of Claim to master Account USCC-1 June 30, 2023 to Parent Account PAC Account Amounts Outstanding in circulation
☐ Attach additional sheets of paper if needed. S1,777,389,764 2,720,775
Presented for Reedmention

My reasons are:
I am Inventor of Digital currency Vsl virtual storage layer Fusion To NON Project Intellectual Property Benificial owner seeking Regulatory Flexability Act 5USC 601 et seg. Banking Entity needs to be granted Free SEC to proforced APA Administrative Proceedure Act. Extension due to stacking on a Federal multidistrict Litigation- If Unable to Perform the exercise of duties this could impact significally the USA Economy, Risk of Government Shutdown I need Extension to Comply Merits, keeping the Value of Monthly policy at stable, Improvement Act of 2023 Job Act Exemption Capital Formation
secure the blessings of liberty
☐ Attach additional sheets of paper if needed.

DATED this 22 day of December , 20 23.

Vanessa M Medina
Signature
Printed Name: _____
Address: _____
Phone Number: _____

*Motion Form*
*Effective: July 1, 2023*
*Page 1 of 2*

Continuation of Claim to Enfoce

Enforce and Protect Act ~ Investigation 7734

Service Members Civil RelIEFACt
SCRA (50 USC Apendix §§ 501-596

5 USC § 552(h)(2)(c)                         civil liberties
                                                    EO 13636

APA paid time OFF policy

Reglatory Flexabity Act 5 USC 601 est seq "RFA")

            Evidence

**PAID TIME OFF POLICY**

"Employer" under this Policy is defined as "307 Racing Management, Inc."

**Paid Time Off/Vacation**

1. Employer provides Employees with paid time off (PTO) from work. PTO may be taken for any reason, including vacation days, sick time, or other personal time away from work. Employer encourages all Employees to use their full allotment of PTO each year, as Employees cannot carry PTO over to subsequent years of employment.

2. Full time employees eligible for company benefits are the only employees eligible to accrue PTO under the process outlined below.

3. The amount of paid time off an Employee shall be eligible for, accrues, and shall receive, increases with the length of time the Employee is employed with the Employer. Said paid time off schedule is as follows:

- Date of hire to first anniversary of employment = 5 days of PTO accrued

- First anniversary, to second anniversary of employment = 10 days of PTO accrued.

- Second anniversary, to third anniversary of employment and thereafter = 15 days of PTO accrued.

- 15 days of PTO accrual in a given benefit period is the maximum that will be allowed for all employees, regardless of how long said employee has been employed with the Company.

4. Current Employees shall be eligible for, have, and accrue PTO under the above schedule based upon their original date of hire with the Company. Accrual occurs proportionally over each month of service during each benefit period.

5. Employees may not accrue PTO during unpaid leaves of absence or other periods of inactive service unless otherwise required by federal, state, or local law.

6. Employees must request PTO from their supervisor as far in advance as possible. Employer will generally grant requests for PTO when possible, taking into consideration the needs of the business. When multiple employees request the same time off, their length of employment may determine priority in scheduling.

7. PTO is in addition to paid holidays recognized by the Employer, and may be used by the employee for any purpose.

8. PTO may not be accumulated or carried over from year to year. Any accrued but unused PTO will be forfeited at the end of the benefit period. The Employer may in its discretion allow for a PTO bank deficit in a given benefit year to accommodate Employee leave, but by doing so, does not waive the terms of this Policy in any given case.

9. Upon termination of employment for any reason employees forfeit any accrued but unused PTO.

10. This policy addresses absences for PTO, but does not include leave entitlements under state, federal or other local law applicable to the Employer.

11. Employees who abuse this policy may be subject to disciplinary action including but not limited to termination of employment.

I acknowledge that I received and read a copy of the 307 Racing Management Inc.'s Paid Time Off Policy and understand that it is my responsibility to be familiar with and abide by its terms. This Policy is not promissory and does not set terms or conditions of employment or create an employment contract.

*Vanessa Medina*
Signature

*Vanessa Medina*
Printed Name

Date

# Introduction

This toolkit has been designed for recipients of federal financial assistance from the Department of the Treasury (Department or Treasury) to assist them in operating a program or activity that meets federal nondiscrimination requirements, and decreases the potential for a discrimination complaint and a subsequent investigation by the Department.

An entity receiving any type or amount of federal financial assistance from Treasury (recipient) is required to abide by:

- Title VI of the Civil Rights Act of 1964 (Title VI), 42 U.S.C. §§ 2000d-2000d-7;
- Title IX of the Education Amendments Act of 1972 (Title IX), 20 U.S.C. §§1681-1688;
- Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. §794;
- Age Discrimination Act of 1975, 42 U.S.C. §610 et seq.; and the
- Fair Housing Act (FHA), Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601 et seq.

This toolkit is not an attempt to provide legal advice, but a guide to provide an overview of the most common civil rights compliance matters. A recipient should be prepared to handle these considerations. Although this toolkit attempts to provide guidance about several applicable requirements, additional requirements may apply. [1]

# Office of Civil Rights and Equal Employment Opportunity

The Department of the Treasury Office of Civil Rights and Equal Employment Opportunity (OCRE) develops policy and guidance to carry out the Department's equal opportunity and civil rights responsibilities, including the management of the Department's civil rights program. OCRE external civil rights staff is available to assist the Department's recipients in addressing their civil rights responsibilities.

---

[1]  There are other civil rights statutes that may apply to a particular recipient. For example, the states have to comply with Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. This list includes the statutes the Department of the Treasury has a responsibility to enforce for its recipients of financial assistance.

Veterans Benefits Administration
Department of Veterans Affairs
Washington, DC 20420

Circular 26-11-3
January 26, 2011

## SERVICEMEMBERS CIVIL RELIEF ACT

1. <u>Purpose</u>. This circular is a short reminder to servicers of several key provisions of the Servicemembers Civil Relief Act (hereafter referred to as either SCRA or the Act) and the need to establish appropriate internal controls to comply with the Act.

2. <u>General Summary</u>. This circular should not be construed as providing legal advice to veterans, servicers, or loan holders with respect to requirements of the Act. The SCRA (50 U.S.C. Appendix §§ 501-596) provides numerous protections to active duty military members and reservists, or members of the National Guard called to active duty, and, in limited situations, dependents of military members. The SCRA is intended to ease the economic and legal burdens on military personnel during their active service by postponing, suspending, or mitigating various types of obligations, including mortgage loans. The SCRA provides relief during and after active service under certain circumstances, including: restricting the maximum interest rate that may be charged on an obligation following a call to active military service; providing certain relief related to evictions; requiring court approval for a non-judicial foreclosure unless the servicemember agrees in writing to allow the foreclosure; and providing protection to a servicemember who obtained a mortgage after entering active duty, but who is not readily available (especially due to an overseas assignment) to defend him or herself against judicial proceedings.

3. <u>Enforcement of the Act</u>. The Department of Veterans Affairs (VA) is not charged with enforcement of the Act, as that is delegated to any court of competent jurisdiction of the United States or of any State. However, VA expects every servicer of VA-guaranteed loans to diligently follow all requirements of the Act to provide its benefits to all eligible borrowers. VA performs its mission of serving veterans by ensuring that they receive every opportunity to retain their home or avoid foreclosure and by intervening with the servicer on a veteran's behalf when necessary. VA advises veterans and their families to seek cooperation from their servicers in applying the protections of the SCRA whenever appropriate. VA will review servicers' compliance with the Act in its ongoing monitoring and audits of servicers. VA is not in a position to offer legal advice to veterans, servicers, or loan holders concerning requirements of the Act; however, the legal offices at military installations offer legal assistance to servicemembers.

4. <u>Servicer Guidance</u>. VA encourages loan servicers to establish controls to ensure they are in full compliance with the SCRA and that their servicing procedures encompass appropriate actions when the SCRA may be applicable, especially with respect to allowable interest rate charged and foreclosure proceedings. It has also been the longstanding policy of VA to encourage servicers to extend all reasonable forbearance in the event a borrower becomes unable to meet the terms of a VA loan. This policy is

(LOCAL REPRODUCTION AUTHORIZED)

Circular 26-11-3                                               Januar

especially appropriate when delinquencies may be the direct result of disrupt
special military actions, such as unexpected deployments causing family separa
financial burdens for active duty military members.  Financial difficulties may be e
more severe in such situations for members of the Reserves or National Guard who ma
be unexpectedly called to active duty for extended periods of time.  If it appears that
more than simple forbearance is warranted, VA regulations allow holders considerable
latitude in modifying the terms of a loan to prevent foreclosure and to help the borrower
retain and pay for his or her home.  Such modifications may include loan extension,
reamortization, and interest rate reduction refinancing to prevent and/or cure a default.

   5. <u>Questions</u>.  If you are an active duty military member or a veteran with questions
about your loan, please call our toll-free number, (877) 827-3702, to reach the nearest
trained VA Loan Technician who can counsel you about your situation.

   6. <u>Rescissions</u>:

   a. Circular 26-01-10 is rescinded immediately.

   b. This circular is rescinded January 1, 2014.

                                 By Direction of the Under Secretary for Benefits




                                 Richard Fyne, Acting Director
                                 Loan Guaranty Service




Distribution: CO: RPC 2024
SS (26A1) FLD: VBAFS, 1 each (Reproduce and distribute based on RPC 2024)




2.



# OFFICE *of* GOVERNMENT INFORMATION SERVICES

NATIONAL
ARCHIVES
*and* RECORDS
ADMINISTRATION

8601 ADELPHI ROAD

OGIS

COLLEGE PARK, MD

20740-6001

*web: www.ogis.archives.gov*
*e-mail: ogis@nara.gov*
*phone: 202-741-5770*
*toll-free: 1-877-684-6448*
*fax: 202-741-5769*



NATIONAL
ARCHIVES

March 10, 2014

President Barack Obama
White House
1600 Pennsylvania Avenue NW
Washington DC 20500

Dear Mr. President,

Congratulations on the release of the Second Open Government National Action Plan (NAP), an important part of the Obama administration's commitment to Open Government. As the Freedom of Information Act (FOIA) Ombudsman, the Office of Government Information Services (OGIS) is particularly pleased with NAP's five commitments to FOIA Modernization.

OGIS, which opened in September 2009, also is an important symbol of the Obama administration's commitment to transparency in government. We are extremely proud of all that OGIS has accomplished in our four years of operation. We have put into action Congress's novel idea—applying Alternative Dispute Resolution (ADR) techniques to an often highly adversarial process. We have assisted thousands of FOIA requesters from across the country and around the globe, along with all 15 cabinet-level departments and dozens of agencies, in resolving disputes, some of which otherwise would have led to costly litigation. We also have begun carrying out our mandate to review agency FOIA policies, procedures and compliance.

FOIA also directs OGIS to recommend policy changes to Congress and the President to improve the administration of a law that serves as a cornerstone to our democracy, 5 U.S.C. § 552(h)(2)(C). At this time, the Office has no legislative recommendation to Congress for improving FOIA. However, as we approach Sunshine Week, a national initiative to promote a dialogue about the importance of open government and freedom of information, we do recommend and respectfully ask that the White House issue a Memorandum to Agency General Counsels and Chief FOIA Officers that focuses on exemplary customer service for a better FOIA process with particular attention to the importance of embedding ADR into the FOIA process across the government.

The Openness Promotes Effectiveness in our National (OPEN) Government Act of 2007 introduced ADR to the FOIA process and directed that FOIA Public Liaisons assist in resolving disputes between FOIA requesters and Federal agencies, 5 U.S.C. §§ 552(a)(6)(B)(ii) and 552(l). All agencies should provide requesters with the name and contact information for their FOIA Public Liaisons so that requesters can contact the liaisons for assistance in resolving disputes as mandated in FOIA. Agency FOIA and ADR professionals also should work with one another in a spirit of cooperation to embed dispute resolution into the FOIA process.

President Barack Obama
March 10, 2014
Page 2 of 2

As you may know, one of OGIS's 2013 recommendations was to marry FOIA and ADR across agencies. While we have seen some unions of the two, we believe a White House Memorandum would further the goal of using ADR to prevent and resolve disputes—and in some cases, costly and preventable litigation. Such a memorandum also could remind agencies that the entire Federal workforce—from the IT professional who manages databases to any Federal employee who sends or receives email—is responsible for FOIA.

We also recommend and respectfully ask that the White House Counsel work with our parent agency, the National Archives and Records Administration (NARA), the Office of Management and Budget (OMB), and the Department of Justice (DOJ) on a program to ensure that FOIA requirements are incorporated into the information technology (IT) procurement process. For example, we suggest that when procuring new technology, upgrading existing technology, or even creating a new large agency database, agencies consult with their records managers and FOIA professionals to best determine how the records will be managed, how the agency might efficiently and effectively search for records in response to FOIA requests for the information contained in those records, and, ideally, how the agency might proactively disclose the information or data. Collaboration between the White House, OMB, DOJ and NARA can launch such a program.

These steps are simple, straightforward and low-cost, and would go a long way toward making the FOIA process work more effectively and efficiently for all—FOIA requesters and Federal agencies. Both a Memorandum to General Counsels and Chief FOIA Officers that highlights dispute resolution and FOIA, and a commitment to including FOIA requirements in the IT procurement process would illuminate the Administration's priority of making government more open and accountable, as so clearly outlined in the NAP.

I am pleased to answer any questions you may have and stand ready to assist in any way I can.

Sincerely,

Miriam Nisbet, Director
Office of Government Information Services (OGIS)



"Simple justice requires that public funds, to which all taxpayers of all races contribute, not be spent in any fashion which encourages, entrenches, subsidizes, or results in racial discrimination."
– **President John F. Kennedy**



U.S. DEPARTMENT OF STATE

Depositary Notification

Notification Reference No. 2023-015

**Treaty on Principles Governing the Activities of States in the Exploration and Use of Outer Space, Including the Moon and other Celestial Bodies**

Done at London, Moscow, and Washington on January 27, 1967

Republic of Panama:  Ratification

Date of Action:  August 9, 2023

The Secretary of State, in performance of the depositary duties of the United States of America, communicates the following:

On August 9, 2023, the Republic of Panama deposited an instrument of ratification of the Treaty on Principles Governing the Activities of States in the Exploration and Use of Outer Space, Including the Moon and other Celestial Bodies.

The Treaty entered into force for the Republic of Panama in accordance with Article XIV, paragraph 4 of the Treaty, which reads:  "For States whose instruments of ratification or accession are deposited subsequent to the entry into force of this Treaty, it shall enter into force on the date of the deposit of their instruments of ratification or accession."

Washington, August 11, 2023



**FOREWORD**

*April 2014*

We are pleased to present the 2014 Executive Order 13636 Privacy and Civil Liberties Assessments Report. On February 12, 2013, President Obama issued Executive Order 13636, *Improving Critical Infrastructure Cybersecurity* (EO) and Presidential Policy Directive 21, *Critical Infrastructure Security and Resilience* (PPD-21), directing federal departments and agencies to work together and with the private sector to strengthen the security and resilience of the Nation's critical infrastructure. The EO requires federal agencies to develop and incentivize participation in a technology-neutral cybersecurity framework, to increase the volume, timeliness, and quality of cyber threat information it shares with the private sector, and to work with their senior agency officials for privacy and civil liberties to ensure that privacy and civil liberties protections are incorporated into all of these activities.

Section 5 of the EO also requires that senior agency officials for privacy and civil liberties assess the privacy and civil liberties impacts of the activities their respective departments and agencies have undertaken pursuant to the EO, and to publish their assessments annually in a report compiled by our offices. This is the first such annual report. It includes our offices' assessments of certain DHS activities under Section 4 of the EO (enhanced threat information sharing with the private sector) as well as assessments conducted independently by the Department of the Treasury and the Departments of Defense, Justice, Commerce, Health and Human Services, Transportation, and Energy, and by the Office of the Director of National Intelligence and the General Services Administration.

As the programs and activities called for in the EO mature and evolve, departments and agencies, including DHS, will conduct additional assessments as needed and include them in future annual reports.


Megan H. Mack
Officer for Civil Rights and Civil Liberties

Karen L. Neuman
Chief Privacy Officer



# Employment Eligibility Verification
## Department of Homeland Security
U.S. Citizenship and Immigration Services

**USCIS**
**Form I-9**
OMB No.1615-0047
Expires 07/31/2026

**START HERE: Employers must ensure the form instructions are available to employees when completing this form. Employers are liable for failing to comply with the requirements for completing this form. See below and the Instructions.**

**ANTI-DISCRIMINATION NOTICE:** All employees can choose which acceptable documentation to present for Form I-9. Employers cannot ask employees for documentation to verify information in **Section 1**, or specify which acceptable documentation employees must present for **Section 2** or **Supplement B, Reverification and Rehire.** Treating employees differently based on their citizenship, immigration status, or national origin may be illegal.

**Section 1. Employee Information and Attestation:** Employees must complete and sign Section 1 of Form I-9 no later than the **first day of employment,** but not before accepting a job offer.

| Last Name (Family Name) | First Name (Given Name) | Middle Initial (if any) | Other Last Names Used (if any) |
|---|---|---|---|
| Medina | Vanessa | M | Velasquez |

| Address (Street Number and Name) | Apt. Number (if any) | City or Town | State | ZIP Code |
|---|---|---|---|---|
| 1318 W 2nd Ave unit C | | Cheyenne | WY | 82001 |

| Date of Birth (mm/dd/yyyy) | U.S. Social Security Number | Employee's Email Address | Employee's Telephone Number |
|---|---|---|---|
| 1/28/1984 | 823412168 | VSLIndustry@gmail.com | 7204160000 |

I am aware that federal law provides for imprisonment and/or fines for false statements, or the use of false documents, in connection with the completion of this form. I attest, under penalty of perjury, that this information, including my selection of the box attesting to my citizenship or immigration status, is true and correct.

Check one of the following boxes to attest to your citizenship or immigration status (See page 2 and 3 of the instructions.):

[X] 1. A citizen of the United States

[ ] 2. A noncitizen national of the United States (See Instructions.)

[ ] 3. A lawful permanent resident (Enter USCIS or A-Number.)

[ ] 4. A noncitizen (other than Item Numbers 2. and 3. above) authorized to work until (exp. date, if any) _____

If you check Item Number 4., enter one of these:

| USCIS A-Number | OR | Form I-94 Admission Number | OR | Foreign Passport Number and Country of Issuance |
|---|---|---|---|---|
| | | | | |

| Signature of Employee | Today's Date (mm/dd/yyyy) |
|---|---|
| | |

**If a preparer and/or translator assisted you in completing Section 1, that person MUST complete the Preparer and/or Translator Certification on Page 3.**

**Section 2. Employer Review and Verification:** Employers or their authorized representative must complete and sign **Section 2** within three business days after the employee's first day of employment, and must physically examine, or examine consistent with an alternative procedure authorized by the Secretary of DHS, documentation from List A OR a combination of documentation from List B and List C. Enter any additional documentation in the Additional Information box; see Instructions.

| | List A | OR | List B | AND | List C |
|---|---|---|---|---|---|
| Document Title 1 | | | | | |
| Issuing Authority | | | | | |
| Document Number (if any) | | | | | |
| Expiration Date (if any) | | | | | |
| Document Title 2 (if any) | | **Additional Information** | | | |
| Issuing Authority | | | | | |
| Document Number (if any) | | | | | |
| Expiration Date (if any) | | | | | |
| Document Title 3 (if any) | | | | | |
| Issuing Authority | | | | | |
| Document Number (if any) | | | | | |
| Expiration Date (if any) | | [ ] Check here if you used an alternative procedure authorized by DHS to examine documents. | | | |

**Certification: I attest, under penalty of perjury, that (1) I have examined the documentation presented by the above-named employee, (2) the above-listed documentation appears to be genuine and to relate to the employee named, and (3) to the best of my knowledge, the employee is authorized to work in the United States.**

| | First Day of Employment (mm/dd/yyyy): |
|---|---|

| Last Name, First Name and Title of Employer or Authorized Representative | Signature of Employer or Authorized Representative | Today's Date (mm/dd/yyyy) |
|---|---|---|
| | | |

| Employer's Business or Organization Name | Employer's Business or Organization Address, City or Town, State, ZIP Code |
|---|---|
| | |

**For reverification or rehire, complete Supplement B, Reverification and Rehire on Page 4.**

1300 Pennsylvania Avenue, NW
Washington, DC 20229



**U.S. Customs and
Border Protection**

**August 21, 2023**

EAPA Case Number 7734

**PUBLIC VERSION**

Felicia Leborgne Nowels
  On behalf of Fortress Iron, LP
Akerman LLP
201 E. Park Avenue, Suite 300
Tallahassee, FL  32301
Felicia.nowels@akerman.com

Robert E. DeFrancesco, III, Esq.
  On behalf of the Aluminum Extrusions Fair Trade Committee
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006
rdefrancesco@wiley.law

RE:    Notice of Determination as to Evasion

To the Counsel and Representatives of the Above-Referenced Entities:

After an examination of the record in Enforce and Protect Act ("EAPA") Investigation 7734,
U.S. Customs and Border Protection ("CBP") has determined there is substantial evidence that
Fortress Iron, LP, also referred to or doing business under the names Fortress Fence Products and
Fortress Building Products ("Fortress") evaded the antidumping ("AD") and countervailing duty
("CVD") orders A-570-967 and C-570-968, respectively, on aluminum extrusions from the
People's Republic of China[1] by entering into the customs territory of the United States Chinese-
origin aluminum extrusions but not declaring them as subject to those AD/CVD orders.
Specifically, the record of the investigation indicates that Fortress imported aluminum extrusion
fence components from Chinese suppliers that did not meet the requirements of the products
excluded from the aforementioned AD/CVD orders but did not declare them as subject to the
orders. As a result, no cash deposits were applied to the merchandise at the time of entry.

---

[1] *See Aluminum Extrusions From the People's Republic of China*, 76 Fed. Reg. 30,650 (May 26, 2011) ("AD
Order") and *Aluminum Extrusions From the People's Republic of China*, 76 Fed. Reg. 30,653 (May 26, 2011)
("CVD Order"), respectively (collectively, AD/CVD orders).

c) provided an analysis containing an [ sale information    ] obtained [ business entity    ] from a proxy Chinese supplier for such merchandise, and, even employing conservative assumptions (*e.g.*, no attempt to account for brokerage and handling expenses, or movement expenses incurred within the United States, or any possible markups by Fortress), that analysis supports the conclusion that the ultimate offer price by Lowe's for the Fortress product does not reflect the substantial AD/CVD duties to which shipments from the Chinese suppliers to Fortress would be subject.[8]

Furthermore, CBP confirmed that the importer entered merchandise during the EAPA period of investigation (*i.e.*, September 26, 2021, forward) as country of origin China and under an Harmonized Tariff Schedule of the United States ("HTSUS") number associated with extruded aluminum fence components covered by the scope of the AD/CVD orders and did not pay AD/CVD duties/deposits on those entries.[9]

Consequently, there was sufficient evidence to reasonably suggest that AD/CVD duties were not being paid on subject entries of aluminum extrusions from China imported by Fortress, and TRLED initiated the investigation for Fortress's imports of covered merchandise that were alleged to be entered for consumption into the customs territory of the United States through evasion, pursuant to 19 USC 1517(b)(1).

*Notice of Initiation and Interim Measures*

CBP subsequently considered whether reasonable suspicion existed that Fortress entered covered merchandise for consumption into the customs territory of the United States through evasion. At various points during 2022, both before and after the initiation of this EAPA investigation, a Center of Excellence and Expertise ("CEE") examined entry documentation for several Fortress entries of merchandise. In each instance, the documentation indicated some of the identified merchandise were aluminum fence components packaged and shipped as bulk package combinations of parts, rather than as individual "finished goods kits," which are packaged containing all types of parts that (including, for example necessary attachment items) are required to fully assemble a finished fence.[10] Further support for that conclusion resulted from physical examination of merchandise in one of those entries, and subsequent laboratory testing also confirmed the merchandise was of a grade of aluminum covered by the scope of the AD/CVD orders.[11]

Fortress did not contest that merchandise associated with the entries in question was in fact extruded aluminum fence parts, but, rather, continued to claim those parts were imported as

---

[8] *See* Initiation at 4. *See also* Supplement to Allegation at 3-4 and Exhibit 1.
[9] *See* NTAC Report documentation dated September 30, 2022.
[10] *See* Notice of Initiation of Investigation and Interim Measures: EAPA Case 7734 ("NOI"), dated January 24, 2023, at 4-6, which discusses the following Fortress entries: [ number ]9195 ("entry 9195"), [ number ]8191 ("entry 8191"), [ number ]9665 ("entry 9665"), and [ number ]0672 ("entry 0672"). "Finished goods kits" are explicitly excluded from the scope of the AD/CVD orders (*see* NOI at 4 (footnote 15), which cites the AD/CVD orders.
[11] *Id.* at 5 (narrative discussion of entry 8191, and footnote 21).

**Background**

*Allegation and Initiation*

The Aluminum Extrusions Fair Trade Committee ("AEFTC") alleged that Fortress entered Chinese-origin aluminum extrusions into the United States that are subject to the AD/CVD orders without declaring them subject to those orders or paying the required AD/CVD cash deposits,[2] and the Trade Remedy Law Enforcement Directorate ("TRLED") within CBP's Office of Trade acknowledged receipt of the properly filed EAPA allegation on September 26, 2022.[3] On October 18, 2022, based on the information in the Allegation summarized below, TRLED initiated an investigation under EAPA against Fortress.[4]

AEFTC submitted documentation reasonably available to it to substantiate its claim that Fortress imported aluminum fence merchandise from Chinese suppliers that were covered merchandise, and that Fortress's offers to downstream customers were at prices too low to reflect the substantial AD/CVD duties that would be applicable to the covered merchandise. AEFTC noted many aluminum fence products have been found to be covered by the scope of the AD/CVD orders,[5] and [ data source ] shipment information indicates Fortress was a recipient of shipments of "aluminum fence," "aluminum railing," "aluminum railing panel," and "aluminum post" products from various Chinese suppliers.[6]

Regarding pricing being too low to reflect AD/CVD duties, AEFTC:

> a) noted examples cited by an industry participant indicating a downstream U.S. customer, Lowe's Companies, Inc. ("Lowe's"), offered prices for aluminum fence components imported by Fortress that were considerably below prices offered by Lowe's for comparable merchandise from domestic supplier [ company name ], despite the substantial AD/CVD duties on Fortress products;

> b) included documentation received from a [ company name ] customer, [company name ], with the pricing of fence panels from Fortress in [ month ] 2020 priced significantly below that of a [ merchandise ] offered by [ company name ];[7] and

---

[2] *See Aluminum Extrusions from the People's Republic of China: Request for an Investigation under the Enforce and Protect Act*, submitted on May 18, 2022, but dated May 17, 2022 *("Allegation"). See also Aluminum Extrusions from the People's Republic of China: Supplement to Request for an Investigation under the Enforce and Protect Act*, submitted September 13, 2022, but dated September 12, 2022 *("Supplement to Allegation");* and two emails from AEFTC correcting a typographical error in the Supplement to Allegation that are included in a document dated September 23, 2022.
[3] *See* the email from TRLED to counsel for AEFTC dated September 26, 2022.
[4] See the October 18, 2022, Initiation of Investigation for EAPA Case Number 7734 – Fortress Iron, LP ("Initiation").
[5] *Id.* at 4. *See also* Allegation at 8-12, Exhibit 2, and Exhibits 5 through 10. We note that CBP mistakenly referenced in Initiation that Exhibits 5 through 13 contain Commerce scope rulings covering aluminum fence products, when it was only Exhibits 5 through 10 that directly relate to such products.
[6] *See* Initiation at 4. *See also* Allegation at 7-8 and Exhibit 2.
[7] *See* Initiation at 4. *See also* Allegation at 12-14 and Exhibit 2.

"finished goods kits" and, therefore, specifically excluded from AD/CVD orders.[12]  However, the CEE's analysis of the entry documentation had confirmed that the merchandise was not being entered as "finished goods kits," but rather separately as fence parts, which would make the extruded aluminum fence merchandise subject to the AD/CVD orders.  Furthermore, that conclusion was further supported by additional information obtained from the importer in a CF28 response.  Specifically, an exhibit in the CF28 response for one of the entries contains a Fortress purchase order for products purchased from the Chinese supplier that contains three-line items with item numbers that match the model numbers on Lowe's website pages for individual Fortress fence component parts offered for sale by Lowe's.  In other words, Lowe's appears to be selling Fortress aluminum fence component parts, and those parts are the same model of parts that Fortress had ordered from and received from a Chinese supplier.[13]

Based on the record evidence referenced in the Initiation and the additional information discussed in the NOI, CBP determined that reasonable suspicion exists that Fortress entered covered merchandise for consumption into the customs territory of the United States through evasion, and such covered merchandise should have been subject to the applicable AD and CVD duties on aluminum extrusions from China.  Therefore, CBP imposed interim measures on Fortress's imports of aluminum extrusions from China into the United States pursuant to this investigation.[14]

*Requests for Information*

After the issuance of the NOI and implementation of interim measures, CBP, pursuant to 19 CFR 165.23, sent Requests for Information ("RFIs") to Fortress and to three of its major suppliers in [ location ] ([            company name                        ] ("Supplier One"), [       company name          ] ("Supplier Two"), and [      company name        ] ("Supplier Three")).[15]

---

[12] *Id.* at 5 (narrative discussion and footnote 23), citing to a November 14, 2022, letter submitted by Fortress. The scope language for the AD/CVD orders "excludes finished goods containing aluminum extrusions that are entered unassembled in a 'finished goods kit.'"  *See* the AD/CVD orders referenced above.  The scope states the following regarding what constitutes a "finished good kit":

> A finished goods kit is understood to mean a packaged combination of
> parts that contains, at the time of importation, all of the necessary parts to fully
> assemble a final finished good and requires no further finishing or fabrication, such
> as cutting or punching, and is assembled "as is" into a finished product. An
> imported product will not be considered a "finished goods kit" and therefore
> excluded from the scope of the Order merely by including fasteners such as screws,
> bolts, *etc.* in the packaging with an aluminum extrusion product."

*See* the AD/CVD orders.
[13] *See* NOI at 5 (narrative and footnote 29), citing Exhibit A of Fortress's December 6, 2022, CF28 response for entry 0672 and a CEE document dated December 8, 2022, containing Lowe's website screenshots.  Please note that footnote 29 of the NOI a) incorrectly refers to the CF28 response date as December 7, 2022, but the CF28 response was in fact dated December 6, 2022, as indicated in footnote 24 of the NOI; and b) incorrectly refers to the Lowe's website screenshots as dated December 7, 2022, when they are in fact dated December 8, 2022.
[14] *Id.* at 7.  *See also* 19 USC 1517(e); *see also* 19 CFR 165.24.
[15] Supplier Two indicated in its RFI response, which is referenced below, that [     company name     ] was its previous name, and that it is now known as [      company name           ].

Fortress submitted its responses to its January 31, 2023, RFI on February 8, 2023 ("Fortress February 8 RFI"), March 3, 2023 ("Fortress March 3 RFI response"), and March 6, 2023 ("Fortress March 6 RFI response"). CBP requested additional information from Fortress relating to the Fortress February 8 RFI response, which Fortress submitted on February 16, 2023 ("Fortress February 16 Supp RFI response"). CBP issued another supplemental RFI to Fortress, and Fortress submitted its response on April 4, 2023 ("Fortress April 4 Supp RFI response"). CBP issued an additional supplemental RFI to Fortress, and Fortress submitted its response on April 27, 2023 ("Fortress April 27 Supp RFI response").

Supplier One and Supplier Two each submitted their initial responses to their respective February 9, 2023, RFIs on March 13, 2023, and Supplier Three submitted its initial response to its February 17, 2023, RFI on March 21, 2023. Despite each of the suppliers having been given multiple deadline extensions, each of their RFI responses were missing requested information and public summaries of bracketed and redacted information. Consequently, on March 22, 2023, CBP rejected each of those supplier RFI responses, giving each party additional time to resubmit adequate responses, and noting this was their last opportunity to do so. On April 4, 2023, Supplier Two submitted its revised RFI response ("Supplier Two RFI response"). On April 5, 2023, Supplier One submitted its revised RFI response ("Supplier One RFI response"). On April 6, 2023, Supplier Three submitted its revised RFI response ("Supplier Three RFI response").

CBP issued a supplemental RFI to Supplier One, which submitted responses to that RFI on May 4, 2023 ("Supplier One May 4 Supp RFI response") and May 8, 2023 ("Supplier One May 8 Supp RFI response"). On May 18, 2023, Fortress submitted rebuttal information in response to Supplier One May 8 Supp RFI response ("Fortress Supplier One Rebuttal Info").

*Importer New Factual Information and Alleger Rebuttal Information*

On May 8, 2023, Fortress made a voluntary submission of factual information ("Fortress NFI").[16] On May 18, 2023, AEFTC submitted rebuttal information in response to the Fortress NFI submission ("AEFTC Rebuttal Info").

*Written Argument and Rebuttal to Written Argument*

On May 26, 2023, following a request from Fortress that the deadline for written arguments be extended, TRLED extended the deadline for written arguments from parties to the investigation to June 15, 2023, and extended the deadline for responses to written arguments from parties to the investigation to June 30, 2023.[17] On June 15, 2023, Fortress submitted written arguments,[18] and on June 30, 2023, AEFTC submitted response to written arguments.[19]

---

[16] On May 9, 2023, Fortress requested that CBP accept additional new factual information for the record, but CBP rejected that information as untimely. *See* May 10, 2023, email to counsel for Fortress.

[17] *See* May 26, 2023, email to counsel for Fortress and AEFTC.

[18] *See* Fortress Iron, LP Written Arguments, dated June 15, 2023 ("Fortress Written Arguments").

[19] *See* Aluminum Extrusions from the People's Republic of China: Response to Written Arguments, dated June 30, 2023 ("AEFTC Response to Written Arguments"). Note that page references to AEFTC Response to Written Arguments are to the page number of the written arguments section of the submission, not the page number of the overall PDF document within which that section appears.

**Analysis**

Under 19 USC 1517(c)(1)(A), to reach a determination as to evasion, CBP must "make a determination, based on substantial evidence, with respect to whether such covered merchandise entered into the customs territory of the United States through evasion." Evasion is defined as "the entry of covered merchandise into the customs territory of the United States for consumption by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping Sor countervailing duties being reduced or not being applied with respect to the merchandise."[20] As discussed below, the record of this investigation contains substantial evidence supporting a determination that covered merchandise entered the United States through evasion, resulting in the avoidance of applicable AD/CVD deposits or other security.

*"Finished Goods Kits" Exclusion Claim*

Fortress has not argued that the entries that CBP identified as subject to this EAPA investigation did not contain aluminum extrusions. Rather, as discussed below, Fortress has claimed that such extruded aluminum fence parts imported during the period of investigation are not covered by the scope of the AD/CVD orders because they are part of "finished goods kits," and such "finished goods kits" are explicitly excluded from the AD/CVD orders. As noted above, "finished goods kits" are specifically excluded from the scope of the AD/CVD orders on aluminum extrusions.[21] However, the mere presence of an assortment of parts/components and associated items is not sufficient for the merchandise to be classified as a "finished goods kit" that would exclude it from the scope of the applicable AD/CVD orders.[22]

<u>"Finished Goods Kits" Analysis</u>

CBP finds that Fortress imported aluminum extrusion fence merchandise that was not entered as part of a "finished goods kit." The merchandise in the POI entries examined by CBP are not

---

[20] *See* 19 CFR 165.1.
[21] The scope language for the AD/CVD orders "excludes finished goods containing aluminum extrusions that are entered unassembled in a 'finished goods kit.'" *See* the AD/CVD orders referenced above. The scope states the following regarding what constitutes a "finished good kit":

> A finished goods kit is understood to mean a packaged combination of
> parts that contains, at the time of importation, all of the necessary parts to fully
> assemble a final finished good and requires no further finishing or fabrication, such
> as cutting or punching, and is assembled "as is" into a finished product. An
> imported product will not be considered a "finished goods kit" and therefore
> excluded from the scope of the Order merely by including fasteners such as screws,
> bolts, *etc.* in the packaging with an aluminum extrusion product."

*See* the AD/CVD orders.
[22] *See* the AD/CVD orders, specifically the "finished goods kit" exclusion language in the scope indicating "{a}n imported product will not be considered a 'finished goods kit' and therefore excluded from the scope of the Order merely by including fasteners such as screws, bolts, *etc.* in the packaging with an aluminum extrusion product."

"finished goods kits" based on the simple language of the scope exclusion. First, if a specific entry were to contain a "finished goods kit" or multiple "finished goods kits," the number of such kits should be evident from the documentation associated with the entry.[23] However, the documentation associated with the entries not only make no references to a specified number of kits of any kind, but they also do not make references to any type of kit or other specifically identified collection of all the parts necessary to fully assemble an imported product into a fence. The key to determining whether imported merchandise is excluded from the order as kits is how the merchandise is entered into the United States, as well as if the parts/components are capable of being assembled into a fence without further processing such as cutting or punching. in an entry are capable of being divvied up into complete "kits" after entry. As discussed below, while it is conceivable that some entries might have contained an adequate assortment of items that could later be divvied up into a "kit" or "kits" from which a fence could be constructed, they were not entered into the United States as "kits" of any kind, and, furthermore, the record indicates various Fortress fence parts require further processing, including cutting and drilling, during the fence assembly process, which is not consistent with the requirements of a "finished goods kit" as described by the scope exclusion[24]

The information submitted by Fortress demonstrates that its merchandise was not imported as kits. Fortress states in its RFI submission that "[    description of business practice

]."[25]  That document refers to individual items, with no reference to the word "system," and no reference to the word "kit" or "kits" where it would refer to the necessary range of parts/components/fasteners fully required to construct a complete fence.[26] This is consistent with CBP's conclusion in its NOI regarding the individual entries examined by CBP during 2022 that the items imported did not constitute "finished goods kits."[27]

In response to CBP's request that Fortress "provide all catalogs and brochures" that Fortress and its affiliates issued covering the merchandise in question it sold in the United States, as well as

---

[23] The language of the finished goods kit exclusion references certain basic requirements of such a kit, as noted above, including most obviously that a "finished goods kit" be identifiable as "*an imported product*" (emphasis added). Commerce noted in its July 22, 2014 Dynasty Final Scope Ruling, finding certain aluminum fence merchandise to not constitute "finished goods kits," that "{w}hile Dynasty states that only the labeling and packaging of the products need to be modified to be considered a complete fence system, we find that the invoice provided merely lists the fence parts included in the shipment; there is no clear evidence that the shipment contained all of the parts necessary to fully assemble a complete fence system, *or that the parts comprised a specified number of complete fence systems.*" *See* Allegation at Exhibit 5 (Dynasty Final Scope Ruling) at page 13 (emphasis added).
[24] There is additional evidence the products entered were not entered as "finished goods kits" but, rather, as individual parts/components. The individual parts and components are consistently itemized and priced in entry-related documentation (*e.g.*, invoices) individually, by part/component. Also, to the extent that the disposition of the merchandise after entry might shed some light on how the merchandise was imported, as noted in the NOI Lowe's was offering individual Fortress fence parts for sale, and there is no indication in documentation examined on the record that Fortress's U.S. customers either ordered or received the imported merchandise in the form of kits of any kind, even in instances where they ordered parts/components designed for the same fencing system brand (*e.g.*, Athens).
[25] *See* Fortress March 6 RFI response at 6, referencing Exhibit III.12.
[26] *Id.* at Exhibit III.12. The word kit [    description of company documentation    ], but not in reference to any overall combination of items that would be required as part of a "finished goods kit."
[27] *See* NOI at 6.

copies of "internet-based advertising" used by Fortress and its affiliates referencing such merchandise, Fortress provided a "composite" of such information in an exhibit consisting of 462 pages (including exhibit cover page).[28]  That exhibit contains many brochures for different Fortress aluminum fence systems, such as Athens Residential, Athens A2 Commercial, AL13 Home, *etc.*, including assembly instructions for assembly.  Interspersed between such brochures are additional pages relating to design, testing, safety, and other aspects of the Fortress fence products.[29]  "Finished goods kits," as defined by the AD/CVD orders scope exclusion, cannot contain parts that require further processing such as cutting or punching, and multiple Fortress brochures identify saws and/or drills as required equipment for fence/railing assembly.[30]  Some of the assembly instructions in the brochures make references to cutting and drilling when "necessary," "required," or when "recommended,"[31] and numerous other references to cutting and drilling in product brochure pages contain no such qualifications.[32]  Saws and drills are identified as required for assembly because it is evident that assembling the fencing and railing do necessitate cutting and drilling (akin to "punching") of individual parts.

In response to a request that it explain its "financial accounting practices regarding the valuation methodologies for raw materials, work-in-process, finished goods inventories, and cost of goods sold," Fortress stated that it "[                    description of business practice

].”[33]  Based on entry-specific documentation, Fortress ordered individual items in bulk, not kits.  Fortress provided no documentation indicating it inventoried any purchases as "kits" or under other such terminology referring to a consolidated grouping of parts and other components necessary for the construction of a complete fence, as opposed to individual items such as specific aluminum extrusion fence parts.

When it comes to Fortress's own sales, evidence on the record indicates that Fortress sold merchandise that it had imported to U.S. customers as individual parts, not as "finished goods kits."  The documents referring to Fortress's transactions with its customers identifies individual items, with individual valuations for each item, and separately measured volume for the quantities of each item, with no references to "kit" or "kits" or other such terminology.[34]

---

[28] *See* Fortress March 3 RFI response at 45, referencing Exhibit IV.6.  This compares to two pages of brochure pages provided with the 2014 CF29 information.  *See* November 14, 2022, Fortress Letter, at Exhibit C (and within that exhibit, the January 24, 2014, Akerman firm letter on behalf of Fortress to CBP concerning CF29 action, at the first two pages of Exhibit E after the cover page).  Those two pages contain very little information regarding the merchandise, and no references to instructions regarding assembly of fence products.  *Id.*
[29] *See* Fortress March 3 RFI response at Exhibit IV.6.
[30] *Id.* at Exhibit IV.6, pages 7, 71, 127, 157, 199, 220, 268, 309, and 439 (saw), and pages 71, 127, 157, 199, 214, 220, 268, 309, and 439 (drill).
[31] *See e.g.* Fortress March 3 RFI response at Exhibit IV.6, pages 77 and 79.
[32] *See e.g.* Fortress March 3 RFI response at Exhibit IV.6 pages 7, 9, 10, 70, 73, 75, 109, 116, 118, 122, 123, 126, 135, 136, 137, 149, 156, 161, 166, 170, 173, 177, 179, 186, 219, 224, 229, 236, 243, 266, 275, 276, 284, 289, 295, 296, 302, 304, 440, and 442 (cutting), and pages 10, 70, 80, 83, 85, 109, 115, 126, 130, 132, 134, 156, 164, 165, 174, 175, 184, 187, 188, 201, 202, 219, 227, 234, 241, 244, 267, 271, 273, 279, 284, 288, 294, 299, 305, 306, and 443 (drilling).
[33] *See* Fortress March 3 RFI response at 25.
[34] *See* Fortress March 6 RFI response, Fortress April 4 Supp RFI response, and Fortress April 27 RFI response at various entry-specific exhibits.  *See also* the references in the NOI to additional entries examined by CBP.

Regardless of how Fortress sold merchandise, the issue at hand is how the merchandise was imported, and Fortress repeatedly claims that it is importing "finished goods kits" rather than individual parts/components/fasteners. For example, Fortress has indicated that:

a) its imports of the aluminum extrusion fence products are outside the scope of the AD/CVD orders because they constitute "finished goods kits, and that it received guidance in 2014 from CBP that its "fence systems" were excluded because they constituted finished goods kits and were not subject to AD/CVD duties;[35]

b) its imports of the aluminum extrusion fence products are imported as "finished fence systems," and that "the {Chinese} manufacturer also date stamps each product, and packages and labels the finished fence systems for shipment, which are included and the panels along with all other parts necessary for a finished fence system are prepared for shipping."[36]

c) it purchases "[ description of merchandise ]" from "[    description of sellers              ]."[37]

d) a specific entry contained "[description of merchandise]."[38]

Fortress argues that CBP has in the past determined that its products are finished goods kits and are not subject to the Orders. Fortress points to a CF29 action from 2014 it attached to a November 14, 2022, letter directed to the Center that states "{t}he fence in its imported condition is a system kit with all parts necessary and no additional work needed for assembly," and that "{t}his would exclude the fencing from AD/CVD."[39] That exhibit contains additional information that presumably relates to the four entries under examination at the time.[40] However, even if some of the information for those entries was comparable to that for POI entries, the 2014 CF29 merchandise can be distinguished from POI merchandise, as discussed below, and in any case, the results of a CF29 action are only binding on the entries covered by that action.[41] The packing lists for the POI entries examined by CBP indicate that at the time of importation, they were packaged as bulk shipments of individual parts and other components. Those parts and components may be designated for use under standardized fence systems, such

---

[35] *See* NOI at 6 (narrative and footnote 23), citing a document dated November 14, 2022, Fortress Letter.

[36] *Id.* at 6 (narrative and footnotes 25 and 27), citing the narratives of the December 6, 2022, CF28 responses for two entries.

[37] *See* Fortress March 3 RFI response at 12.

[38] *See* Fortress March 6 RFI response at 8, in reference to entry 7988.

[39] *See* November 14, 2022, Fortress Letter, at Exhibit C.

[40] *Id.* The shipment documentation included in the exhibit, however, appears to pertain to just one of the entries. We note that narrative in Exhibit C refers to the merchandise in question as "fencing" and some documentation (*e.g.*, product brochure pages) refer specifically to "railing." *Id.* In this final determination, we refer to terms "fence" and "fencing" even where those terms encompass products that may have been identified as "railing." The products are similar enough in terms of their production and properties, with regard to the issue of coverage under the AD/CVD orders. Also, as noted above, the Allegation and the Initiation included references to merchandise identified as "aluminum railing," as did the NOI (*see* NOI at 3). Fortress frequently refers to railing and rail parts as akin to fencing and fence parts. *See e.g.* Fortress Written Arguments at 36 ("...the instruction manual for the Athens fence line states that installation requires posts, rails, and Poly-Loc Clips").

[41] *See* 19 USC 1625 ("Within 90 days after the date of issuance of any interpretive ruling (including any ruling letter, or internal advice memorandum) or protest review decision under this chapter with respect to any customs transaction, the Secretary shall have such ruling or decision published in the Customs Bulletin or shall otherwise make such ruling or decision available for public inspection.") A CF29 action cannot be considered an interpretive ruling if it is not subject to being made available for public inspection, as it is only visible to the party involved and CBP.

as Fortress's Athens brand fence system, but they were not entered as an individual kit, nor does the documentation mention any specific "kits" at all.

In Fortress April 4 Supp RFI response, Fortress provided an additional discussion of its aluminum fence sales and imports in the context of the "finished goods kits" issue. Fortress stated it "offers lines of aluminum fencing that, as demonstrated on its website, is finished fencing, ready to install, and requires no further processing." Fortress states that "[

       description of business practice                                             ], and that "[

                     description of business practice

].\"[42] However, customers can buy individual parts, as is clear from the Lowe's website referenced in the NOI.[43] As noted by AEFTC, Fortress's representations to customers that its individual parts are "made to be used with...compatible components (sold separately)" is an admission that such parts/components are being offered and sold separately, not as parts of kits.[44]

Fortress refers to an exhibit in its April 4 Supp RFI response that it claims is "[

                 description of company documentation

].\"[45] Also, Fortress refers to the CF29 issued by CBP in 2014, which in its conclusion only states "{t}he fence in its imported condition is a system kit with all parts necessary and no additional work needed for assembly," and that "{t}his would exclude the fencing from AD/CVD." Fortress claims this "[

                       description of business practice

].\"[46] As discussed above, however, the parts and components are imported in bulk, and itemized individually on packing lists and invoices, regardless of whether one might be able to assemble a finished fence or fences from the parts and other components that happened to be present in an entry.

Finally, in that April 4 Supp RFI response, Fortress stated that "[   description of business practice ]," that "[   description of business practice ]," and that "[   description of business practice

].\"[47] Whether or not [ reference to entities ] manufactures [ reference to merchandise ] for a [ description of merchandise ] the Athens product line, that has no bearing on how the

---

[42] *See* Fortress April 4 Supp RFI response at 2-3.

[43] *See* NOI at 6. Note that [  reference to business activity  ] during the POI, over [ value ] of which Fortress characterized as [ aspect of merchandise ]. *See* Fortress March 6 RFI response at Exhibit IV.10.

[44] *See* AEFTC Rebuttal Info at 2-3, citing Fortress NFI at 8. Although what is relevant is how the merchandise was imported by Fortress, not how it was delivered to or used by Fortress's U.S. customers (who in many instances were themselves resellers such as [company]), if aluminum extrusion fence merchandise were being offered by Fortress or its U.S. customers to other customers as individual parts/components, that would suggest they were entered into the United States as individual parts/components, rather than entered as "finished goods kits" and then disaggregated into individual parts/components.

[45] *See* Fortress April 4 Supp RFI response at 2-3, citing Exhibit 1.

[46] *Id.* at 3.

[47] *Id.* at 5.

merchandise is entered into the United States in a specific entry.  And as noted, the products that are shipped and entered are parts and components that are separately itemized and priced, and while they are designed for particular brand (*e.g.*, Athens) fence systems, they are not entered as "finished goods kits" as defined by the scope of the AD/CVD orders. merchandise entered are not complete "systems" or "kits" such that complete combination of parts/components might qualify as a "finished goods kit."[48]

In its April 27 Supp RFI response, Fortress stated, with regard to its sales related to several entries of merchandise from its suppliers, that Fortress's "[          business practice          ]," and that "[

business practice                                    ].[49]  However, the purchase orders and invoices for such products contain no reference to kits or otherwise specifically-identified groupings of products/components, but, rather, list individually itemized and priced parts and components.[50]  For one entry discussed in that response, Fortress states the merchandise imported represents a "[

description of merchandise

].["  In these latter situations, Fortress states it "[          business practice                    ]," that "[          aspect of business practice

].["[51]  Like Fortress's other examined POI entries, however, the documentation for this entry contains no evidence of any specific "kits" being entered, as opposed to assortments of individual parts/components, and as noted elsewhere, additional cutting and drilling is performed during the final fence assembly process for Fortress's fence systems.

In its voluntary submission of new factual information, Fortress reiterated points regarding CBP's 2014 CF29, which it stated followed various exchanges between Fortress and CBP referenced in the November 14, 2022 Letter.[52]  Fortress stated that "CBP provided a written determination that Fortress's merchandise (aluminum fencing comprised of panels, gates, posts, caps, *i.e.*, all the parts necessary to fully assemble a finished fence system and required no further fabrication) were finished goods kits that were excluded from the scope of the {AD/CVD} Orders," and claims that "[          comparison of business practices

---

[48] Note that Commerce's July 22, 2014 final Dynasty Scope Ruling, involving aluminum fence parts and the AD/CVD orders in question, referenced another such scope ruling, Commerce's December 13, 2014 Final Origin Scope Ruling, as citing the fact "that each product is shipped in separate boxes, and each separately itemized on the invoice" as among the reasons for its ruling finding the merchandise to not quality as a finished goods kit and to be covered by the scope of the orders. *See* Allegation at Exhibit 5.  Also, as noted above, some of the parts entered by Fortress require further processing (*e.g.*, cutting and/or drilling) before they can be used to assemble a fence.
[49] *See e.g.* Fortress April 27 Supp RFI response at 4, referencing entry 5082.
[50] See *e.g.* Fortress March 6 RFI response at Exhibit IV.8, for entry 5082.
[51] *See* Fortress April 27 Supp RFI response at 9-10.
[52] *See* Fortress NFI at 1-2.  Fortress also claims CBP should correct its description of the November 14, 2022, memorandum that appears in the TRLED memorandum of December 27, 2022, memorandum to the file, to make it clear that November 14, 2022, was correspondence between Fortress's counsel and Fortress. *Id.* at 2-3.  However, as noted above, TRLED already provided a clarification, the Memorandum to the File, dated February 10, 2023.

].["53] The 2014 CF29 action has no specific precedential value for the POI entries, but in any case, the 2014 CF29 entries can be distinguished from the POI entries. While the 2014 CF29 action concluded the merchandise under examination in each entry in question met the requirements of "finished goods kits" as defined by the scope exclusion language, that is not the case for the POI entries examined by CBP as, for example, the product brochure information provided by Fortress in this investigation indicates that parts require cutting and/or drilling during the fence assembly process.

Elsewhere in the voluntary submission of new factual information, Fortress continues to claim that it imports "finished goods kits," but these claims are followed by references to Fortress's *sales*, rather than its *imports*.[54] Later in the same paragraph, Fortress returns to discussing entries, claiming that "{a}s imported, the entire finished fence system kit is included in the container upon import."[55] However, nowhere on the record has Fortress demonstrated that any of its entries, as *imported*, constituted "an entire finished system kit," or any type of "kit", for that matter, and even if a specific fence or multiple number of fences could be assembled from the parts and other components in an entry, that would not demonstrate a container containing all such items constitutes a container of a "kit" or "kits."[56]

Fortress also claims that the way it "[ business practice ]" its imported aluminum extrusions distinguishes it from others "in the industry," which "import fence products as individual aluminum components or extrusions rather than systems."[57] Even assuming that Fortress directs how the items are to be loaded in specific containers, it is not evident, from the POI entries analyzed in this investigation, that each entry contains all the parts necessary to assemble a specific fence. But even if it were assumed that they were, it is evident from Fortress's own statements that the items are not imported as specific, individual "finished goods kits." Fortress states that it "[                          business practice                          ]."[58] Fortress's entry-specific documentation consistently identifies individual parts/components referenced in bulk, not as "kits" or "systems," which, even assuming everything is necessary for construction of a fence or fences, may apply to an indeterminable number of ultimately assembled fences. However, if actual kits are being imported, they should be distinguished from each other, and their overall number identified in the entry documentation. But that is not the case here. Furthermore, given various Fortress parts require additional cutting and/or drilling during the fence assembly process, the imported merchandise cannot qualify for the "finished goods kits" scope exclusion even if it had been imported in some form of "kit".

---

[53] *See* Fortress NFI at 2.

[54] *Id.* at 4.

[55] *Id.*

[56] Later in the submission, Fortress claims CBP erred in its statement in the NOI regarding Entry 9665 and Entry 0672 that there was only one reference to "kits" in the narrative portions of the CF28 responses for those entries (*see* Fortress NFI at 7), which CBP noted was only a description of what Fortress stated it sells in the U.S. market (*see* NOI at 6). Fortress claims there was another reference to "kits," but it is just another reference to "fence systems" which it states it sells in the U.S. market. *See* Fortress NFI at 7. The fence systems Fortress describes are standardized products, such as the Athens brand, where individual pieces of that brand are to be used together. The importation of specific parts of a particular brand does not make that importation a "kit", let alone a "finished goods kit."

[57] *See* Fortress NFI at 6.

[58] *Id.* at 6 (emphasis in the original).

Finally, in its NFI submission, Fortress alludes to CBP's reference in its NOI of a specific imported part model to a specific part model offered by Lowe's on its website for sale. Rather than acknowledging that this is evidence consistent with the conclusion that Fortress imports individual fence parts, or proposing some other explanation why Lowe's offers individual Fortress fence parts for sale, Fortress repeats that Fortress "imports all the parts necessary to install a finished fence system" and discusses how it warns customers about mixing Fortress and non-Fortress parts when constructing a fence. Fortress notes that the Lowe's website indicates that "the product description for the Athens Square Fence Post expresses that it is to be used with the coordinating Fortress products."[59] This does not address the issue of what Fortress was importing in specific entries, and it constitutes additional evidence that what is meant by Fortress "fence systems" are standardized sets of parts that are marketed under a specific brand name (*e.g.*, Athens) that may be purchased individually and used together, rather than individual "finished goods kits" that each contain all the necessary parts/components to assemble a particular fence without additional processing such as cutting or drilling.

*Undervaluation of Entries*

During this investigation, it was discovered that Fortress had undervalued various entries. During its review of sales documents in the Supplier One RFI response, CBP noted invoices with [ business practice ].[60] Supplier One indicated in a later response that [ aspect of business practice ].[61] Supplier One later submitted a chart with purchase orders with shipments with loading dates dated [ date ] through [ date ] that contained [ business practice ]. The [ business practice ] in the chart totaled approximately $[ # ] thousand, including some shipments with loading dates prior to the POI.[62] In its NFI submission, Fortress identified [ details of business practice ] containing such [ business practice ], with invoice dates [ time period ].[63] Fortress later referenced two of the purchase orders identified by Supplier One that involved shipments that "were loaded outside the POI."[64] Regardless of the specific loading dates for a few of the purchase orders, it is evident that [ business practice ] were not reported to CBP at the time of entry for various POI entries, which represents an undervaluation of the entered value of such entries.

*Misidentification of Suppliers*

Fortress misidentified the [ company reference ] information on many of its entries.[65] Fortress blames [ entities ] for these mistakes, and appears to suggest that they resulted from "[ general description of mistakes ]," such as "[ example of mistakes ],"[66]

---

[59] *Id.* at 8, citing Exhibit V.1.
[60] *See* Supplier One RFI response at Exhibit 7 (pages 3, 5, and 7), Exhibit 8 (page 4), Exhibit 9 (page 3), and Exhibit 10 (page 3). For each of these exhibits, the cover page is considered page 1.
[61] *See* Supplier One May 4 Supp RFI response at 3-6 and Exhibits 1 and 2. *See also* Supplier One May 8 Supp RFI response in general.
[62] *See* Supplier One May 8 Supp RFI response at Exhibit 3.
[63] *See* Fortress NFI at 10 and Exhibit VII.1.
[64] *See* Fortress Supplier One Rebuttal Info at 9.
[65] *See* Fortress February 8 RFI response and Fortress February 16 RFI response.
[66] *See* Fortress February 16 RFI response at 9-10.

but the differences between [company reference] identified in entries and what Fortress during this EAPA investigation acknowledged were actual [ company reference ] are more substantial than "[ general description of mistakes ]" such as "[ example of mistakes ]."[67]

*Other IORs*

CBP is applying the final determination of evasion to the following in addition to Fortress:
[                          company names
        ] as Fortress indicated that all were "[        business activity
                              ]."[68]

*Summary of Extent of Evasion*

CBP finds that Fortress imported subject extruded aluminum fence merchandise into the United States through evasion. The record evidence does not support a finding they entered as part of "finished goods kits," but, rather, as aluminum extrusion fence merchandise subject to the AD/CVD orders. In addition to misclassifying entries as non-subject, Fortress magnified the extent of evasion by undervaluing some of that merchandise.

**Fortress Written Arguments and AEFTC Response to Written Arguments**

In summary, Fortress divides its arguments into three prongs: first, that the record demonstrates there was no evasion because the imported merchandise in question was excluded from the AD/CVD orders and no material and false statement or omission was made by Fortress; second, that CBP's imposition of interim duties is not supported by the record because the imported merchandise is outside the scope of the order and because Fortress properly relied on a CBP decision finding it had been importing excluded "finished goods kits"; and third, because no application of adverse inferences is warranted.[69]

CBP does not conclude that adverse inferences are warranted, and therefore does not further address the third prong of Fortress's argument. As for the second prong, CBP has addressed the issues relating to the scope of the AD/CVD orders and the 2014 CF29 action in the analysis section above.

Turning to the first prong of Fortress's arguments, Fortress references the statutory requirement for a finding of evasion, arguing that "{t}he record demonstrates that there was no evasion as defined by EAPA because the merchandise was excluded from the scope of the orders and no material and false statement or omission was made by Fortress."[70] Fortress argues that it was

---

[67] *See* Fortress February 16 RFI response at 6-9. For example, the [company reference] originally identified as [ company name ] was clarified in Fortress's response to instead involve, "[
                    company names
                                ]." *Id.* at 7.
[68] *See* Fortress March 3 RFI response at 10. Note that the first entity in this list has [
        reference to aspect of particular company name                    ] for Fortress Iron, LP.
[69] *See* Fortress Written Arguments at 2 ("Table of Contents"), at 18-20 ("Summary of Arguments"), at 20-46 generally ("Arguments"), and at 46-47 ("Conclusion and Request").
[70] *See e.g.* Fortress Written Arguments at Table of Contents.

reasonably relying on CBP's 2014 CF29 finding when reporting its later entries of aluminum extrusion fence merchandise.

Fortress argues that that extruded aluminum fence products it imported during the POI, when not [category of merchandise], were entered as "finished goods kits" and therefore do not constitute covered merchandise. As discussed in the analysis above, CBP has determined that Fortress imported aluminum extrusions were not entered as finished goods kits.

Next, Fortress claims CBP cannot use this EAPA investigation to argue aluminum fence system kits were meant to be covered by the scope of the AD/CVD orders, because "the petitioner {in the underlying Commerce AD/CVD investigations} intended to exclude aluminum fencing systems in kit form, and the Department of Commerce unequivocally agreed, explicitly determining that unassembled fence kits containing aluminum extrusions that contained all the components for the finished product are excluded from the scope."[71] CBP notes that "finished goods kits," as defined in the scope of the AD/CVD orders, were excluded from the scope, and CBP does not claim that "finished goods kits" should now be covered by the scope of the orders. However, as discussed in the analysis above, what Fortress characterizes as POI entries of "finished goods kits" do not meet the requirements of such merchandise, as defined by the scope of the AD/CVD orders.

Fortress also discusses several CBP and Commerce rulings regarding the "wide variety of kit forms."[72] Fortress notes that "CBP considered an aircraft imported in three kits containing approximately 750 parts, with a wingspan of 22 feet, to be imported in 'kit form' despite the one plane being imported in three kits."[73] This ruling pre-dated the AD/CVD orders in question by over one decade, but putting that aside, the ruling refers to a "kit form" for a single aircraft constituted by three distinct "kits."[74] The entries by Fortress, in contrast, contain no reference to any kits of any type, and no way to define how many "kits" of any form are represented by the multitude of each individual part/component type. Fortress refers to Commerce's scope rulings in which Commerce concluded the merchandise imported in separate packaging constituted a kit in certain circumstances, such as where the product contains large pieces and potentially different configurations, which would make them difficult to contain in a single package.[75] CBP does not claim that a single "finished goods kit" must be contained in one single package, or even in one single shipping container. However, Fortress's entry documentation does not indicate that the merchandise was entered as kits.[76]

---

[71] Id. at 22-23.
[72] Id. at 27.
[73] See Fortress Written Arguments at 27-28, citing Customs CROSS Ruling b82676.
[74] See Customs CROSS Ruling b82676.
[75] See Fortress Written Arguments at 28, citing Final Scope Ruling on Eran Light Poles (April 17, 2017) and Final Scope Ruling on Phoenix Folding Doors (Feb. 22, 2021).
[76] Fortress claimed in its "Facts" section of its written arguments that "although perhaps not as easily discernible to the naked eye as a kit with all parts contained in a box that a person can physically hold, these fence system kits, which sometimes take up entire containers, when viewed as a whole, contain all parts necessary to assemble a finished fence system." See Fortress Written Arguments at 13. However, as noted, the entry related documentation for the examined POI entries do not identify particular "kits" in its entry related documentation for the POI entries examined, and Fortress has not tried to claim that each individual entry represents a specific number of "finished goods kits."

Fortress states the scope rulings cited by AEFTC in its allegation are distinguishable from Fortress's situation. Fortress states those rulings concern "forms of importation where the importer imports the posts, panels, and gates separately from each other and then unpacked, rearranged, supplemented parts, and repackaged the merchandise, before selling a complete kit to the end user."[77] Fortress identifies these as five specific scope rulings included in the Allegation.[78] Comparing the products described in those rulings (as summarized by Fortress) and Fortress's entered products, a common theme is that, whether described as in kit form (as was the case for the Commerce scope ruling products) or containing no such references to kit form, (as was the case for Fortress), the merchandise as entered did not constitute a "packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching." In the case of Fortress, there were not discrete packaged combinations of parts, and some parts required cutting and/or drilling by the party assembling a fence. Fortress also claims that it "does not import posts, panels, and gates in bulk and separately from each other," because "each purchase order, invoice, and packing list contains posts and panels, and when gates are included, the gates are imported with the posts and panels."[79] Even if such parts are imported "together" in the same entry, they are, as noted above, segregated by part/component type, with respect to pricing and even physically, with specifically calculated cubic feet measurements for each individual part/component, and there is no "combination" of different parts/components into kits.

Fortress states that "{a}s described in the Record {of the EAPA investigation}, [

description of merchandise                            ]."[80]  At no time has Fortress explained on the record how many actual "finished goods kits" are represented in each specific examined entry, or whether all the parts/components listed in each specific entry were identified as part of a specific "finished goods kit." In fact, throughout the sale and importation process, there appears to be no reference to "kits" at all. Fortress states that "{a}t the time of importation, Fortress does not repackage or add additional components before sending the fence system kit to the customer because the kit contains all the parts necessary and because of Fortress's efforts to comply with CBP's determination in the 2014 CF29."[81] Even if it is true that Fortress does not repackage or add additional components before its customers receive the merchandise, that does not establish that the merchandise entered as "finished goods kits." If all such merchandise were received by the Fortress U.S. customer as it was entered into the United States, they would be received as shipments of multiple parts/components in bulk, not as finished goods kits, and, as the record indicates, they may be sold as parts/components rather than kits (*see e.g.* references to Lowe's website, both above and in the NOI).

---

[77] *See* Fortress Written Arguments at 29.
[78] *Id.* at 30, citing the Dynasty Final Scope Ruling (July 22, 2014) ("Dynasty Scope Ruling") (Allegation Exhibit 5); the Ameristar Kitted Fences Final Scope Ruling (Aug. 15, 2012) ("Ameristar Kitted Fences Scope Ruling") (Allegation Exhibit 6); the Origin Final Scope Ruling (Dec. 13, 2011) ("Origin Scope Ruling") (Allegation Exhibit 8); the Ameristar Preliminary Scope Ruling (June 1, 2012) ("Ameristar Scope Ruling") (Allegation Exhibit 7), and the American Fence Manufacturing Company Fence Sections, Posts and Gates Scope Ruling (Dec. 2, 2011) ("American Fence Parts Scope Ruling") (Allegation Exhibit 10).
[79] *Id.* at 31.
[80] *Id.* at 33.
[81] *Id.* at 33-34.

Fortress claims that "[          business practice

                    ]," and without "[          business practice

                                                        ]."[82]  However, for the
entry in question, none of the documentation refers to kits of any kind, include fence parts in
bulk, and, furthermore, as noted above, Fortress's product catalogs indicate some parts require
cutting and/or drilling by the end user to assemble a fence.

Fortress further argues that even if the merchandise in question were incorrectly determined to
have been subject to the AD/CVD orders, it was not "entered via a statement or act that is
material and false, or any omission that is material."[83]  Fortress claims this is so "because the
filling out of entry documents pursuant to specific written direction by CBP through its 2014
CF29 does not constitute evasion," and that, "{o}n the contrary, it constitutes Fortress's
'reasonable care,' as required by CBP regulations."[84]   Fortress states the CIT in Diamond Tools
II "opined that filling out import documentation based on a valid agency decision that was in
effect at the time of importation which explicitly and clearly indicated that the merchandise was
outside of the scope of the Orders does not, in accordance with statutory construction, comprise a
material and false statement or omission."[85]  Fortress claims that its representation of the
merchandise subject to the EAPA investigation as constituting excluded finished goods kits
"reflected an accurate understanding and obeyance of the 2014 CF29 written direction from
CBP," given the merchandise subject to the EAPA investigation was identical in all material
aspects to the products associated with the 2014 CF29 directive.[86]

As an initial matter, the CF29 action cannot be considered an interpretative ruling (i.e., having
precedential effect for entries not referenced in that document) because it was not subject to
being made available for public inspection, and it was only visible to the party involved and
CBP.[87]  But even if the CF29 action had precedential effect for this case, the extent to which
Fortress has not demonstrated the merchandise subject to the 2014 CF29 was the same as the
merchandise subject to this EAPA investigation.  In addition, as also noted, documentation
examined by CBP during this EAPA investigation identifies one very pertinent difference from
the documentation included in the documentation submitted by Fortress relating to the 2014
CF29, namely, that some parts require additional cutting and/or drilling.  Furthermore, the 2014
CF29 decision, did not explain the basis for finding that the merchandise in each entry met the
requirements of the "finished goods kits" exclusion.  That is not the case for the entries during
the POI that are under examination, which have been shown to not qualify for the "finished
goods kits" exclusion.  Finally, Fortress's argument that it did not make false statements is

---

[82] *Id.* at 34.
[83] *Id.* at 37.
[84] *Id.* at 37.
[85] *Id.* at 38.
[86] *Id.* at 39.
[87] Under 19 USC 1625, "{w}ithin 90 days after the date of issuance of any interpretive ruling (including any ruling letter, or internal advice memorandum) or protest review decision under this chapter with respect to any customs transaction, the Secretary shall have such ruling or decision published in the Customs Bulletin or shall otherwise make such ruling or decision available for public inspection."

inapposite. The statutory language does not require CBP to consider the importer's state of mind at the time of importation and CBP may find that false statements were made regardless of whether there is a good faith disagreement as to whether an AD/CVD order is applicable.[88]

Fortress argues that "the 2014 CF29 was an agency decision following deliberations on the Fortress products that reviewed Fortress's merchandise, which is identical to those subject to this EAPA investigation, and the method of packaging, invoicing, and importing."[89] However, Fortress's claim that CBP's 2014 CF29 ruling has more precedential relevance than Commerce's 2006 IDM referenced in the Diamond Tools CIT rulings is unfounded. CBP's CF29 ruling does not have any precedential relevance outside of the entries referenced in that document, as noted above. In this EAPA investigation, no referral for scope rulings is even necessary, given, based on "the specific facts of the case," it is obvious no "finished goods kits," or kits of any kind, were imported by Fortress in the POI entries in question, and given further processing such as cutting and/or drilling are required for some parts.

Fortress states that while CBP "may change its mind," it "may only do so pursuant to notice and comment procedures under 19 U.S.C. 1625(c)(2)," and "CBP has not undertaken the required notice and comment procedures, and as a result, Fortress may still rely on the 2014 CF29."[90] As noted, the 2014 CF29 Notice of Action was not an interpretive ruling as discussed in the references to section 1625 and, therefore, there was no need for CBP to take any of the steps noted by Fortress. The 2014 CF29 only applied to the entries identified in that ruling, and CBP properly examined POI entries to determine whether, among other things, aluminum extrusion fence merchandise in each entry could be considered to have been entered as part of "finished goods kits." As noted above, CBP has determined that during the POI, Fortress imported aluminum extrusions subject to the AD/CVD orders, and that Fortress did not pay the required AD/CVD cash deposits for such merchandise.

Finally, Fortress states Commerce's scope rulings involving "kitted fences" did not affect CBP's "clear determination in the 2014 CF29" because "those scope rulings are distinguishable from Fortress's case.[91] Commerce's fence scope rulings have been discussed above, and do not support Fortress's claim that the aluminum fence products it imported during the POI constituted "finished goods kits."

**Actions Taken Pursuant to the Affirmative Determination of Evasion**

In light of CBP's determination that Fortress entered covered merchandise into the customs territory of the United States through evasion, and pursuant to 19 USC 1517(d) and 19 CFR 165.28, CBP will suspend or continue to suspend the entries subject to this investigation until instructed to liquidate these entries. For those entries previously extended in accordance with the interim measures, CBP will rate adjust and change those entries to type 03 and continue suspension until instructed to liquidate these entries. CBP will also evaluate Fortress's

---

[88] *See* Ikadan Sys. USA, Inc. v. United States, No. 21-00592, 2023 WL 3962058, at *7 (Ct. Int'l Trade June 13, 2023) ("EAPA read as a whole supports CBP's strict liability interpretation of the definition of evasion.").
[89] *See* Fortress Written Arguments at 40.
[90] *Id.* at 41.
[91] *Id.* at 42.

continuous bonds in accordance with CBP's policies and may require single transaction bonds as appropriate. In addition, CBP will apply these actions not only to Fortress Iron, LP, also referred to or doing business under the names Fortress Fence Products and Fortress Building Products, but also to any additional IOR numbers relating to [        company names
              ]. None of the above actions precludes CBP or other agencies from pursuing additional enforcement actions or penalties.

Sincerely,

Victoria Cho
Acting Director, Enforcement Operations Division
Trade Remedy Law Enforcement Directorate
Office of Trade

## FEDERAL RESERVE BOARD

Order Delegating Authority to Extend Processing Periods
for Applications and Notices Filed Under the Bank Holding Company Act,
the Home Owners' Loan Act, and the International Banking Act

The Board hereby delegates to the Director of the Division of Banking Supervision and Regulation (or the Director's delegee), with the concurrence of the General Counsel (or the General Counsel's delegee), the authority to extend the processing periods for the following applications and notices:

(1) The 60-day processing period for an application filed under section 3 of the Bank Holding Company Act, pursuant to section 225.15(d)(2) of Regulation Y (12 CFR 225.15(d)(2));

(2) The 60-day processing periods for notices filed under section 4 of the Bank Holding Company Act, pursuant to (i) section 225.24(d)(2) of Regulation Y (12 CFR 225.24(d)(2)) and (ii) section 4(j)(1)(C) of the Bank Holding Company Act (12 U.S.C. § 1843(j)(1)(C)) and section 225.24(d)(3) of Regulation Y (12 CFR 225.24(d)(3));

(3) The 60-day processing period for an application filed under section 10(e) of the Home Owners' Loan Act, pursuant to section 238.14(g)(2) of Regulation LL (12 CFR 238.14(g)(2));

(4) The 60-day processing periods for notices filed under section 10(c) of the Home Owners' Loan Act, pursuant to (i) section 238.53(f)(2) of Regulation LL (12 CFR 238.53(f)(2)) and (ii) section 238.53(f)(3) of Regulation LL (12 CFR 238.53(f)(3)); and

(5) The 180-day processing period for an application filed under section 7(d) of the International Banking Act, pursuant to section 7(d)(7) of the International Banking Act (12 U.S.C. § 3105(d)(7)) and section 211.24(b)(4) of Regulation K (12 CFR 211.24(b)(4)).

By order of the Board of Governors,[1] effective October 5, 2011.

*Robert deV. Frierson*

Robert deV. Frierson
Deputy Secretary of the Board

---

[1] Voting for this action: Chairman Bernanke, Vice Chair Yellen, and Governors Duke, Tarullo, and Raskin.

# INTRODUCTION: U.S. Currency and Coin Outstanding and in Circulation

The U.S. Currency and Coin Outstanding and in Circulation (USCC) statement informs the public of the total face value of currency and coin used as a medium of exchange that is in circulation at the end of a given accounting month. The statement defines the total amount of currency and coin outstanding and the portion deemed to be in circulation. It includes some old and current rare issues that do not circulate or that may do so to a limited extent. Treasury includes them in the statement because the issues were originally intended for general circulation.

The USCC statement provides a description of the various issues of paper money. It also gives an estimated average of currency and coin held by each individual, using estimates of population from the Bureau of the Census. USCC information has been published by Treasury since 1888, and was published separately until 1983, when it was incorporated into the "Treasury Bulletin." The USCC comes from monthly reports compiled by Treasury offices, U.S. Mint offices, the Federal Reserve banks (FRBs), and the Federal Reserve Board.

### TABLE USCC-1—Amounts Outstanding and in Circulation, June 30, 2023

[Source: Bureau of the Fiscal Service]

| Currency | Total currency and coin (1) | Total currency (2) | Federal Reserve notes [1] (3) | U.S. notes (4) | Currency no longer issued (5) |
|---|---|---|---|---|---|
| Amounts outstanding | $2,728,775,174,997 | $2,676,997,815,243 | $2,676,523,177,752 | $238,912,566 | $235,724,925 |
| Less amounts held by: | | | | | |
| The Treasury | 173,942,040 | 91,342,040 | 91,062,521 | 91,468 | 188,051 |
| FRBs | 383,173,563,263 | 381,826,213,538 | 381,826,212,617 | 5 | 916 |
| Amounts in circulation | $2,345,427,669,694 | $2,295,080,259,665 | $2,294,605,902,614 | $238,821,093 | $235,535,958 |

| Coins [2] | Total (1) | Dollars [2, 3] (2) | Fractional coins (3) |
|---|---|---|---|
| Amounts outstanding | $51,777,359,754 | 6,548,044,108 | 45,229,315,646 |
| Less amounts held by: | | | |
| The Treasury | 82,600,000 | 48,770,000 | 33,830,000 |
| FRBs | 1,347,349,725 | 862,248,377 | 485,101,348 |
| Amounts in circulation | $50,347,410,029 | $5,637,025,731 | $ 44,710,384,298 |

See footnotes following table USCC-2.

## TABLE USCC-2—Amounts Outstanding and in Circulation, June 30, 2023

[Source: Bureau of the Fiscal Service]

| Currency in circulation by denomination | Total (1) | Federal Reserve notes [1] (2) | U.S. notes (3) | Currency no longer issued (4) |
|---|---|---|---|---|
| $1 | $14,448,320,528 | $14,308,736,080 | $143,469 | $139,440,979 |
| $2 | 3,072,820,762 | 2,941,402,354 | 131,405,844 | 12,564 |
| $5 | 17,587,980,575 | 17,458,406,140 | 107,333,150 | 22,241,285 |
| $10 | 23,322,877,150 | 23,303,173,950 | 2,680 | 19,700,520 |
| $20 | 227,816,480,100 | 227,796,381,740 | -4,240 | 20,102,600 |
| $50 | 124,684,431,750 | 124,672,952,650 | -19,700 | 11,498,800 |
| $100 | 1,883,835,292,700 | 1,883,813,350,700 | -45,700 | 21,987,700 |
| $500 | 141,716,500 | 141,526,000 | 2,500 | 188,000 |
| $1,000 | 165,124,000 | 164,913,000 | 3,000 | 208,000 |
| $5,000 | 1,765,000 | 1,710,000 | - | 55,000 |
| $10,000 | 3,450,000 | 3,350,000 | - | 100,000 |
| Partial notes [5] | 600 | - | 90 | 510 |
| Total currency | $ 2,295,080,259,665 | $2,294,605,902,614 | $ 238,821,093 | $235,535,958 |

| Comparative totals of currency and coins in circulation—selected dates | Amounts (in millions) (1) | Per capita [4] (2) |
|---|---|---|
| June 30, 2023 | 2,345,428 | 6,998 |
| May 31, 2023 | 2,344,697 | 6,999 |
| April 30, 2023 | 2,324,200 | 6,941 |
| Sept. 30, 2020 | 2,032,424 | 6,150 |
| Sept. 30, 2015 | 1,387,552 | 4,310 |
| Sept. 30, 2010 | 954,719 | 3,074 |
| Sept. 30, 2005 | 766,487 | 2,578 |
| Sept. 30, 2000 | 568,614 | 2,061 |
| Sept. 30, 1995 | 409,272 | 1,553 |
| Sept. 30, 1990 | 278,903 | 1,105 |
| Sept. 30, 1985 | 187,337 | 782 |
| Sept. 30, 1980 | 129,916 | 581 |
| June 30, 1975 | 81,196 | 380 |
| June 30, 1970 | 54,351 | 265 |

[1] Issued on or after July 1, 1929.
[2] Excludes coins sold to collectors at premium prices.
[3] Includes $481,781,898 in standard silver dollars.
[4] Based on Bureau of the Census estimates of population.
[5] Represents value of certain partial denominations not presented for redemption.
[6] Represents current FRB adjustment.

Charter Number: 17043

**Table Q: Assessment Area Distribution of Loans to Small Businesses by Income Category of the Geography**                                                                   2019-21

| Assessment Area: | Total Loans to Small Businesses | | | | Low-Income Tracts | | | Moderate-Income Tracts | | | Middle-Income Tracts | | | Upper-Income Tracts | | | Not Available-Income Tracts | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | # | $ | % of Total | Overall Market | % Businesses | % Bank Loans | Aggregate | % Businesses | % Bank Loans | Aggregate | % Businesses | % Bank Loans | Aggregate | % Businesses | % Bank Loans | Aggregate | % Businesses | % Bank Loans | Aggregate |
| DFW AA | 6,209 | 803,040 | 95.5 | 200,490 | 7.3 | 6.8 | 7.8 | 19.7 | 28.3 | 20.6 | 26.6 | 33.8 | 25.6 | 45.7 | 30.9 | 45.2 | 0.8 | 0.2 | 0.7 |
| Van Zandt non-MSA AA | 293 | 18,075 | 4.5 | 1,305 | 0.0 | 0.0 | 0.0 | 5.9 | 0.3 | 5.2 | 79.4 | 71.0 | 78.2 | 14.7 | 28.7 | 16.6 | 0.0 | 0.0 | 0.0 |
| Total | 6,502 | 821,115 | 100.0 | 201,795 | 7.4 | 6.5 | 7.7 | 19.5 | 27.0 | 20.5 | 26.6 | 35.5 | 26.0 | 45.7 | 30.8 | 45.1 | 0.7 | 0.2 | 0.7 |

*Source: 2020 D&B Data: 01/01/2019 - 12/31/2021 Bank Data; 2021 CRA Aggregate Data, "--" data not available.*
*Due to rounding, totals may not equal 100.0%*

**Table R: Assessment Area Distribution of Loans to Small Businesses by Gross Annual Revenues**                                                                   2019-21

| Assessment Area: | Total Loans to Small Businesses | | | | Businesses with Revenues <= 1MM | | | Businesses with Revenues > 1MM | | Businesses with Revenues Not Available | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | # | $ | % of Total | Overall Market | % Businesses | % Bank Loans | Aggregate | % Businesses | % Bank Loans | % Businesses | % Bank Loans |
| DFW AA | 6,209 | 803,040 | 95.5 | 200,490 | 88.0 | 27.6 | 42.7 | 4.0 | 31.3 | 8.0 | 41.0 |
| Van Zandt non-MSA AA | 293 | 18,075 | 4.5 | 1,305 | 87.3 | 68.3 | 46.8 | 3.8 | 14.0 | 8.9 | 17.7 |
| Total | 6,502 | 821,115 | 100.0 | 201,795 | 88.1 | 29.5 | 42.8 | 3.7 | 30.6 | 8.2 | 40.0 |

*Source: 2020 D&B Data: 01/01/2019 - 12/31/2021 Bank Data; 2021 CRA Aggregate Data, "--" data not available.*
*Due to rounding, totals may not equal 100.0%*

Appendix D-3

CCC-3001

INTERNAL FR
(Upon receipt by the Federal Reserve Banks)

# THE **FEDERAL RESERVE**
### —*FedLine®Solutions*

# FedMail® Request Form

**\*Required Fields**

## Section 1: Service Description and Form Instructions
This form should be used to sign up for FedMail or make changes to your FedMail service.

- Use "Section 3: Service Specific Information" to "Add" or "Delete" services or delivery addresses.
- Shared email addresses are preferred unless otherwise noted. Please provide more than one email address if using individual email addresses.
- Fax numbers may only be deleted; new fax numbers may not be added
- Complete an additional form to sign up more than three delivery addresses for a service.
- To change a delivery address, "Delete" the current delivery address and "Add" the new delivery address.
- To delete all recipients for a service type, mark "All" in the appropriate delete column. Please note that by marking delete "All" box, all email addresses or fax numbers that the service is delivered to will be deleted.
- Pricing information is available on FRBservices.org^SM.
- Service descriptions are available on FRBservices.org.
- The form must be signed by an individual listed on your organization's Official Authorization List (OAL).

**For assistance in completing this form, please contact the CCC at (888) 333-7010.**

**Send the completed and signed form to the CCC via:**
> **Email:** ccc.coordinators@kc.frb.org
> or
> **Fax:** (800) 660-7856

## Section 2: Customer Information

| | |
|---|---|
| **Organization Name\*** | VsL Virtual Storage Layer Fusion IO. |
| **Identification Number (ABA/RTN)\*** | 073972181 |
| **Country\*** | United States |

CCC-3001

## Section 3: Service Specific Information

**Accounting: Capital Stock (STOC, DIVD)**

| Add Email | Delete Email ☐ All | Delete Fax ☐ All | Email Address or Fax Number *Please provide the fax number(s) to be deleted. Fax numbers may not be added.* |
|---|---|---|---|
| ☒ | ☐ | ☐ | VSLINDUSTRY@gmail.com |
| ☒ | ☐ | ☐ | VelasquezVanessaM@yahoo.com |
| ☒ | ☐ | ☐ | Love21pink.LX@gmail.com |

**Accounting: Daily Accounting Statement (IASR)**

| Add Email | Delete Email ☐ All | Delete Fax ☐ All | Email Address or Fax Number *Please provide the fax number(s) to be deleted. Fax numbers may not be added.* |
|---|---|---|---|
| ☒ | ☐ | ☐ | VSLIndustry@gmail.com |
| ☒ | ☐ | ☐ | VelasquezVanessaM@yahoo.com |
| ☒ | ☐ | ☐ | Love21pink.LX@gmail.com |

**Billing: Monthly Billing Summary Statement of Service Charge (EBST)**

| Add Email | Delete Email ☐ All | Delete Fax ☐ All | Email Address or Fax Number *Please provide the fax number(s) to be deleted. Fax numbers may not be added.* |
|---|---|---|---|
| ☒ | ☐ | ☐ | VSLIndustry@gmail.com |
| ☒ | ☐ | ☐ | VelasquezVanessaM@yahoo.com |
| ☒ | ☐ | ☐ | Love21pink.LX@gmail.com |

**Check Adjustments: Messages and Images (CADM, CADI)**

| Add Email | Delete Email ☐ All | Delete Fax ☐ All | **Email Address** *Shared email boxes/addresses are preferred. Please provide more than one email address if using individual email addresses.* **or** **Fax Number** *Please provide the fax number(s) to be deleted. Fax numbers may not be added.* |
|---|---|---|---|
| ☒ | ☐ | ☐ | VSLIndustry@gmail.com |
| ☒ | ☐ | ☐ | VelasquezVanessaM@yahoo.com |
| ☒ | ☐ | ☐ | Love21pink.LX@gmail.com |

CCC-3001

INTERNAL FR
(Upon receipt by the Federal Reserve Banks)

## Section 3: Service Specific Information (continued)

### Check 21: Duplicate Notification Service (DCNR)
By adding the Check 21 Duplicate Notification Service, you acknowledge that you have read and agreed to the Terms and Conditions of the _Check 21 Duplicate Notification Service_.

| Add Email | Delete Email ☐ All | Delete Fax ☐ All | Email Address _Shared email boxes/addresses are preferred. Please provide more than one email address if using individual email addresses._ or Fax Number _Please provide the fax number(s) to be deleted. Fax numbers may not be added._ |
|---|---|---|---|
| ☒ | ☐ | ☐ | VSLIndustry@gmail.com |
| ☒ | ☐ | ☐ | VelasquezVanessaM@yahoo.com |
| ☒ | ☐ | ☐ | Love21pink.LX@gmail.com |

### Check 21: FedForward®/FedReturn® Deposit Acknowledgements (DNOP, DNOT)

| Add | | Delete ☐ All | Email Address _Shared email boxes/addresses are preferred. Please provide more than one email address if using individual email addresses._ |
|---|---|---|---|
| Production (DNOP) | Pre-Prod/Test (DNOT) | | |
| ☒ | ☐ | ☐ | VSLIndustry@gmail.com |
| ☒ | ☐ | ☐ | VelasquezVanessaM@yahoo.com |
| ☒ | ☐ | ☐ | Love21pink.LX@gmail.com |

### Check 21: FedPayments® Reporter (CREP)
Note: The _Check 21 Services Agreement FedPayments Reporter - Service Request Form_ must be completed the first time your organization requests this service.

| Add | Delete ☐ All | Email Address _Shared email boxes/addresses are preferred. Please provide more than one email address if using individual email addresses._ |
|---|---|---|
| ☒ | ☐ | VSLIndustry@gmail.com |
| ☒ | ☐ | VelasquezVanessaM@yahoo.com |
| ☒ | ☐ | Love21pink.LX@gmail.com |

### Check 21: FedReceipt®/PDF Presentment Notifications (PNOP, PNOT)

| Add | | Delete ☐ All | Email Address _Shared email boxes/addresses are preferred. Please provide more than one email address if using individual email addresses._ |
|---|---|---|---|
| Production (PNOP) | Pre-Prod/Test (PNOT) | | |
| ☒ | ☐ | ☐ | VSLIndustry@gmail.com |
| ☒ | ☐ | ☐ | VelasquezVanessaM@yahoo.com |
| ☒ | ☐ | ☐ | Love21pink.LX@gmail.com |

CCC-3001

INTERNAL FR
(Upon receipt by the Federal Reserve Banks)

## Section 3: Service Specific Information (continued)

### Daylight Overdraft Reports (ABO2)

| Add | Delete ☐ All | Email Address |
|-----|--------------|---------------|
| ☒ | ☐ | VSLIndustry@gmail.com |
| ☒ | ☐ | velasquezVanessaM@yahoo.com |
| ☒ | ☐ | Love21pink.LX@gmail.com |

### FedACH®: Advices (ACHR)

| Add Email | Delete Email ☐ All | Delete Fax ☐ All | Email Address or Fax Number *Please provide the fax number(s) to be deleted. Fax numbers may not be added.* |
|-----------|---------------------|-------------------|------------------------------------------------------------------------------------------------------------|
| ☒ | ☐ | ☐ | VSLIndustry@gmail.com |
| ☒ | ☐ | ☐ | velasquezVanessaM@yahoo.com |
| ☒ | ☐ | ☐ | Love21pink.LX@gmail.com |

### FedCash®: Cash Difference Advices (CD01)

Note: Recipients of Cash Difference Advices will receive all advices for all RTNs associated with their organization.

| Add | Delete ☐ All | Email Address |
|-----|--------------|---------------|
| ☒ | ☐ | VSLIndustry@gmail.com |
| ☒ | ☐ | VelasquezVanessaM@yahoo.com |
| ☒ | ☐ | Love21pink.LX@gmail.com |

### Fedwire®: Funds Advices (FFSR)

| Add | Delete ☐ All | Email Address |
|-----|--------------|---------------|
| ☒ | ☐ | VSLIndustry@gmail.com |
| ☒ | ☐ | velasquezVanessaM@yahoo.com |
| ☒ | ☐ | Love21pink.LX@gmail.com |

### Fedwire: Funds Offline Service Code Words Authentication (CWRD)

**Email Address** *Shared email addresses are not permitted. Provide up to two individual email addresses. This list replaces the prior email addresses on file for your organization.*

VSLIndustry@gmail.com

VelasquezVanessaM@yahoo.com

CCC-3001

## Section 3: Service Specific Information (continued)

**Fedwire: Securities Reports and Advices (FSSR)**

| Add | Delete ☐ All | Email Address |
|-----|------|---------------|
| ☒ | ☐ | VSLIndustry@gmail.com |
| ☒ | ☐ | VelasquezVanessaM@yahoo.com |
| ☒ | ☐ | Love21pink.LX@gmail.com |

**Treasury and DFAS: ACH Reclamations (RECM)**
Please attach a listing of additional affiliate RTNs for which your organization may receive reclamations.

| Add | Delete ☐ All | Email Address *Shared email addresses are preferred. Please provide more than one email address if using personal email addresses.* |
|-----|------|---------------|
| ☒ | ☐ | VSLIndustry@gmail.com |
| ☒ | ☐ | VelasquezVanessaM@yahoo.com |
| ☒ | ☐ | Love21pink.LX@gmail.com |

**Treasury: Check Reclamations (RECC) and Reports (CORM, CORS, CORW)**
Please attach a listing of additional affiliate RTNs for which your organization may receive reclamations.

| Add | Delete ☐ All | Email Address *Shared email addresses are preferred. Please provide more than one email address if using personal email addresses.* |
|-----|------|---------------|
| ☒ | ☐ | ~~VSL~~ VSLIndustry@gmail.com |
| ☒ | ☐ | VelasquezVanessaM@yahoo.com |
| ☒ | ☐ | Love21pink.LX@gmail.com |

CCC-3001

## Section 4: Authorized Approval

Use of the FedMail access solution is governed by Federal Reserve Bank Operating Circular 5 ("OC 5"), Electronic Access. Depending on the services you choose to access using FedMail, additional Operating Circulars or agreements may govern those services. Submission of this form constitutes acceptance of the terms and conditions of OC 5 and other applicable Operating Circulars and agreements. The Federal Reserve Banks have no obligation to verify the accuracy of the information you provide in this form and have the right to rely on such information in connection with the provision of FedMail access to the services you are requesting. Except to the extent prohibited by law or regulation, you agree to indemnify, hold harmless and defend the Federal Reserve Banks against any claim, loss, liability, or expense made against or incurred by the Federal Reserve Banks in connection with their reliance on the information provided in this form.

*The person signing this form must have signatory authority for the Organization and must be listed on the Official Authorization List (OAL), and the signature must match the signature as it appears on the OAL. The person signing this form cannot be the same person as a Subscriber identified in this form.*

| | | | |
|---|---|---|---|
| **Authorized Signer Name\*** | *First* Vanessa | *MI* M | *Last* Medina Velasquez |
| **Authorized Signer Email Address\*** | VSLIndustry@gmail.com | | |
| **Authorized Signature\*** | | | |
| **Date\*** | Aug. 27, 2021 | | |

"FedMail," "FedForward," "FedReturn," "FedReceipt," "FedCash," "FedACH," "Fedwire," "FedLine Web," "FedLine Advantage" and "FRBservices.org" are trademarks or service marks of the Federal Reserve Banks. A complete list of marks owned by the Federal Reserve Banks is available at FRBservices.org.

Last updated: 01/01/2019
Version 3.0

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

FFIE
Page
RC-6

### *Optional* Narrative Statement Concerning the Amounts
### Reported in the Reports of Condition and Income

The management of the reporting bank may, if it wishes, submit a brief narrative statement on the amounts reported in the Reports of Condition and Income. This optional statement will be made available to the public, along with the publicly available data in the Reports of Condition and Income, in response to any request for individual bank report data. However, the information reported in Schedule RI-E, item 2.g; Schedule RC-O, Memorandum items 6 through 9, 14, 15, and 18; and Schedule RC-P, items 7.a and 7.b, is regarded as confidential and will not be released to the public. BANKS CHOOSING TO SUBMIT THE NARRATIVE STATEMENT SHOULD ENSURE THAT THE STATEMENT DOES *NOT* CONTAIN THE NAMES OR OTHER IDENTIFICATIONS OF INDIVIDUAL BANK CUSTOMERS, REFERENCES TO THE AMOUNTS REPORTED IN THE CONFIDENTIAL ITEMS IDENTIFIED ABOVE, OR ANY OTHER INFORMATION THAT THEY ARE NOT WILLING TO HAVE MADE PUBLIC OR THAT WOULD COMPROMISE THE PRIVACY OF THEIR CUSTOMERS. Banks choosing not to make a statement may check the "No comment" box below and should make no entries of any kind in the space provided for the narrative statement; i.e., DO *NOT* enter in this space such phrases as "No statement," "Not applicable," "N/A," "No comment," and "None."

The optional statement must be entered on this sheet. The statement should not exceed 100 words. Further, regardless of the number of words, the statement must not exceed 750 characters, including punctuation, indentation, and standard spacing between words and sentences. If any submission should exceed

750 characters, as defined, it will be truncated at 750 characters with no notice to the submitting bank and the truncated statement will appear as the bank's statement both on agency computerized records and in computer-file releases to the public.

All information furnished by the bank in the narrative statement must be accurate and not misleading. Appropriate efforts shall be taken by the submitting bank to ensure the statement's accuracy.

If, subsequent to the original submission, material changes are submitted for the data reported in the Reports of Condition and Income, the existing narrative statement will be deleted from the files, and from disclosure; the bank, at its option, may replace it with a statement appropriate to the amended data.

The optional narrative statement will appear in agency records and in release to the public exactly as submitted (or amended as described in the preceding paragraph) by the management of the bank (except for the truncation of statements exceeding the 750-character limit described above). THE STATEMENT WILL NOT BE EDITED OR SCREENED IN ANY WAY BY THE SUPERVISORY AGENCIES FOR ACCURACY OR RELEVANCE. DISCLOSURE OF THE STATEMENT SHALL NOT SIGNIFY THAT ANY FEDERAL SUPERVISORY AGENCY HAS VERIFIED OR CONFIRMED THE ACCURACY OF THE INFORMATION CONTAINED THEREIN. A STATEMENT TO THIS EFFECT WILL APPEAR ON ANY PUBLIC RELEASE OF THE OPTIONAL STATEMENT SUBMITTED BY THE MANAGEMENT OF THE REPORTING BANK.

| | RCON | Yes / No |
|---|---|---|
| Comments?.......................................................................................................................................... | 6979 | YES |

*BANK MANAGEMENT STATEMENT (please type or print clearly; 750 character limit):*
(TEXT 6980)

The amounts reported on the Schedule RC-T are subject to revision and to fluctuation from Call Report to Call Report as the reporting institution refines asset and account classification, business interpretations underlying RC-T classifications, valuation and validation practices and due to other factors including market conditions

06/2013

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

FFIEC 031
Page 22 of 84
RC-7

## Schedule RC-B—Continued
Memoranda—Continued

| Dollar Amounts in Thousands | Held-to-maturity | | | | Available-for-sale | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (Column A) Amortized Cost | | (Column B) Fair Value | | (Column C) Amortized Cost | | (Column D) Fair Value | | |
| | RCFD | Amount | RCFD | Amount | RCFD | Amount | RCFD | Amount | |

*Memorandum items 5.a through 5.f are to be completed by banks with $1 billion or more in total assets.* [1]

**5. Asset-backed securities (ABS) (for each column, sum of Memorandum items 5.a through 5.f must equal Schedule RC-B, item 5.a):**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| a. Credit card receivables | B838 | 0 | B839 | 0 | B840 | 448,000 | B841 | 450,000 | M.5.a. |
| b. Home equity lines | B842 | 0 | B843 | 0 | B844 | 0 | B845 | 0 | M.5.b. |
| c. Automobile loans | B846 | 0 | B847 | 0 | B848 | 90,000 | B849 | 91,000 | M.5.c. |
| d. Other consumer loans | B850 | 0 | B851 | 0 | B852 | 478,000 | B853 | 479,000 | M.5.d. |
| e. Commercial and industrial loans | B854 | 0 | B855 | 0 | B856 | 136,000 | B857 | 137,000 | M.5.e. |
| f. Other | B858 | 0 | B859 | 0 | B860 | 0 | B861 | 0 | M.5.f. |

**6. Structured financial products by underlying collateral or reference assets (for each column, sum of Memorandum items 6.a through 6.g must equal Schedule RC-B, sum of items 5.b.(1) through (3)):**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| a. Trust preferred securities issued by financial institutions | G348 | 0 | G349 | 0 | G350 | 0 | G351 | 0 | M.6.a. |
| b. Trust preferred securities issued by real estate investment trusts | G352 | 0 | G353 | 0 | G354 | 0 | G355 | 0 | M.6.b. |
| c. Corporate and similar loans | G356 | 0 | G357 | 0 | G358 | 2,400,000 | G359 | 2,407,000 | M.6.c. |
| d. 1–4 family residential MBS issued or guaranteed by U.S. Government-sponsored enterprises (GSEs) | G360 | 0 | G361 | 0 | G362 | 0 | G363 | 0 | M.6.d. |
| e. 1–4 family residential MBS not issued or guaranteed by GSEs | G364 | 0 | G365 | 0 | G366 | 0 | G367 | 0 | M.6.e. |
| f. Diversified (mixed) pools of structured financial products | G368 | 0 | G369 | 0 | G370 | 0 | G371 | 0 | M.6.f. |
| g. Other collateral or reference assets | G372 | 0 | G373 | 0 | G374 | 0 | G375 | 0 | M.6.g. |

1 The $1 billion asset size test is generally based on the total assets reported on the *June 30, 2016,* Report of Condition.

03/2017

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

## Schedule RC-C—Loans and Lease Financing Receivables

### Part I. Loans and Leases

Do not deduct the allowance for loan and lease losses or the allocated transfer risk reserve from amounts reported in this schedule.
Report (1) loans and leases held for sale at the lower of cost or fair value, (2) loans and leases held for investment, net of unearned income,
and (3) loans and leases accounted for at fair value under a fair value option. Exclude assets held for trading and commercial paper.

| Dollar Amounts in Thousands | RCFD | (Column A) Consolidated Bank Amount | RCON | (Column B) Domestic Offices Amount | |
|---|---|---|---|---|---|
| 1. Loans secured by real estate[1] | 1410 | | | | 1. |
| a. Construction, land development, and other land loans: | | | | | |
| (1) 1-4 family residential construction loans | F158 | 0 | F158 | 0 | 1.a.(1) |
| (2) Other construction loans and all land development and other land loans | F159 | 564,000 | F159 | 564,000 | 1.a.(2) |
| b. Secured by farmland (including farm residential and other improvements) | 1420 | 0 | 1420 | 0 | 1.b. |
| c. Secured by 1-4 family residential properties: | | | | | |
| (1) Revolving, open-end loans secured by 1-4 family residential properties extended and under lines of credit | 1797 | 0 | 1797 | 0 | 1.c.(1) |
| (2) Closed-end loans secured by 1-4 family residential properties: | | | | | |
| (a) Secured by first liens | 5367 | 1,353,000 | 5367 | 1,353,000 | 1.c.(2)(a) |
| (b) Secured by junior liens | 5368 | 1,000 | 5368 | 1,000 | 1.c.(2)(b) |
| d. Secured by multifamily (5 or more) residential properties | 1460 | 801,000 | 1460 | 801,000 | 1.d. |
| e. Secured by nonfarm nonresidential properties: | | | | | |
| (1) Loans secured by owner-occupied nonfarm nonresidential properties | F160 | 0 | F160 | 0 | 1.e.(1) |
| (2) Loans secured by other nonfarm nonresidential properties | F161 | 1,520,000 | F161 | 1,520,000 | 1.e.(2) |
| 2. Loans to depository institutions and acceptances of other banks: | | | | | |
| a. To commercial banks in the U.S. | | | B531 | 821,000 | 2.a. |
| (1) To U.S. branches and agencies of foreign banks | B532 | 603,000 | | | 2.a.(1) |
| (2) To other commercial banks in the U.S. | B533 | 707,000 | | | 2.a.(2) |
| b. To other depository institutions in the U.S. | B534 | 0 | B534 | 0 | 2.b. |
| c. To banks in foreign countries | | | B535 | 676,000 | 2.c. |
| (1) To foreign branches of other U.S. banks | B536 | 124,000 | | | 2.c.(1) |
| (2) To other banks in foreign countries | B537 | 6,665,000 | | | 2.c.(2) |
| 3. Loans to finance agricultural production and other loans to farmers | 1590 | 0 | 1590 | 0 | 3. |
| 4. Commercial and industrial loans: | | | | | |
| a. To U.S. addressees (domicile) | 1763 | 2,748,000 | 1763 | 422,000 | 4.a. |
| b. To non-U.S. addressees (domicile) | 1764 | 422,000 | 1764 | 184,000 | 4.b. |
| 5. Not applicable | | | | | |
| 6. Loans to individuals for household, family, and other personal expenditures (i.e., consumer loans) (includes purchased paper): | | | | | |
| a. Credit cards | B538 | 0 | B538 | 0 | 6.a. |
| b. Other revolving credit plans | B539 | 0 | B539 | 0 | 6.b. |
| c. Automobile loans | K137 | 0 | K137 | 0 | 6.c. |
| d. Other consumer loans (includes single payment and installment loans other than automobile loans, and all student loans) | K207 | 50,000 | K207 | 49,000 | 6.d. |
| 7. Loans to foreign governments and official institutions (including foreign central banks) | 2081 | 101,000 | 2081 | 0 | 7. |
| 8. Obligations (other than securities and leases) of states and political subdivisions in the U.S. | 2107 | 95,000 | 2107 | 45,000 | 8. |

1 When reporting "Loans secured by real estate," "large institutions" and "highly complex institutions," as defined for deposit insurance assessment
purposes in FDIC regulations, should complete items 1.a.(1) through 1.e.(2) in columns A and B (but not item 1 in column A); all other institutions
should complete item 1 in column A and items 1.a.(1) through 1.e.(2) in column B (but not items 1.a.(1) through 1.e.(2) in column A).

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

FFIEC 031
Page 24 of 84
RC-9

## Schedule RC-C—Continued

### Part I—Continued

| Dollar Amounts in Thousands | RCFD | (Column A) Consolidated Bank Amount | RCON | (Column B) Domestic Offices Amount | |
|---|---|---|---|---|---|
| 9. Loans to nondepository financial institutions and other loans: | 1563 | 12,399,000 | | | 9. |
| a. Loans to nondepository financial institutions | | | J454 | 989,000 | 9.a. |
| b. Other loans: | | | | | |
| (1) Loans for purchasing or carrying securities (secured and unsecured) | | | 1545 | 4,522,000 | 9.b.(1) |
| (2) All other loans (exclude consumer loans) | | | J451 | 2,342,000 | 9.b.(2) |
| 10. Lease financing receivables (net of unearned income) | | | 2165 | 1,353,000 | 10. |
| a. Leases to individuals for household, family, and other personal expenditures (i.e., consumer leases) | F162 | 0 | | | 10.a. |
| b. All other leases | F163 | 1,353,000 | | | 10.b. |
| 11. LESS: Any unearned income on loans reflected in items 1-9 above | 2123 | 14,000 | 2123 | 12,000 | 11. |
| 12. Total loans and leases, held for investment and held for sale [1] (item 12, column A must equal Schedule RC, sum of items 4.a and 4.b) | 2122 | 29,492,000 | 2122 | 15,630,000 | 12. |

### Memoranda

| Dollar Amounts in Thousands | RCON | Amount | |
|---|---|---|---|
| 1. Loans restructured in troubled debt restructurings that are in compliance with their modified terms (included in Schedule RC-C, Part I, and not reported as past due or nonaccrual in Schedule RC-N, Memorandum item 1): | | | |
| a. Construction, land development, and other land loans in domestic offices: | | | |
| (1) 1–4 family residential construction loans | K158 | 0 | M.1.a.(1) |
| (2) Other construction loans and all land development and other land loans | K159 | 0 | M.1.a.(2) |
| b. Loans secured by 1–4 family residential properties in domestic offices | F576 | 34,000 | M.1.b. |
| c. Secured by multifamily (5 or more) residential properties in domestic offices | K160 | 0 | M.1.c. |
| d. Secured by nonfarm nonresidential properties in domestic offices: | | | |
| (1) Loans secured by owner-occupied nonfarm nonresidential properties | K161 | 0 | M.1.d.(1) |
| (2) Loans secured by other nonfarm nonresidential properties | K162 | 0 | M.1.d.(2) |
| e. Commercial and industrial loans: | RCFD | | |
| (1) To U.S. addressees (domicile) | K163 | 0 | M.1.e.(1) |
| (2) To non-U.S. addressees (domicile) | K164 | 0 | M.1.e.(2) |
| f. All other loans (include loans to individuals for household, family, and other personal expenditures) | K165 | 0 | M.1.f. |
| *Itemize loan categories included in Memorandum item 1.f, above that exceed 10 percent of total loans restructured in troubled debt restructurings that are in compliance with their modified terms (sum of Memorandum items 1.a through 1.f):* | RCON | | |
| (1) Loans secured by farmland in domestic offices | K166 | 0 | M.1.f.(1) |
| (2) Not applicable | RCFD | | M.1.f.(2) |
| (3) Loans to finance agricultural production and other loans to farmers | K168 | 0 | M.1.f.(3) |
| (4) Loans to individuals for household, family, and other personal expenditures: | | | |
| (a) Credit cards | K098 | 0 | M.1.f.(4)(a) |
| (b) Automobile loans | K203 | 0 | M.1.f.(4)(b) |
| (c) Other (includes revolving credit plans other than credit cards, and other consumer loans) | K204 | 0 | M.1.f.(4)(c) |
| g. Total loans restructured in troubled debt restructurings that are in compliance with their modified terms (sum of Memorandum items 1.a.(1) through 1.f) | HK25 | 34,000 | M.1.g. |

[1] For "large institutions" and "highly complex institutions," as defined for deposit insurance assessment purposes in FDIC regulations, item 12, column A, must equal the sum of items 1.a.(1) through 10.b, column A, less item 11, column A. For all other institutions, item 12, column A, must equal the sum of through 10.b, column A, less item 11, column A. For all institutions, item 12, column B, must equal the sum of items 1.a.(1) item 1 and items 2.a.(1) through 10, column B, less item 11, column B.

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

## Schedule RC-C—Continued

### Part I—Continued

#### Memoranda—Continued

| | Dollar Amounts in Thousands | RCON | Amount | |
|---|---|---|---|---|
| 2. | Maturity and repricing data for loans and leases (excluding those in nonaccrual status): | | | |
| | a. Closed-end loans secured by first liens on 1–4 family residential properties in domestic offices (reported in Schedule RC-C, Part I, item 1.c.(2)(a), column B) with a remaining maturity or next repricing date of:[1,2] | | | |
| | (1) Three months or less................................................... | A564 | 711,000 | M.2.a.(1) |
| | (2) Over three months through 12 months........................... | A565 | 89,000 | M.2.a.(2) |
| | (3) Over one year through three years.............................. | A566 | 4,000 | M.2.a.(3) |
| | (4) Over three years through five years............................ | A567 | 2,000 | M.2.a.(4) |
| | (5) Over five years through 15 years................................ | A568 | 61,000 | M.2.a.(5) |
| | (6) Over 15 years........................................................... | A569 | 403,000 | M.2.a.(6) |
| | b. All loans and leases (reported in Schedule RC-C, Part I, items 1 through 10, column A) EXCLUDING closed-end loans secured by first liens on 1-4 family residential properties in domestic offices (reported in Schedule RC-C, Part I, item 1.c.(2)(a), column B) with a remaining maturity or next repricing date of:[1,3] | RCFD | | |
| | (1) Three months or less................................................... | A570 | 26,190,000 | M.2.b.(1) |
| | (2) Over three months through 12 months........................... | A571 | 405,000 | M.2.b.(2) |
| | (3) Over one year through three years.............................. | A572 | 260,000 | M.2.b.(3) |
| | (4) Over three years through five years............................ | A573 | 387,000 | M.2.b.(4) |
| | (5) Over five years through 15 years................................ | A574 | 471,000 | M.2.b.(5) |
| | (6) Over 15 years........................................................... | A575 | 440,000 | M.2.b.(6) |
| | c. Loans and leases (reported in Schedule RC-C, Part I, items 1 through 10, column A) with a REMAINING MATURITY of one year or less (excluding those in nonaccrual status)............... | A247 | 15,386,000 | M.2.c. |
| 3. | Loans to finance commercial real estate, construction, and land development activities (*not secured by real estate* ) included in Schedule RC-C, Part I, items 4 and 9, column A[4]........................ | 2746 | 1,246,000 | M.3. |
| 4. | Adjustable-rate closed-end loans secured by first liens on 1-4 family residential properties in domestic offices (included in Schedule RC-C, Part I, item 1.c.(2)(a), column B)........................... | RCON 5370 | 210,000 | M.4. |
| 5. | Loans secured by real estate to non-U.S. addressees (domicile) (included in Schedule RC-C, Part I, item 1, column A or Schedule RC-C, Part I, items 1.a.(1) through 1.e.(2), column A, as appropiate)............................ | RCFD B837 | 0 | M.5. |
| | *Memorandum item 6 is to be completed by banks that (1) together with affiliated institutions, have outstanding credit card receivables (as defined in the instructions) that exceed $500 million as of the report date, or (2) are credit card specialty banks as defined for Uniform Bank Performance Report purposes.* | | | |
| 6. | Outstanding credit card fees and finance charges included in Schedule RC-C, Part I, item 6.a, column A............................................................... | C391 | | M.6. |
| | *Memorandum item 7 is to be completed by all banks.* | | | |
| 7. | Purchased credit-impaired loans held for investment accounted for in accordance with FASB ASC 310-30 (former AICPA Statement of Position 03-3) (exclude loans held for sale): | | | |
| | a. Outstanding balance................................................. | C779 | 0 | M.7.a. |
| | b. Amount included in Schedule RC-C, Part I, items 1 through 9............................... | C780 | 0 | M.7.b. |

1 Report fixed rate loans and leases by remaining maturity and floating rate loans by next repricing date
2 Sum of Memorandum items 2.a.(1) through 2.a.(6), plus total nonaccrual closed-end loans secured by first liens on 1-4 family residential properties in domestic offices included in Schedule RC-N, item 1.c.(2)(1), column C, must equal total closed-end loans secured by first liens on 1-4 family residential properties from Schedule RC-C, Part I, item 1.c.(2)(a), column B.
3 Sum of Memorandum items 2.b.(1) through 2.b.(6), plus total nonaccrual loans and leases from Schedule RC-N, item 9, column C minus nonaccrual closed-end loans secured by first liens on 1–4 family residential properties in domestic offices included in Schedule RC-N, item 1.c (2)(a), column C, must equal total loans and leases from Schedule RC-C, Part I, sum of items 1 through 10, column A, minus total closed-end loans secured by first liens on 1–4 family residential properties in domestic offices from Schedule RC-C, Part I, item 1.c.(2)(a), column B
4 Exclude loans secured by real estate that are included in Schedule RC-C, Part I, item 1, column A

__The Bank of New York Mellon__
Legal Title of Bank

FDIC Certificate Number: 00639

## Schedule RC-C—Continued

### Part I—Continued

**Memoranda—Continued**

| | Dollar Amounts in Thousands | RCON | Amount | |
|---|---|---|---|---|

*Memoranda item 13 is to be completed by banks that had construction, land development, and other land loans in domestic offices (as reported in Schedule RC-C, Part I, item 1.a., column B) that exceeded 100 percent of total risk-based capital (as reported in Schedule RC-R, PartI, item 35.a) as of December 31, 2016.*

13. Construction, land development, and other land loans in domestic offices with interest reserves:

    a. Amount of loans that provide for the use of interest reserves (included in Schedule RC-C, Part I, item 1.a, column B).................... | G376 | 0 | M.13.a.

    b. Amount of interest capitalized from interest reserves on construction, land development, and other land loans that is included in interest and fee income on loans during the quarter (included in Schedule RI, item 1.a.(1)(a)(2))................... RIAD | G377 | 0 | M.13.b.

*Memorandum item 14 is to be completed by all banks.*

14. Pledged loans and leases................... RCFD | G378 | 2,608,000 | M.14.

*Memorandum item 15 is to be completed for the December report only.*

15. Reverse mortgages in domestic offices:

    a. Reverse mortgages outstanding that are held for investment (included in Schedule RC-C, item 1.c, above): RCON

        (1) Home Equity Conversion Mortgage (HECM) reverse mortgages................... | J466 | | M.15.a.(1)

        (2) Proprietary reverse mortgages................... | J467 | | M.15.a.(2)

    b. Estimated number of reverse mortgage loan referrals to other lenders during the year from whom compensation has been received for services performed in connection with the origination of the reverse mortgages: Number

        (1) Home Equity Conversion Mortgage (HECM) reverse mortgages................... | J468 | | M.15.b.(1)

        (2) Proprietary reverse mortgages................... | J469 | | M.15.b.(2)

    c. Principal amount of reverse mortgages originations that have been sold during the year: Amount

        (1) Home Equity Conversion Mortgage (HECM) reverse mortgages................... | J470 | | M.15.c.(1)

        (2) Proprietary reverse mortgages................... | J471 | | M.15.c.(2)

03/2017

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

## Schedule RC-C—Continued

### Part II. Loans to Small Businesses and Small Farms

Report the number and amount currently outstanding as of the report date of business loans with "original amounts" of $1,000,000 or less and farm loans with "original amounts" of $500,000 or less. The following guidelines should be used to determine the "original amount" of a loan:

(1) For loans drawn down under lines of credit or loan commitments, the "original amount" of the loan is the size of the line of credit or loan commitment when the line of credit or loan commitment was most recently approved, extended, or renewed prior to the report date. However, if the amount currently outstanding as of the report date exceeds this size, the "original amount" is the amount outstanding on the report date.

(2) For loan participations and syndications, the "original amount" of the loan participation or syndication is the entire amount of the credit originated by the lead lender.

(3) For all other loans, the "original amount" is the total amount of the loan at origination or the amount currently outstanding as of the report date, whichever is larger.

**Loans to Small Businesses**
1. and 2. Not applicable

| Dollar Amounts in Thousands | | Column A<br>Number of Loans | | (Column B)<br>Amount Currently<br>Outstanding | |
|---|---|---|---|---|---|
| | RCON | Number | RCON | Amount | |
| 3. Number and amount currently outstanding of "Loans secured by nonfarm nonresidential properties" in domestic offices reported in Schedule RC-C, Part I, items 1.e.(1) and 1.e.(2), column B (sum of items 3.a through 3.c must be less than or equal to Schedule RC-C, Part I, sum of items 1.e.(1) and 1.e.(2), column B): | | | | | |
| a. With *original amounts* of $100,000 or less | 5564 | 0 | 5565 | 0 | 3.a. |
| b. With *original amounts* of more than $100,000 through $250,000 | 5566 | 0 | 5567 | 0 | 3.b. |
| c. With *original amounts* of more than $250,000 through $1,000,000 | 5568 | 2 | 5569 | 1,000 | 3.c. |
| 4. Number and amount *currently outstanding* of "Commercial and industrial loans to U.S. addressees" in domestic offices reported in Schedule RC-C, Part I, item 4.a, column B (sum of items 4.a through 4.c must be less than or equal to Schedule RC-C, Part I, item 4.a, column B): | | | | | |
| a. With *original amounts* of $100,000 or less | 5570 | 3 | 5571 | 0 | 4.a. |
| b. With *original amounts* of more than $100,000 through $250,000 | 5572 | 1 | 5573 | 0 | 4.b. |
| c. With original amounts of more than $250,000 through $1,000,000 | 5574 | 4 | 5575 | 2,000 | 4.c. |

03/2017

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

## Schedule RC-C—Continued

### Part II—Continued

**Agricultural Loans to Small Farms**

5. and 6. Not applicable

| | Column A | | (Column B) | |
|---|---|---|---|---|
| | | | Amount Currently | |
| | Number of Loans | | Outstanding | |
| Dollar Amounts in Thousands | RCON | Number | RCON | Amount |
| 7. Number and amount *currently outstanding* of "Loans secured by farmland (including farm residential and other improvements)" in domestic offices reported in Schedule RC-C, Part I, item 1.b, column B (sum of items 7.a through 7.c must be less than or equal to Schedule RC-C, Part I, item 1.b, column B): | | | | |
| a.   With *original amounts* of $100,000 or less..................................... | 5578 | | 5579 | | 7.a. |
| b.   With *original amounts* of more than $100,000 through $250,000................... | 5580 | | 5581 | | 7.b. |
| c.   With *original amounts* of more than $250,000 through $500,000................... | 5582 | | 5583 | | 7.c. |
| 8. Number and amount *currently outstanding* of "Loans to finance agricultural production and other loans to farmers" in domestic offices reported in Schedule RC-C, Part I, item 3, column B (sum of items 8.a through 8.c must be less than or equal to Schedule RC-C, Part I, item 3, column B): | | | | |
| a.   With *original amounts* of $100,000 or less..................................... | 5584 | | 5585 | | 8.a. |
| b.   With *original amounts* of more than $100,000 through $250,000................... | 5586 | | 5587 | | 8.b. |
| c.   With *original amounts* of more than $250,000 through $500,000................... | 5588 | | 5589 | | 8.c. |

03/2017

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

FFIEC 031
Page 30 of 84
RC-15

## Schedule RC-D—Trading Assets and Liabilities

*Schedule RC-D is to be completed by banks that reported average trading assets (Schedule RC-K, item 7)
of $2 million or more in any of the four preceding calendar quarters.*

| Dollar Amounts in Thousands | (Column A) Consolidated Bank | | (Column B) Domestic Offices | | |
|---|---|---|---|---|---|
| | RCFD | Amount | RCON | Amount | |
| **Assets** | | | | | |
| 1. U.S. Treasury securities | 3531 | 4,000 | 3531 | 4,000 | 1. |
| 2. U.S. Government agency obligations (exclude mortgage-backed securities) | 3532 | 0 | 3532 | 0 | 2. |
| 3. Securities issued by states and political subdivisions in the U.S. | 3533 | 0 | 3533 | 0 | 3. |
| 4. Mortgage-backed securities (MBS): | | | | | |
| a. Residential mortgage pass-through securities issued or guaranteed by FNMA, FHLMC, or GNMA | G379 | 0 | G379 | 0 | 4.a. |
| b. Other residential MBS issued or guaranteed by U.S. Government agencies or sponsored agencies[1] (include CMOs, REMICs, and stripped MBS) | G380 | 0 | G380 | 0 | 4.b. |
| c. All other residential MBS | G381 | 0 | G381 | 0 | 4.c. |
| d. Commercial MBS issued or guaranteed by U.S. Government agencies or sponsored agencies[1] | K197 | 0 | K197 | 0 | 4.d. |
| e. All other commercial MBS | K198 | 0 | K198 | 0 | 4.e. |
| 5. Other debt securities: | | | | | |
| a. Structured financial products: | | | | | |
| (1) Cash | G383 | 0 | G383 | 0 | 5.a.(1) |
| (2) Synthetic | G384 | 0 | G384 | 0 | 5.a.(2) |
| (3) Hybrid | G385 | 0 | G385 | 0 | 5.a.(3) |
| b. All other debt securities | G386 | 0 | G386 | 0 | 5.b. |
| 6. Loans: | | | | | |
| a. Loans secured by real estate: | F610 | 0 | | | 6.a. |
| (1) Construction, land development, and other land loans | | | F604 | 0 | 6.a.(1) |
| (2) Secured by farmland (including farm residential and other improvements) | | | F605 | 0 | 6.a.(2) |
| (3) Secured by 1–4 family residential properties: | | | | | |
| (a) Revolving, open-end loans secured by 1–4 family residential properties and extended under lines of credit | | | F606 | 0 | 6.a.(3)(a) |
| (b) Closed-end loans secured by 1–4 family residential properties: | | | | | |
| (1) Secured by first liens | | | F607 | 0 | 6.a.(3)(b)(1) |
| (2) Secured by junior liens | | | F611 | 0 | 6.a.(3)(b)(2) |
| (4) Secured by multifamily (5 or more) residential properties | | | F612 | 0 | 6.a.(4) |
| (5) Secured by nonfarm nonresidential properties | | | F613 | 0 | 6.a.(5) |
| b. Commercial and industrial loans | F614 | 0 | F614 | 0 | 6.b. |
| c. Loans to individuals for household, family, and other personal expenditures (i.e., consumer loans) (includes purchased paper): | | | | | |
| (1) Credit cards | F615 | 0 | F615 | 0 | 6.c.(1) |
| (2) Other revolving credit plans | F616 | 0 | F616 | 0 | 6.c.(2) |
| (3) Automobile loans | K199 | 0 | K199 | 0 | 6.c.(3) |
| (4) Other consumer loans | K210 | 0 | K210 | 0 | 6.c.(4) |
| d. Other loans | F618 | 0 | F618 | 0 | 6.d. |
| 7.–8. Not applicable | | | | | |

---

[1] U.S. Government agencies include, but are not limited to, such agencies as the Government National Mortgage Association (GNMA), the Federal Deposit Insurance Corporation (FDIC), and the National Credit Union Administration (NCUA). U.S. Government-sponsored agencies include, but are not limited to, such agencies as the Federal Home Loan Mortgage Corporation (FHLMC) and the Federal National Mortgage Association (FNMA).

06/2012

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

## Schedule RC-D—Continued

| Dollar Amounts in Thousands | | (Column A) Consolidated Bank | | (Column B) Domestic Offices | |
|---|---|---|---|---|---|
| | RCFD | Amount | RCON | Amount | |
| 9. Other trading assets | 3541 | 0 | 3541 | 0 | 9. |
| 10. Not applicable | | | | | |
| 11. Derivatives with a positive fair value | 3543 | 3,197,000 | 3543 | 1,759,000 | 11. |
| 12. Total trading assets (sum of items 1 through 11) | | | | | |
| (total of column A must equal Schedule RC, item 5) | 3545 | 3,201,000 | 3545 | 1,763,000 | 12. |
| **Liabilities** | | | | | |
| 13. a. Liability for short positions | 3546 | 14,000 | 3546 | 14,000 | 13.a. |
| b. Other trading liabilities | F624 | 0 | F624 | 0 | 13.b. |
| 14. Derivatives with a negative fair value | 3547 | 2,395,000 | 3547 | 1,217,000 | 14. |
| 15. Total trading liabilities (sum of items 13.a through 14) | | | | | |
| (total of column A must equal Schedule RC, item 15) | 3548 | 2,409,000 | 3548 | 1,231,000 | 15. |

### Memoranda

| Dollar Amounts in Thousands | RCFD | Amount | RCON | Amount | |
|---|---|---|---|---|---|
| 1. Unpaid principal balance of loans measured at fair value (reported in Schedule RC-D, items 6.a through 6.d): | | | | | |
| a. Loans secured by real estate | F790 | 0 | | | M.1.a. |
| (1) Construction, land development, and other land loans | | | F625 | 0 | M.1.a.(1) |
| (2) Secured by farmland (including farm residential and other improvements) | | | F626 | 0 | M.1.a.(2) |
| (3) Secured by 1–4 family residential properties: | | | | | |
| (a) Revolving, open-end loans secured by 1–4 family residential properties and extended under lines of credit | | | F627 | 0 | M.1.a.(3)(a) |
| (b) Closed-end loans secured by 1–4 family residential properties: | | | | | |
| (1) Secured by first liens | | | F628 | 0 | M.1.a.(3)(b)(1) |
| (2) Secured by junior liens | | | F629 | 0 | M.1.a.(3)(b)(2) |
| (4) Secured by multifamily (5 or more) residential properties | | | F630 | 0 | M.1.a.(4) |
| (5) Secured by nonfarm nonresidential properties | | | F631 | 0 | M.1.a.(5) |
| b. Commercial and industrial loans | F632 | 0 | F632 | 0 | M.1.b. |
| c. Loans to individuals for household, family, and other personal expenditures (i.e., consumer loans) (includes purchased paper): | | | | | |
| (1) Credit cards | F633 | 0 | F633 | 0 | M.1.c.(1) |
| (2) Other revolving credit plans | F634 | 0 | F634 | 0 | M.1.c.(2) |
| (3) Automobile loans | K200 | 0 | K200 | 0 | M.1.c.(3) |
| (4) Other consumer loans | K211 | 0 | K211 | 0 | M.1.c.(4) |
| d. Other loans | F636 | 0 | F636 | 0 | M.1.d. |
| 2. Loans measured at fair value that are past due 90 days or more: | | | | | |
| a. Fair value | F639 | 0 | F639 | 0 | M.2.a. |
| b. Unpaid principal balance | F640 | 0 | F640 | 0 | M.2.b. |

06/2012

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

## Schedule RC-D—Continued

### Memoranda—Continued

| Dollar Amounts in Thousands | (Column A) Consolidated Bank RCFD | Amount | (Column B) Domestic Offices RCON | Amount | |
|---|---|---|---|---|---|
| 3. Structured financial products by underlying collateral or reference assets (for each column, sum of Memorandum items 3.a through 3.g must equal Schedule RC-D, sum of items 5.a.(1) through (3)): | | | | | |
| a. Trust preferred securities issued by financial institutions............................ | G299 | 0 | G299 | 0 | M.3.a. |
| b. Trust preferred securities issued by real estate investment trusts............. | G332 | 0 | G332 | 0 | M.3.c. |
| c. Corporate and similar loans.................................................................. | G333 | 0 | G333 | 0 | M.3.c. |
| d. 1–4 family residential MBS issued or guaranteed by U.S. government-sponsored enterprises (GSEs)................................................ | G334 | 0 | G334 | 0 | M.3.d. |
| e. 1–4 family residential MBS not issued or guaranteed by GSEs................ | G335 | 0 | G335 | 0 | M.3.e. |
| f. Diversified (mixed) pools of structured financial products....................... | G651 | 0 | G651 | 0 | M.3.f. |
| g. Other collateral or reference assets..................................................... | G652 | 0 | G652 | 0 | M.3.g. |
| 4. Pledged trading assets: | | | | | |
| a. Pledged securities.............................................................................. | G387 | 0 | G387 | 0 | M.4.a. |
| b. Pledged loans.................................................................................... | G388 | 0 | G388 | 0 | M.4.b. |

*Memorandum items 5 through 10 are to be completed by banks that reported average trading assets (Schedule RC-K, item 7) of $1 billion or more in any of the four preceding calendar quarters.*

| Dollar Amounts in Thousands | RCFD | Amount | |
|---|---|---|---|
| 5. Asset-backed securities: | | | |
| a. Credit card receivables................................................................ | F643 | 0 | M.5.a. |
| b. Home equity lines....................................................................... | F644 | 0 | M.5.b. |
| c. Automobile loans........................................................................ | F645 | 0 | M.5.c. |
| d. Other consumer loans................................................................. | F646 | 0 | M.5.d. |
| e. Commercial and industrial loans................................................. | F647 | 0 | M.5.e. |
| f. Other....................................................................................... | F648 | 0 | M.5.f. |
| 6. Retained beneficial interests in securitizations (first-loss or equity tranches)............ | F651 | 0 | M.6. |
| 7. Equity securities (included in Schedule RC-D, item 9, above): | | | |
| a. Readily determinable fair values.................................................. | F652 | 0 | M.7.a. |
| b. Other....................................................................................... | F653 | 0 | M.7.b. |
| 8. Loans pending securitization....................................................... | F654 | 0 | M.8. |
| 9. Other trading assets (itemize and describe amounts included in Schedule RC-D, item 9, that are greater than **$1,000,000** and exceed 25 percent of the item):[1] | | | |
| a. TEXT F655 | F655 | 0 | M.9.a. |
| b. TEXT F656 | F656 | 0 | M.9.b. |
| c. TEXT F657 | F657 | 0 | M.9.c. |
| 10. Other trading liabilities (itemize and describe amounts included in Schedule RC-D, item 13.b, that are greater than **$1,000,000** and exceed 25 percent of the item): | | | |
| a. TEXT F658 | F658 | 0 | M.10.a. |
| b. TEXT F659 | F659 | 0 | M.10.b. |
| c. TEXT F660 | F660 | 0 | M.10.c. |

---

[1]    Exclude equity securities.

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

## Schedule RC-E—Deposit Liabilities

### Part I. Deposits in Domestic Offices

| Dollar Amounts in Thousands | Transaction Accounts (Column A) Total transaction accounts (including total demand deposits) | | (Column B) Memo: Total demand deposits1 (included in column A) | | Nontransaction Accounts (Column C) Total nontransaction accounts (including MMDAs) | | |
|---|---|---|---|---|---|---|---|
| | RCON | Amount | RCON | Amount | RCON | Amount | |
| Deposits of: | | | | | | | |
| 1. Individuals, partnerships, and corporations............ | B549 | 59,069,000 | | | B550 | 44,572,000 | 1. |
| 2. U.S. Government............................................... | 2202 | 452,000 | | | 2520 | 4,000 | 2. |
| 3. States and political subdivisions in the U.S. .......... | 2203 | 5,156,000 | | | 2530 | 1,155,000 | 3. |
| 4. Commercial banks and other depository institutions in the U.S. ......................................... | B551 | 1,182,000 | | | B552 | 860,000 | 4. |
| 5. Banks in foreign countries................................... | 2213 | 6,015,000 | | | 2236 | 1,531,000 | 5. |
| 6. Foreign governments and official institutions (including foreign central banks).......................... | 2216 | 132,000 | | | 2377 | 78,000 | 6. |
| 7. Total (sum of items 1 through 6) (sum of columns A and C must equal Schedule RC, item 13.a)...................................................... | 2215 | 72,006,000 | 2210 | 71,775,000 | 2385 | 48,200,000 | 7. |

### Memoranda

| Dollar Amounts in Thousands | RCON | Amount | |
|---|---|---|---|
| 1. Selected components of total deposits (i.e., sum of item 7, columns A and C): | | | |
| a. Total Individual Retirement Accounts (IRAs) and Keogh Plan accounts................................. | 6835 | 4,288,000 | M.1.a. |
| b. Total brokered deposits.................................................................................. | 2365 | 5,024,000 | M.1.b. |
| c. **Brokered deposits of $250,000 or less (fully insured brokered deposits)²** | HK05 | 5,000,000 | M.1.c. |
| d. Maturity data for brokered deposits: | | | |
| (1) **Brokered deposits of $250,000 or less with a remaining maturity of one year or less (included in Memorandum item 1.c. above)**........................................................ | HK06 | 5,000,000 | M.1.d.(1) |
| (2) Not applicable | | | |
| (3) Brokered deposits of more than $250,000 with a remaining maturity of one year or less (included in Memorandum item 1.b above)................................................ | K220 | 24,000 | M.1.d.(3) |
| e. Preferred deposits (unsured deposits of states and political subdivisions in the U.S. reported in item 3 above which are secured or collateralized as required under state law) (to be completed for the December report only) .................................................... | 5590 | | M.1.e |
| f. Estimated amount of deposits obtained through the use of deposit listing services that are not brokered deposits....................................................................... | K223 | 0 | M.1.f |

---

[1] Includes interest-bearing and noninterest-bearing demand deposits.

[2] The dollar amounts used as the basis for reporting in Memorandum items 1.c. reflects the deposit insurance limits in effect on the report date

03/2017

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

## Schedule RC-E—Continued

### Part I. Continued

#### Memoranda—Continued

| | | Dollar Amounts in Thousands | RCON | Amount | |
|---|---|---|---|---|---|
| 2. | Components of total nontransaction accounts | | | | |
| | (sum of Memorandum items 2.a through 2.d must equal item 7, column C above): | | | | |
| | a. Savings deposits: | | | | |
| | (1) Money market deposit accounts (MMDAs) | | 6810 | 23,665,000 | M.2.a.(1) |
| | (2) Other savings deposits (excludes MMDAs) | | 0352 | 38,000 | M.2.a.(2) |
| | b. Total time deposits of less than $100,000 | | 6648 | 48,000 | M.2.b. |
| | c. Total time deposits of $100,000 through $250,000 | | J473 | 87,000 | M.2.c. |
| | d. Total time deposits of more than $250,000 | | J474 | 24,362,000 | M.2.d. |
| | e. Individual Retirement Accounts (IRAs) and Keogh Plan accounts of $100,000 or more | | | | |
| | included in Memorandum items 2.c and 2.d above | | F233 | 0 | M.2.e. |
| 3. | Maturity and repricing data for **time deposits of $250,000 or less**: | | | | |
| | a. **Time deposits of $250,000 or less** with a remaining maturity or next repricing date of: [1,2] | | | | |
| | (1) Three months or less | | HK07 | 134,000 | M.3.a.(1) |
| | (2) Over three months through 12 months | | HK08 | 1,000 | M.3.a.(2) |
| | (3) Over one year through three years | | HK09 | 0 | M.3.a.(3) |
| | (4) Over three years | | HK10 | 0 | M.3.a.(4) |
| | b. **Time deposits of $250,000 or less** with a REMAINING MATURITY of one year or less | | | | |
| | (included in Memorandum item 3.a.(1) and 3.a.(2) above)[3] | | HK11 | 135,000 | M.3.b. |
| 4. | Maturity and repricing data for **time deposits of more than $250,000**: | | | | |
| | a. **Time deposits of more than $250,000** with a remaining maturity or next repricing date of: [1,4] | | | | |
| | (1) Three months or less | | HK12 | 24,360,000 | M.4.a.(1) |
| | (2) Over three months through 12 months | | HK13 | 2,000 | M.4.a.(2) |
| | (3) Over one year through three years | | HK14 | 0 | M.4.a.(3) |
| | (4) Over three years | | HK15 | 0 | M.4.a.(4) |
| | b. Total deposits of more than $250,000 with a REMAINING MATURITY of one year or less | | | | |
| | (included in Memorandum items 4.a.(1) and 4.a.(2) above)[3] | | K222 | 24,362,000 | M.4.b. |

| | | | RCON | YES/NO | |
|---|---|---|---|---|---|
| 5. | Does your institution offer one or more consumer deposit account products, i.e., transaction | | | | |
| | account or nontransaction savings account deposit products intended primarily for individuals | | | | |
| | for personal, household, or family use? | | P752 | NO | 5. |

*Memorandum items 6 and 7 are to be completed by institutions with $1 billion or more in total
assets [5] that answered "Yes" to Memorandum item 5 above.*

| | | Dollar Amounts in Thousands | RCON | Amount | |
|---|---|---|---|---|---|
| 6. | Components of total transaction account deposits of individuals, partnerships, and corporations | | | | |
| | (sum of Memorandum items 6.a and 6.b must less than or equal item 1, column A, above): | | | | |
| | a. Total deposits in those noninterest-bearing transaction account deposit products | | | | |
| | intended primarily for individuals for personal, household, or family use | | P753 | | 6.a. |
| | b. Total deposits in those interest-bearing transaction account deposit products intended | | | | |
| | primarily for individuals for personal, household, or family use | | P754 | | 6.b. |

---

1 Report fixed-rate time deposits by remaining maturity and floating rate time deposits by next repricing date
2 Sum of Memorandum items 3.a.(1) through 3.a.(4) must equal Schedule RC-E, sum of Memorandum items 2.b and 2.c
3 Report both fixed- and floating-rate time deposits by remaining maturity. Exclude floating rate time deposits with a next repricing date
 of one year or less that have a remaining maturity of over one year
4 Sum of Memorandum items 4.a.(1) through 4.a.(4) must equal Schedule RC-E, sum of Memorandum items 2.c and 2.d
5 The $1 billion asset size test is based on the total assets reported on the June 30, 2016, Report of Condition.

03/2017

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

FFIEC 031
Page 35 of 84
RC-20

## Schedule RC-E—Continued

### Part I. Continued

**Memoranda—Continued**

| | Dollar Amounts in Thousands | RCON | Amount | |
|---|---|---|---|---|
| 7. | Components of total nontransaction account deposits of individuals, partnerships, and corporations (sum of Memorandum items 7.a.(1), 7.a.(2), 7.b.(1), and 7.b.(2) plus all time deposits of individuals, partnerships, and corporations must equal item 1, column C, above): | | | |
| a. | Money market deposit accounts (MMDAs) of individuals, partnerships, and corporations (sum of Memorandum items 7.a.(1) and 7.a.(2) must be less than or equal to Memorandum item 2.a.(1) above): | | | |
| | (1) Total deposits in those MMDA deposit products intended primarily for individuals for personal, household, or family use.......................... | P756 | | 7.a.(1) |
| | (2) Deposits in all other MMDAs of individuals, partnerships, and corporations.................... | P757 | | 7.a.(2) |
| b. | Other savings deposit accounts of individuals, partnerships, and corporations (sum of Memorandum items 7.b.(1) and 7.b.(2) must be less than or equal to Memorandum item 2.a.(2) above): | | | |
| | (1) Total deposits in those other savings deposit account deposit products intended primarily for individuals for personal, household, or family use.......................... | P758 | | 7.b.(1) |
| | (2) Deposits in all other savings deposit accounts of individuals, partnerships, and corporations.. | P759 | | 7.b.(2) |

## Part II. Deposits in Foreign Offices (including Edge and Agreement subsidiaries and IBFs)

*Item 1 through 6 are to be completed by banks with $10 billion or more in total assets* [1]

| | Dollar Amounts in Thousands | RCFN | Amount | |
|---|---|---|---|---|
| | Deposits of: | | | |
| 1. | Individuals, partnerships, and corporations (include all certified and official checks)...................... | B553 | 82,282,000 | 1. |
| 2. | U.S. banks (including IBFs and foreign branches of U.S. banks) and other U.S. depository institutions.......................... | B554 | 2,185,000 | 2. |
| 3. | Foreign banks (including U.S. branches and agencies of foreign banks, including their IBFs).................... | 2625 | 21,054,000 | 3. |
| 4. | Foreign governments and official institutions (including foreign central banks)....................... | 2650 | 11,157,000 | 4. |
| 5. | U.S. Government and states and political subdivisions in the U.S. ...................... | B555 | 274,000 | 5. |
| 6. | Total (sum of items 1 through 5) (must equal Schedule RC, item 13.b)........................ | 2200 | 116,952,000 | 6. |

**Memorandum**
*Memorandum item 1 is to be completed by all banks.*

| | Dollar Amounts in Thousands | RCFN | Amount | |
|---|---|---|---|---|
| 1. | Time deposits with a remaining maturity of one year or less (included in Schedule RC, item 13.b)................ | A245 | 1,800,000 | M.1. |

1 The $10 billion asset size test is based on the total assets reported on the June 30, 2016, Report of Condition.

03/2017

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

FFIEC 031
Page 36 of 84
RC-21

## Schedule RC-F—Other Assets

| | Dollar Amounts in Thousands | RCFD | Amount | |
|---|---|---|---|---|
| 1. | Accrued interest receivable[1] | B556 | 471,000 | 1. |
| 2. | Net deferred tax assets[2] | 2148 | 99,000 | 2. |
| 3. | Interest-only strips receivable (not in the form of a security)[3] on: | | | |
| | a. Mortgage loans | A519 | 0 | 3.a. |
| | b. Other financial assets | A520 | 0 | 3.b. |
| 4. | Equity securities that DO NOT have readily determinable fair values[4] | 1752 | 1,627,000 | 4. |
| 5 | Life insurance assets: | | | |
| | a. General account life insurance assets | K201 | 1,336,000 | 5.a. |
| | b. Separate account life insurance assets | K202 | 1,526,000 | 5.b. |
| | c. Hybrid account life insurance assets | K270 | 1,190,000 | 5.c. |
| 6. | All other assets (itemize and describe amounts greater than **$100,000** that exceed 25 percent of this item) | 2168 | 9,227,000 | 6. |
| | a. Prepaid expenses | 2166 | 0 | 6.a. |
| | b. Repossessed personal property (including vehicles) | 1578 | 0 | 6.b. |
| | c. Derivatives with a positive fair value held for purposes other than trading | C010 | 0 | 6.c. |
| | d. Retained interests in accrued interest receivable related to securitized credit cards | C436 | 0 | 6.d. |
| | e. FDIC loss-sharing indemnification assets | J448 | 0 | 6.e. |
| | f. Computer software | FT33 | 0 | 6.f. |
| | g. Accounts receivable | FT34 | 0 | 6.g. |
| | h. Receivables from foreclosed government-guaranteed mortgage loans | FT35 | 0 | 6.h. |
| | i. TEXT 3549  Accounts Receivable | 3549 | 2,737,000 | 6.i. |
| | j. TEXT 3550 | 3550 | 0 | 6.j. |
| | k. TEXT 3551 | 3551 | 0 | 6.k. |
| 7. | Total (sum of items 1 through 6) (must equal Schedule RC, item 11) | 2160 | 15,476,000 | 7. |

## Schedule RC-G—Other Liabilities

| | Dollar Amounts in Thousands | | |
|---|---|---|---|
| 1. | a. Interest accrued and unpaid on deposits in domestic offices[5] | 5,000 | 1.a. |
| | b. Other expenses accrued and unpaid (includes accrued income taxes payable) | 1,273,000 | 1.b. |
| 2. | Net deferred tax liabilities[2] | 1,746,000 | 2. |
| 3. | Allowance for credit losses on off-balance sheet credit exposures | 99,000 | 3. |
| 4. | All other liabilities (itemize and describe amounts greater than **$100,000** that exceed 25 percent of this item) | 3,816,000 | 4. |
| | a. Accounts payable | | 4.a. |
| | b. Deferred compensation liabilities | | 4.b. |
| | c. Dividends declared but not yet payable | | 4.c. |
| | d. Derivatives with a negative fair value held for purposes other than trading | | 4.d. |
| | e. | | 4.e. |
| | f. | | 4.f. |
| | g. | | 4.g. |
| 5. | Total (sum of items 1 through 4) (must equal Schedule RC, item 20) | | 5. |

---

1 Include accrued interest receivable on loans, leases, debt securities, and other interest-bearing assets
2 See discussion of deferred income taxes in Glossary entry on "income taxes."
3 Report interest-only strips receivable in the form of a security as available-for-sale securities in Schedule RC, item 2.b, or as trading assets in Schedule RC, item 5, as appropriate.
4 Include Federal Reserve stock, Federal Home Loan Bank stock, and bankers' bank stock.
5 For savings banks, include "dividends" accrued and unpaid on deposits.

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

FFIEC 031
Page 37 of 84
RC-22

## Schedule RC-H—Selected Balance Sheet Items for Domestic Offices

| | | Domestic Offices | |
|---|---|---|---|
| Dollar Amounts in Thousands | | RCON | Amount |
| 1. and 2. Not applicable | | | |
| 3. Securities purchased under agreements to resell | | B989 | 5,638,000 | 3. |
| 4. Securities sold under agreements to repurchase | | B995 | 2,833,000 | 4. |
| 5. Other borrowed money | | 3190 | 2,921,000 | 5. |
| *EITHER* | | | |
| 6. Net due *from* own foreign offices, Edge and Agreement subsidiaries, and IBFs | | 2163 | 0 | 6. |
| *OR* | | | |
| 7. Net due *to* own foreign offices, Edge and Agreement subsidiaries, and IBFs | | 2941 | 16,976,000 | 7. |
| 8. Total assets (excludes net due from foreign offices, Edge and Agreement subsidiaries, and IBFs) | | 2192 | 177,397,000 | 8. |
| 9. Total liabilities (excludes net due to foreign offices, Edge and Agreement subsidiaries, and IBFs) | | 3129 | 133,715,000 | 9. |

| | (Column A) Amortized Cost of Held-to-Maturity Securities | | (Column B) Fair Value of Available-for-Sale Securities | | |
|---|---|---|---|---|---|
| Dollar Amounts in Thousands | RCON | Amount | RCON | Amount | |
| 10. U.S. Treasury securities | 0211 | 8,178,000 | 1287 | 10,453,000 | 10. |
| 11. U.S. Government agency obligations (exclude mortgage-backed securities) | 8492 | 1,614,000 | 8495 | 790,000 | 11. |
| 12. Securities issued by states and political subdivisions in the U.S. | 8496 | 17,000 | 8499 | 3,095,000 | 12. |
| 13. Mortgage-backed securities (MBS): | | | | | |
| a. Mortgage pass-through securities: | | | | | |
| (1) Issued or guaranteed by FNMA, FHLMC, or GNMA | G389 | 22,705,000 | G390 | 13,825,000 | 13.a.(1) |
| (2) Other mortgage pass-through securities | 1709 | 0 | 1713 | 0 | 13.a.(2) |
| b. Other mortgage-backed securities (include CMOs, REMICs, and stripped MBS): | | | | | |
| (1) Issued or guaranteed by U.S. Government agencies or sponsored agencies[1] | G393 | 3,989,000 | G394 | 18,139,000 | 13.b.(1) |
| (2) All other mortgage-backed securities | 1733 | 64,000 | 1736 | 2,594,000 | 13.b.(2) |
| 14. Other domestic debt securities (include domestic structured financial products and domestic asset-backed securities) | G397 | 0 | G398 | 4,523,000 | 14. |
| 15. Other foreign debt securities (include foreign structured financial products and foreign asset-backed securities) | G399 | 0 | G400 | 946,000 | 15. |
| 16. Investments in mutual funds and other equity securities with readily determinable fair values | | | A511 | 23,000 | 16. |
| 17. Total held-to-maturity and available-for-sale securities (sum of items 10 through 16) | 1754 | 36,567,000 | 1773 | 54,388,000 | 17. |

| | | RCON | Amount | |
|---|---|---|---|---|
| 18. Equity securities that do not have readily determinable fair values | | 1752 | 1,627,000 | 18. |

---

[1] U.S. Government agencies include, but are not limited to, such agencies as the Government National Mortgage Association (GNMA), the Federal Deposit Insurance Corporation (FDIC), and the National Credit Union Administration (NCUA). U.S. Government-sponsored agencies include, but are not limited to, such agencies as the Federal Home Loan Mortgage Corporation (FHLMC) and the Federal National Mortgage Association (FNMA).

03/2014

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

## Schedule RC-I—Assets and Liabilities of IBFs
*To be completed only by banks with IBFs and other "foreign" offices.*

| | Dollar Amounts in Thousands | RCFN | Amount | |
|---|---|---|---|---|
| 1. | Total IBF assets of the consolidated bank (component of Schedule RC, item 12)............... | 2133 | 4,000,000 | 1. |
| 2. | Total IBF liabilities (component of Schedule RC, item 21)............... | 2898 | 10,051,000 | 2. |

## Schedule RC-K—Quarterly Averages[1]

| | Dollar Amounts in Thousands | RCFD | Amount | |
|---|---|---|---|---|
| **Assets** | | | | |
| 1. | Interest-bearing balances due from depository institutions................... | 3381 | 84,604,000 | 1. |
| 2. | U.S. Treasury securities and U.S. Government agency obligations[2] (excluding mortgage-backed securities)................... | B558 | 25,845,000 | 2. |
| 3. | Mortgage-backed securities[2]................... | B559 | 60,648,000 | 3. |
| 4. | All other securities[2, 3] (includes securities issued by states and political subdivisions in the U.S.)................... | B560 | 27,371,000 | 4. |
| 5. | Federal funds sold and securities purchased under agreements to resell................... | 3365 | 13,845,000 | 5. |
| 6. | Loans: | | | |
| | a. Loans in domestic offices: | RCON | | |
| | (1) Total loans................... | 3360 | 13,470,000 | 6.a.(1) |
| | (2) Loans secured by real estate: | | | |
| | (a) Loans secured by 1–4 family residential properties................... | 3465 | 1,378,000 | 6.a.(2)(a) |
| | (b) All other loans secured by real estate................... | 3466 | 2,849,000 | 6.a.(2)(b) |
| | (3) Loans to finance agricultural production and other loans to farmers................... | 3386 | 0 | 6.a.(3) |
| | (4) Commercial and industrial loans................... | 3387 | 564,000 | 6.a.(4) |
| | (5) Loans to individuals for household, family, and other personal expenditures: | | | |
| | (a) Credit cards................... | B561 | 0 | 6.a.(5)(a) |
| | (b) Other (includes revolving credit plans other than credit cards, automobile loans, and other consumer loans)................... | B562 | 52,000 | 6.a.(5)(b) |
| | b. Total loans in foreign offices, Edge and Agreement subsidiaries, and IBFs................... RCFN | 3360 | 12,711,000 | 6.b. |
| 7. | Trading assets................... RCFD | 3401 | 3,432,000 | 7. |
| 8. | Lease financing receivables (net of unearned income)................... RCFD | 3484 | 1,363,000 | 8. |
| 9. | Total assets[4]................... RCFD | 3368 | 271,702,000 | 9. |
| **Liabilities** | | RCON | | |
| 10. | Interest-bearing transaction accounts in domestic offices (interest-bearing demand deposits, NOW accounts, ATS accounts, and telephone and preauthorized transfer accounts)................... | 3485 | 5,601,000 | 10. |
| 11. | Nontransaction accounts in domestic offices: | | | |
| | a. Savings deposits (includes MMDAs)................... | B563 | 26,900,000 | 11.a. |
| | b. **Time deposits of $250,000 or less**................... | HK16 | 134,000 | 11.b. |
| | c. **Time deposits of more than $250,000**................... | HK17 | 23,671,000 | 11.c. |
| 12. | Interest-bearing deposits in foreign offices, Edge and Agreement subsidiaries, and IBFs................... RCFN | 3404 | 104,695,000 | 12. |
| 13. | Federal funds purchased and securities sold under agreements to repurchase................... RCFD | 3353 | 13,606,000 | 13. |
| 14. | Other borrowed money (includes mortgage indebtedness and obligations under capitalized leases)................... RCFD | 3355 | 4,325,000 | 14. |

---

1 For all items, banks have the option of reporting either (1) an average of *DAILY* figures for the quarter, or (2) an average of *WEEKLY* figures
(i.e., the Wednesday of each week of the quarter).
2 Quarterly averages for all debt securities should be based on amortized cost
3 Quarterly averages for all equity securities should be based on historical cost
4 The quarterly average for total assets should reflect all debt securities (not held for trading) at amortized cost, equity securities with readily
determinable fair values at the lower of cost or fair value, and equity securities without readily determinable fair values at historical cost

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

FFIEC 031
Page 39 of 84
RC-24

## Schedule RC-L—Derivatives and Off-Balance Sheet Items

Please read carefully the instructions for the preparation of Schedule RC-L. Some of the amounts reported in Schedule RC-L are regarded as volume indicators and not necessarily as measures of risk.

Dollar Amounts in Thousands

| | | | |
|---|---|---|---|
| 1. Unused commitments: | | | |
| a. Revolving, open-end lines secured by 1-4 family residential properties, e.g., home equity lines | 3814 | 0 | 1.a. |
| *Items 1.a.(1) and 1.a.(2) are to be completed for the December report only.* | | | |
| (1) Unused commitments for Home Equity Conversion Mortgage (HECM) reverse mortgages outstanding that are held for investment in domestic offices (included in item 1.a above) | RCON J477 | | 1.a.(1) |
| (2) Unused commitments for proprietary reverse mortgages outstanding that are held for investment in domestic offices (included in item 1.a above) | J478 | | 1.a.(2) |
| b. Credit card lines | RCFD 3815 | 0 | 1.b. |
| *Items 1.b.(1) and 1.b.(2) are to be completed by banks with either $300 million or more in total assets or $300 million or more in credit card lines.[1]* | | | |
| *(Sum of items 1.b.(1) and 1.b.(2) must equal item 1.b)* | | | |
| (1) Unused consumer credit card lines | J455 | 0 | 1.b.(1) |
| (2) Other unused credit card lines | J456 | 0 | 1.b.(2) |
| c. Commitments to fund commercial real estate, construction, and land development loans: | | | |
| (1) Secured by real estate: | | | |
| (a) 1–4 family residential construction loan commitments | F164 | 0 | 1.c.(1)(a) |
| (b) Commercial real estate, other construction loan, and land development loan commitments | F165 | 756,000 | 1.c.(1)(b) |
| (2) NOT secured by real estate | 6550 | 0 | 1.c.(2) |
| d. Securities underwriting | 3817 | 0 | 1.d. |
| e. Other unused commitments: | | | |
| (1) Commercial and industrial loans | J457 | 14,252,000 | 1.e.(1) |
| (2) Loans to financial institutions | J458 | 5,808,000 | 1.e.(2) |
| (3) All other unused commitments | J459 | 28,353,000 | 1.e.(3) |
| 2. Financial standby letters of credit | 3819 | 3,937,000 | 2. |
| *Item 2.a is to be completed by banks with $1 billion or more in total assets.[1]* | | | |
| a. Amount of financial standby letters of credit conveyed to others | 3820 | 679,000 | 2.a. |
| 3. Performance standby letters of credit | 3821 | 80,000 | 3. |
| *Item 3.a is to be completed by banks with $1 billion or more in total assets.[1]* | | | |
| a. Amount of performance standby letters of credit conveyed to others | 3822 | 3,000 | 3.a. |
| 4. Commercial and similar letters of credit | 3411 | 265,000 | 4. |
| 5. Not applicable | | | |
| 6. Securities lent and borrowed: | | | |
| a. Securities lent (including customers' securities lent where the customer is indemnified against loss by the reporting bank) | 3433 | 471,929,000 | 6.a. |
| b. Securities borrowed | 3432 | 0 | 6.b. |

| | (Column A) Sold Protection | | (Column B) Purchased Protection | | |
|---|---|---|---|---|---|
| | RCFD | Amount | RCFD | Amount | |
| 7. Credit derivatives: | | | | | |
| a. Notional amounts: | | | | | |
| (1) Credit default swaps | C968 | 0 | C969 | 180,000 | 7.a.(1) |
| (2) Total return swaps | C970 | 0 | C971 | 0 | 7.a.(2) |
| (3) Credit options | C972 | 0 | C973 | 0 | 7.a.(3) |
| (4) Other credit derivatives | C974 | 0 | C975 | 0 | 7.a.(4) |

[1] The asset size test and the $300 million credit card lines test are based on the total assets and credit card lines reported in the *June 30, 2016,* Report of Condition.

The Bank of New York Mellon
Legal Title of Bank

FDIC Certificate Number: 00639

FFIEC 031
Page 41 of 84
RC-26

## Schedule RC-L—Continued

| Dollar Amounts in Thousands | RCFD | Amount |
|---|---|---|
| 11. Year-to-date merchant credit card sales volume: | | |
| a. Sales for which the reporting bank is the acquiring bank........................ | C223 | 0 | 11.a. |
| b. Sales for which the reporting bank is the agent bank with risk................ | C224 | 0 | 11.b. |

| Dollar Amounts in Thousands<br>Derivatives Position Indicators | (Column A)<br>Interest Rate<br>Contracts<br>Amount | (Column B)<br>Foreign Exchange<br>Contracts<br>Amount | (Column C)<br>Equity Derivative<br>Contracts<br>Amount | (Column D)<br>Commodity and<br>Other Contracts<br>Amount | |
|---|---|---|---|---|---|
| 12. Gross amounts (e.g., notional amounts) (for each column, sum of items 12.a through 12.e must equal sum of items 13 and 14): | | | | | |
| | RCFD 8693 | RCFD 8694 | RCFD 8695 | RCFD 8696 | |
| a. Futures contracts.................... | 32,236,000 | 0 | 51,000 | 0 | 12.a. |
| | RCFD 8697 | RCFD 8698 | RCFD 8699 | RCFD 8700 | |
| b. Forward contracts.................... | 34,183,000 | 471,358,000 | 0 | 0 | 12.b. |
| c. Exchange-traded option contracts: | | | | | |
| | RCFD 8701 | RCFD 8702 | RCFD 8703 | RCFD 8704 | |
| (1) Written options.................... | 0 | 0 | 16,000 | 0 | 12.c.(1) |
| | RCFD 8705 | RCFD 8706 | RCFD 8707 | RCFD 8708 | |
| (2) Purchased options.................... | 0 | 0 | 74,000 | 0 | 12.c.(2) |
| d. Over-the-counter option contracts: | | | | | |
| | RCFD 8709 | RCFD 8710 | RCFD 8711 | RCFD 8712 | |
| (1) Written options.................... | 12,144,000 | 326,000 | 429,000 | 0 | 12.d.(1) |
| | RCFD 8713 | RCFD 8714 | RCFD 8715 | RCFD 8716 | |
| (2) Purchased options.................... | 12,537,000 | 326,000 | 464,000 | 0 | 12.d.(2) |
| | RCFD 3450 | RCFD 3826 | RCFD 8719 | RCFD 8720 | |
| e. Swaps.................... | 230,824,000 | 111,646,000 | 23,000 | 0 | 12.e. |
| 13. Total gross notional amount of derivative contracts held for trading.................... | | | | | |
| | RCFD A126 | RCFD A127 | RCFD 8723 | RCFD 8724 | |
| | 258,639,000 | 575,027,000 | 1,057,000 | 0 | 13. |
| 14. Total gross notional amount of derivative contracts held for purposes other than trading.................... | | | | | |
| | RCFD 8725 | RCFD 8726 | RCFD 8727 | RCFD 8728 | |
| | 63,285,000 | 8,629,000 | 0 | 0 | 14. |
| a. Interest rate swaps where the bank has agreed to pay a fixed rate.................... | | | | | |
| | RCFD A589 | | | | |
| | 36,815,000 | | | | 14.a. |
| 15. Gross fair values of derivative contracts: | | | | | |
| a. Contracts held for trading: | | | | | |
| | RCFD 8733 | RCFD 8734 | RCFD 8735 | RCFD 8736 | |
| (1) Gross positive fair value.................... | 6,589,000 | 4,997,000 | 81,000 | 0 | 15.a.(1) |
| | RCFD 8737 | RCFD 8738 | RCFD 8739 | RCFD 8740 | |
| (2) Gross negative fair value.................... | 6,484,000 | 4,579,000 | 131,000 | 0 | 15.a.(2) |
| b. Contracts held for purposes other than trading: | | | | | |
| | RCFD 8741 | RCFD 8742 | RCFD 8743 | RCFD 8744 | |
| (1) Gross positive fair value.................... | 474,000 | 37,000 | 0 | 0 | 15.b.(1) |
| | RCFD 8745 | RCFD 8746 | RCFD 8747 | RCFD 8748 | |
| (2) Gross negative fair value.................... | 755,000 | 318,000 | 0 | 0 | 15.b.(2) |

The Bank of New York Mellon
Legal Title of Bank
FDIC Certificate Number: 00639

FFIEC 031
Page 42 of 84
RC-27

## Schedule RC-L—Continued

*Item 16 is to be completed only by banks with total assets of $10 billion or more.[1]*

| Dollar Amounts in Thousands | Banks and Securities (Column A) | | Monoline Financial (Column B) Guarantors | | (Column C) Hedge Funds | | (Column D) Sovereign | | Corporations and All Other Counterparties (Column E) | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | RCFD | Amount | RCFD | Amount | RCFD | Amount | RCFD | Amount | RCFD | Amount | |
| **16. Over-the-counter derivatives:** | | | | | | | | | | | |
| a. Net current credit exposure | G418 | 842,000 | G419 | 26,000 | G420 | 1,429,000 | G421 | 329,000 | G422 | 2,369,000 | 16.a. |
| b. Fair value of collateral: | | | | | | | | | | | |
| (1) Cash—U.S. dollar | G423 | 531,000 | G424 | 0 | G425 | 717,000 | G426 | 30,000 | G427 | 237,000 | 16.b.(1) |
| (2) Cash—Other currencies | G428 | 142,000 | G429 | 0 | G430 | 1,655,000 | G431 | 0 | G432 | 58,000 | 16.b.(2) |
| (3) U.S. Treasury securities | G433 | 12,000 | G434 | 0 | G435 | 31,000 | G436 | 8,000 | G437 | 17,000 | 16.b.(3) |
| (4) U.S. Government agency and US Government-sponsored agency debt | G438 | 29,000 | G439 | 0 | G440 | 0 | G441 | 0 | G442 | 154,000 | 16.b.(4) |
| (5) Corporate bonds | G443 | 0 | G444 | 0 | G445 | 0 | G446 | 0 | G447 | 0 | 16.b.(5) |
| (6) Equity securities | G448 | 0 | G449 | 0 | G450 | 0 | G451 | 0 | G452 | 0 | 16.b.(6) |
| (7) All other collateral | G453 | 12,000 | G454 | 0 | G455 | 0 | G456 | 51,000 | G457 | 0 | 16.b.(7) |
| (8) Total fair value of collateral | G458 | 726,000 | G459 | 0 | G460 | 2,403,000 | G461 | 89,000 | G462 | 466,000 | 16.b.(8) |

(sum of items 16.b.(1) through (7))

[1] The $10 billion asset size test is based on the total assets reported on the *June 30, 2016,* Report of Condition.

03/2017

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

## Schedule RC-M—Memoranda

| | Dollar Amounts in Thousands | RCFD | Amount | |
|---|---|---|---|---|
| 1. | Extensions of credit by the reporting bank to its executive officers, directors, principal shareholders, and their related interests as of the report date: | | | |
| a. | Aggregate amount of all extensions of credit to all executive officers, directors, principal shareholders, and their related interests................................................ | 6164 | 328,000 | 1.a. |
| b. | Number of executive officers, directors, and principal shareholders to whom the amount of all extensions of credit by the reporting bank (including extensions of credit to related interests) equals or exceeds the lesser of $500,000 or 5 percent of total capital as defined for this purpose in agency regulations.................... [Number] 6165 | | 2 | 1.b. |
| 2. | Intangible assets other than goodwill: | | | |
| a. | Mortgage servicing assets................................................................ | 3164 | 0 | 2.a. |
| | (1) Estimated fair value of mortgage servicing assets........................... A590 | | 0 | 2.a. (1) |
| b. | Purchased credit card relationships and nonmortgage servicing assets............... | B026 | 0 | 2.b. |
| c. | All other identifiable intangible assets............................................. | 5507 | 861,000 | 2.c. |
| d. | Total (sum of items 2.a, 2.b, and 2.c) (must equal Schedule RC, item 10.b)........ | 0426 | 861,000 | 2.d. |
| 3. | Other real estate owned: | RCON | | |
| a. | Construction, land development, and other land in domestic offices.................. | 5508 | 0 | 3.a. |
| b. | Farmland in domestic offices.......................................................... | 5509 | 0 | 3.b. |
| c. | 1–4 family residential properties in domestic offices............................... | 5510 | 4,000 | 3.c. |
| d. | Multifamily (5 or more) residential properties in domestic offices................. | 5511 | 0 | 3.d. |
| e. | Nonfarm nonresidential properties in domestic offices.............................. | 5512 | 0 | 3.e. |
| f. | Foreclosed properties from "GNMA loans"............................................. | C979 | 0 | 3.f. |
| | | RCFN | | |
| g. | In foreign offices..................................................................... | 5513 | 0 | 3.g. |
| | | RCFD | | |
| h. | Total (sum of items 3.a through 3.g) (must equal Schedule RC, item 7).............. | 2150 | 4,000 | 3.h. |
| 4. | Not applicable | | | |
| 5. | Other borrowed money: | | | |
| a. | Federal Home Loan Bank advances: | | | |
| | (1) Advances with a remaining maturity or next repricing date of:[1] | | | |
| | (a) One year or less............................................................ | F055 | 0 | 5.a.(1)(a) |
| | (b) Over one year through three years........................................ | F056 | 0 | 5.a.(1)(b) |
| | (c) Over three years through five years...................................... | F057 | 0 | 5.a.(1)(c) |
| | (d) Over five years............................................................ | F058 | 0 | 5.a.(1)(d) |
| | (2) Advances with a REMAINING MATURITY of one year or less (included in item 5.a(1)(a) above)[2].................................. | 2651 | 0 | 5.a.(2) |
| | (3) Structured advances (included in items 5.a.(1)(a)-(d) above)................. | F059 | 0 | 5.a.(3) |
| b. | Other borrowings: | | | |
| | (1) Other borrowings with a remaining maturity or next repricing date of:[3] | | | |
| | (a) One year or less............................................................ | F060 | 4,522,000 | 5.b.(1)(a) |
| | (b) Over one year through three years........................................ | F061 | 0 | 5.b.(1)(b) |
| | (c) Over three years through five years...................................... | F062 | 0 | 5.b.(1)(c) |
| | (d) Over five years............................................................ | F063 | 0 | 5.b.(1)(d) |
| | (2) Other borrowings with a REMAINING MATURITY of one year or less (included in item 5.b(1)(a) above)[4]................................... | B571 | 4,492,000 | 5.b.(2) |
| c. | Total (sum of items 5.a.(1)(a)-(d) and items 5.b.(1)(a)-(d)) (must equal Schedule RC, item 16)...................................... | 3190 | 4,522,000 | 5.c. |

---

1 Report fixed-rate advances by remaining maturity and floating-rate advances by next repricing date
2 Report both fixed- and floating-rate advances by remaining maturity. Exclude floating-rate advances with a next repricing date of one year or less that have a remaining maturity of over one year.
3 Report fixed rate other borrowings by remaining maturity and floating rate other borrowings by next repricing date
4 Report both fixed- and floating-rate other borrowings by remaining maturity. Exclude floating rate other borrowings with a next repricing date of one year or less that have a remaining maturity of over one year

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

FFIEC 031
Page 44 of 84
RC-29

## Schedule RC-M—Continued

| | Dollar Amounts in Thousands | RCFD | Yes / No | |
|---|---|---|---|---|
| 6. | Does the reporting bank sell private label or third-party mutual funds and annuities?................................... | B569 | NO | 6. |

| | | RCFD | Amount | |
|---|---|---|---|---|
| 7. | Assets under the reporting bank's management in proprietary mutual funds and annuities................................. | B570 | 0 | 7. |

8.  Internet website addresses and physical office trade names:

    a. Uniform Resource Locator (URL) of the reporting institution's primary Internet website (home page), if any
      (Example: www.examplebank.com):

| TEXT 4087 | http:// | www.bnymellon.com | 8.a. |
|---|---|---|---|

    b. URLs of all other public-facing Internet websites that the reporting institution uses to accept or solicit deposits from
      the public, if any (Example: www.examplebank.biz):[1]

| | | | | |
|---|---|---|---|---|
| (1) | TE01 N528 | http:// | _____ | 8.b.(1) |
| (2) | TE02 N528 | http:// | _____ | 8.b.(2) |
| (3) | TE03 N528 | http:// | _____ | 8.b.(3) |
| (4) | TE04 N528 | http:// | _____ | 8.b.(4) |
| (5) | TE05 N528 | http:// | _____ | 8.b.(5) |
| (6) | TE06 N528 | http:// | _____ | 8.b.(6) |
| (7) | TE07 N528 | http:// | _____ | 8.b.(7) |
| (8) | TE08 N528 | http:// | _____ | 8.b.(8) |
| (9) | TE09 N528 | http:// | _____ | 8.b.(9) |
| (10) | TE10 N528 | http:// | _____ | 8.b.(10) |

    c. Trade names other than the reporting institution's legal title used to identify one or more of the institution's physical
      offices at which deposits are accepted or solicited from the public, if any:

| | | | |
|---|---|---|---|
| (1) | TE01 N529 | _____ | 8.c.(1) |
| (2) | TE02 N529 | _____ | 8.c.(2) |
| (3) | TE03 N529 | _____ | 8.c.(3) |
| (4) | TE04 N529 | _____ | 8.c.(4) |
| (5) | TE05 N529 | _____ | 8.c.(5) |
| (6) | TE06 N529 | _____ | 8.c.(6) |

| | | RCFD | Yes / No | |
|---|---|---|---|---|
| 9. | Do any of the bank's Internet websites have transactional capability, i.e., allow the bank's customers to execute transactions on their accounts through the website?........................... | 4088 | YES | 9. |

10. Secured liabilities:

| | | RCON | Amount | |
|---|---|---|---|---|
| a. | Amount of "Federal funds purchased in domestic offices" that are secured (included in Schedule RC, item 14.a)........................................... | F064 | 0 | 10.a. |
| b. | Amount of "Other borrowings" that are secured (included in Schedule RC-M, items 5.b.(1)(a)-(d)).................................. | RCFD F065 | 363,000 | 10.b. |

| | | RCON | Yes / No | |
|---|---|---|---|---|
| 11. | Does the bank act as trustee or custodian for Individual Retirement Accounts, Health Savings Accounts, and other similar accounts?.................................................. | G463 | YES | 11. |
| 12. | Does the bank provide custody, safekeeping, or other services involving the acceptance of orders for the sale or purchase of securities?.................................................. | G464 | YES | 12. |

---

1.  Report only highest level URLs (for example, report www.examplebank.biz, but do not also report
    www.examplebank.biz/checking). Report each top level domain name used (for example, report both www.examplebank.biz
    and www.examplebank.net).

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

## Schedule RC-M—Continued

| | Dollar Amounts in Thousands | RCON | Amount | |
|---|---|---|---|---|
| 13. Assets covered by loss-sharing agreements with the FDIC: | | | | |
| a. Loans and leases (included in Schedule RC, items 4.a and 4.b): | | | | |
| (1) Loans secured by real estate in domestic offices: | | | | |
| (a) Construction, land development, and other land loans: | | | | |
| (1) 1-4 family residential construction loans | | K169 | 0 | 13.a.(1)(a)(1) |
| (2) Other construction loans and all land development and other land loans | | K170 | 0 | 13.a.(1)(a)(2) |
| (b) Secured by farmland | | K171 | 0 | 13.a.(1)(b) |
| (c) Secured by 1-4 family residential properties: | | | | |
| (1) Revolving, open-end loans secured by 1-4 family residential properties and extended under lines of credit | | K172 | 0 | 13.a.(1)(c)(1) |
| (2) Closed-end loans secured by 1-4 family residential properties: | | | | |
| (a) Secured by first liens | | K173 | 0 | 13.a.(1)(c)(2)(a) |
| (b) Secured by junior liens | | K174 | 0 | 13.a.(1)(c)(2)(b) |
| (d) Secured by multifamily (5 or more) residential properties | | K175 | 0 | 13.a.(1)(d) |
| (e) Secured by nonfarm nonresidential properties: | | | | |
| (1) Loans secured by owner-occupied nonfarm nonresidential properties | | K176 | 0 | 13.a.(1)(e)(1) |
| (2) Loans secured by other nonfarm nonresidential properties | | K177 | 0 | 13.a.(1)(e)(2) |
| (2) - (4) Not applicable | | RCFD | | |
| (5) All other loans and all leases | | K183 | 0 | 13.a.(5) |
| b. Other real estate owned (included in Schedule RC, item 7): | | RCON | | |
| (1) Construction, land development, and other land in domestic offices | | K187 | 0 | 13.b.(1) |
| (2) Farmland in domestic offices | | K188 | 0 | 13.b.(2) |
| (3) 1-4 family residential properties in domestic offices | | K189 | 0 | 13.b.(3) |
| (4) Multifamily (5 or more) residential properties in domestic offices | | K190 | 0 | 13.b.(4) |
| (5) Nonfarm nonresidential properties in domestic offices | | K191 | 0 | 13.b.(5) |
| | | RCFN | | |
| (6) In foreign offices | | K260 | 0 | 13.b.(6) |
| (7) Portion of covered other real estate owned included in items 13.b.(1) through (6) | | RCFD | | |
| above that is protected by FDIC loss-sharing agreements | | K192 | 0 | 13.b.(7) |
| c. Debt securities (included in Schedule RC, items 2.a and 2.b) | | J461 | 0 | 13.c. |
| d. Other assets (exclude FDIC loss-sharing indemnification assets) | | J462 | 0 | 13.d. |
| 14. Captive insurance and reinsurance subsidiaries: | | | | |
| a. Total assets of captive insurance subsidiaries[1] | | K193 | 24,000 | 14.a. |
| b. Total assets of captive reinsurance subsidiaries[1] | | K194 | 0 | 14.b. |

1. Report total assets before eliminating intercompany transactions between the consolidated insurance or reinsurance subsidiary and other offices o consolidated subsidiaries of the reporting bank.

03/2017

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

## Schedule RC-M—Continued

*Item 15 is to be completed by institutions that are required or have elected to be treated as a Qualified Thrift Lender.*

15. Qualified Thrift Lender (QTL) test:

| | | | | |
|---|---|---|---|---|
| a. Does the institution use the Home Owners' Loan Act (HOLA) QTL test or the Internal Revenue Service Domestic Building and Loan Association (IRS DBLA) test to determine its QTL compliance? (for the HOLA QTL test, enter 1; for the IRS DBLA test, enter 2)............... | RCON | Number | L133 | 15.a. |
| b. Has the institution been in compliance with the HOLA QTL test as of each month end during the quarter or the IRS DBLA test for its most recent taxable year, as applicable?................... | | Yes / No | L135 | 15.b. |

*Item 16.a and, if appropriate, items 16.c and 16.d are to be completed semiannually in the June and December reports only. Item 16.b is to be completed annually in the June report only.*

16. International remittance transfers offered to consumers [1]

a. As of the report date, did your institution offer to consumers in any state any of the following mechanisms for sending international remittance transfers?

| | RCON | Yes / No | | |
|---|---|---|---|---|
| (a) International wire transfers .................................................................. | N517 | | | 16.a.(1) |
| (b) International ACH transactions ............................................................ | N518 | | | 16.a.(2) |
| (c) Other proprietary services operated by your institution ........................... | N519 | | | 16.a.(3) |
| (d) Other proprietary services operated by another party............................. | N520 | | | 16.a.(4) |

b. Did your institution provide more than 100 international remittance transfers in the previous calendar year or does your institution estimate that it will provide more than 100 international remittance transfers in the current calendar year? ...................... **N521** — 16.b

*Items 16.c and 16.d are to be completed by institutions that answered "Yes" to item 16.b in the current report or, if item 16.b is not required to be completed in the current report, in the most recent prior report in which item 16.b was required to be completed.*

c. Indicate which of the mechanisms described in items 16.a.(1), (2), and (3) above is the mechanism that your institution estimates accounted for the largest number of international remittance transfers your institution provided the two calendar quarters ending on the report date. (For international wire transfers, enter 1; for international ACH transactions, enter 2; for other proprietary services operated by your institution, enter 3. If your institution did not provide any international remittance transfers using the mechanisms described in items 16.a.(1), (2), and (3) above during the two calendar quarters ending on the report date, enter 0.)......................................................................................... **RCON Number N522** — 16.c

d. Estimated number and dollar value of international remittance transfers provided by your institution during the two calendar quarters ending on the report date:

| | RCON | | | |
|---|---|---|---|---|
| (1) Estimated number of international remittance transfers ........................... | N523 | Number | | 16.d.(1) |
| (2) Estimated dollar value of international remittance transfers ..................... | RCON N524 | Amount | | 16.d.(2) |
| (3) Estimated number of international remittance transfers for which your institution applied the temporary exception............................................................ | RCON N527 | Number | | 16.d.(3) |

---

1. Report information about international electronic transfers of funds offered to consumers in the United States that:

   (a) are "remittance transfers" as defined by subpart B of Regulation E (12 CFR § 1005.30(e)), or

   (b) would qualify as "remittance transfers" under subpart B of Regulation E (12 CFR § 1005.30(e)) but are excluded from that definition only because
   the provider is not providing those transfers in the normal course of its business. See 12 CFR § 1005.30(f).

   For purposes of this item 16, such transfers are referred to as international remittance transfers.

   Exclude transfers sent by your institution as a correspondent bank for other providers. With the exception of item 16.a.(4), report
   information only about transfers for which the reporting institution is the provider. For item 16.a.(4), report information about
   transfers for which another party is the provider, and the reporting institution is an agent or a similar type of business partner interacting with the
   consumers sending the international remittance transfers.

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

## Schedule RC-N—Past Due and Nonaccrual Loans, Leases, and Other Assets

| Dollar Amounts in Thousands | (Column A) Past due 30 through 89 days and still accruing | | (Column B) Past due 90 days or more and still accruing | | (Column C) Nonaccrual | | |
|---|---|---|---|---|---|---|---|
| | RCON | Amount | RCON | Amount | RCON | Amount | |
| 1. Loans secured by real estate: | | | | | | | |
| a. Construction, land development, and other land loans in domestic offices: | | | | | | | |
| (1) 1–4 family residential construction loans | F172 | 0 | F174 | 0 | F176 | 0 | 1.a.(1) |
| (2) Other construction loans and all land development and other land loans | F173 | 21,000 | F175 | 0 | F177 | 0 | 1.a.(2) |
| b. Secured by farmland in domestic offices | 3493 | 0 | 3494 | 0 | 3495 | 0 | 1.b. |
| c. Secured by 1–4 family residential properties in domestic offices: | | | | | | | |
| (1) Revolving, open-end loans secured by 1–4 family residential properties and extended under lines of credit | 5398 | 0 | 5399 | 0 | 5400 | 0 | 1.c.(1) |
| (2) Closed-end loans secured by 1–4 family residential properties: | | | | | | | |
| (a) Secured by first liens | C236 | 22,000 | C237 | 6,000 | C229 | 83,000 | 1.c.(2)(a) |
| (b) Secured by junior liens | C238 | 0 | C239 | 0 | C230 | 0 | 1.c.(2)(b) |
| d. Secured by multifamily (5 or more) residential properties in domestic offices | 3499 | 18,000 | 3500 | 0 | 3501 | 0 | 1.d. |
| e. Secured by nonfarm nonresidential properties in domestic offices: | | | | | | | |
| (1) Loans secured by owner-occupied nonfarm nonresidential properties | F178 | 0 | F180 | 0 | F182 | 0 | 1.e.(1) |
| (2) Loans secured by other nonfarm nonresidential properties | F179 | 35,000 | F181 | 0 | F183 | 0 | 1.e.(2) |
| | RCFN | | RCFN | | RCFN | | |
| f. In foreign offices | B572 | 0 | B573 | 0 | B574 | 0 | 1.f. |
| 2. Loans to depository institutions and acceptances of other banks: | | | | | | | |
| | RCFD | | RCFD | | RCFD | | |
| a. To U.S. banks and other U.S. depository institutions | 5377 | 0 | 5378 | 0 | 5379 | 0 | 2.a. |
| b. To foreign banks | 5380 | 0 | 5381 | 0 | 5382 | 0 | 2.b. |
| 3. Loans to finance agricultural production and other loans to farmers | 1594 | 0 | 1597 | 0 | 1583 | 0 | 3. |
| 4. Commercial and industrial loans: | | | | | | | |
| a. To U.S. addressees (domicile) | 1251 | 0 | 1252 | 0 | 1253 | 0 | 4.a. |
| b. To non-U.S. addressees (domicile) | 1254 | 0 | 1255 | 0 | 1256 | 0 | 4.b. |
| 5. Loans to individuals for household, family, and other personal expenditures: | | | | | | | |
| a. Credit cards | B575 | 0 | B576 | 0 | B577 | 0 | 5.a. |
| b. Automobile loans | K213 | 0 | K214 | 0 | K215 | 0 | 5.b. |
| c. Other (revolving credit plans other than credit cards and other consumer loans) | K216 | 0 | K217 | 0 | K218 | 0 | 5.c. |
| 6. Loans to foreign governments and official institutions | 5389 | 0 | 5390 | 0 | 5391 | 0 | 6. |
| 7. All other loans | 5459 | 37,000 | 5460 | 0 | 5461 | 0 | 7. |

06/2012

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

FFIEC 031
Page 48 of 84
RC-33

## Schedule RC-N—Continued

Amounts reported by loan and lease category in Schedule RC-N, items 1 through 8, include guaranteed and unguaranteed portions of past due and nonaccrual loans and leases. Report in items 11 and 12 below certain guaranteed loans and leases that have already been included in the amounts reported in items 1 through 8.

| Dollar Amounts in Thousands | (Column A) Past due 30 through 89 days and still accruing RCFD | Amount | (Column B) Past due 90 days or more and still accruing RCFD | Amount | (Column C) Nonaccrual RCFD | Amount | |
|---|---|---|---|---|---|---|---|
| 8. Lease financing receivables: | | | | | | | |
| a. Leases to individuals for household, family, and other personal expenditures............ | F166 | 0 | F167 | 0 | F168 | 0 | 8.a |
| b. All other leases................................................. | F169 | 0 | F170 | 0 | F171 | 0 | 8.b |
| 9. **Total loans and leases (sum of items 1 through 8.b.).....................................** | .1406 | 133,000 | 1407 | 6,000 | 1403 | 83,000 | 9. |
| 10 Debt securities and other assets (exclude other real estate owned and other repossessed assets)................................ | 3505 | 0 | 3506 | 0 | 3507 | 0 | 10 |
| 11 Loans and leases reported in items 1 through 8 above that are wholly or partially guaranteed by the U.S. Government, excluding loans and leases covered by loss sharing agreements with the FDIC........................ | K036 | 0 | K037 | 0 | K038 | 0 | 11 |
| a. Guaranteed portion of loans and leases included in item 11 above, excluding rebooked "GNMA loans"................... | K039 | 0 | K040 | 0 | K041 | 0 | 11.a. |
| b. Rebooked "GNMA loans" that have been repurchased or are eligible for repurchase included in item 11 above.............. | K042 | 0 | K043 | 0 | K044 | 0 | 11.b. |
| 12 Loans and leases reported in items 1 through 8 above that are covered by loss-sharing agreements with the FDIC: | | | | | | | |
| a. Loans secured by real estate in domestic offices: | | | | | | | |
| (1) Construction, land development, and other land loans: | RCON | | RCON | | RCON | | |
| (a) 1–4 family residential construction loans.................... | K045 | 0 | K046 | 0 | K047 | 0 | 12.a.(1)(a) |
| (b) Other construction loans and all land development and other land loans................................ | K048 | 0 | K049 | 0 | K050 | 0 | 12.a.(1)(b) |
| (2) Secured by farmland.................................... | K051 | 0 | K052 | 0 | K053 | 0 | 12.a.(2) |
| (3) Secured by 1–4 family residential properties: | | | | | | | |
| (a) Revolving, open-end loans secured by 1–4 family residential properties and extended under lines of credit....... | K054 | 0 | K055 | 0 | K056 | 0 | 12.a.(3)(a) |
| (b) Closed-end loans secured by 1–4 family residential properties: | | | | | | | |
| (1) Secured by first liens..................... | K057 | 0 | K058 | 0 | K059 | 0 | 12.a.(3)(b)(1) |
| (2) Secured by junior liens.................. | K060 | 0 | K061 | 0 | K062 | 0 | 12.a.(3)(b)(2) |
| (4) Secured by multifamily (5 or more) residential properties.................... | K063 | 0 | K064 | 0 | K065 | 0 | 12.a.(4) |

FFIEC 031
Page 49 of 84
RC-34

**The Bank of New York Mellon**
Legal Title of Bank
FDIC Certificate Number: 00639

## Schedule RC-N—Continued

| Dollar Amounts in Thousands | (Column A) Past due 30 through 89 days and still accruing | | (Column B) Past due 90 days or more and still accruing | | (Column C) Nonaccrual | | |
|---|---|---|---|---|---|---|---|
| | RCON | Amount | RCON | Amount | RCON | Amount | |
| 12 a. (5) Secured by nonfarm nonresidential properties: | | | | | | | |
| (a) Loans secured by owner-occupied nonfarm nonresidential properties.......... | K066 | 0 | K067 | 0 | K068 | 0 | 12.a.(5)(a) |
| (b) Loans secured by other nonfarm nonresidential properties...................... | K069 | 0 | K070 | 0 | K071 | 0 | 12.a.(5)(b) |
| b.-d. Not applicable | RCFD | | RCFD | | RCFD | | |
| e. All other loans and all leases............................ | K087 | 0 | K088 | 0 | K089 | 0 | 12.e. |
| f. Portion of covered loans and leases included in items 12.a through 12.e above that is protected by FDIC loss-sharing agreements.......................... | K102 | 0 | K103 | 0 | K104 | 0 | 12.f. |

06/2017

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

FFIEC 031
Page 50 of 84
RC-35

## Schedule RC-N—Continued

**Memoranda**

| | (Column A) Past due 30 through 89 days and still accruing | | (Column B) Past due 90 days or more and still accruing | | (Column C) Nonaccrual | |
|---|---|---|---|---|---|---|
| Dollar Amounts in Thousands | RCON | Amount | RCON | Amount | RCON | Amount |

1. Loans restructured in troubled debt restructurings included in Schedule items 1 through 7, above (and not reported in Schedule RC-C, Part I, Memorandum item 1):

| | RCON | Amount | RCON | Amount | RCON | Amount | |
|---|---|---|---|---|---|---|---|
| a. Construction, land development, and other land loans in domestic offices: | | | | | | | |
| (1) 1–4 family residential construction loans | K105 | 0 | K106 | 0 | K107 | 0 | M.1.a.(1) |
| (2) Other construction loans and all land development and other land loans | K108 | 0 | K109 | 0 | K110 | 0 | M.1.a.(2) |
| b. Loans secured by 1–4 family residential properties in domestic offices | F661 | 3,000 | F662 | 0 | F663 | 62,000 | M.1.b. |
| c. Secured by multifamily (5 or more) residential properties in domestic offices | K111 | 0 | K112 | 0 | K113 | 0 | M.1.c. |
| d. Secured by nonfarm nonresidential properties in domestic offices: | | | | | | | |
| (1) Loans secured by owner-occupied nonfarm nonresidential properties | K114 | 0 | K115 | 0 | K116 | 0 | M.1.d.(1) |
| (2) Loans secured by other nonfarm nonresidential properties | K117 | 0 | K118 | 0 | K119 | 0 | M.1.d.(2) |
| e. Commercial and industrial loans: | RCFD | | RCFD | | RCFD | | |
| (1) To U.S. addressees (domicile) | K120 | 0 | K121 | 0 | K122 | 0 | M.1.e.(1) |
| (2) To non-U.S. addressees (domicile) | K123 | 0 | K124 | 0 | K125 | 0 | M.1.e.(2) |
| f. All other loans (include loans to individuals for household, family, and other personal expenditures) | K126 | 0 | K127 | 0 | K128 | 0 | M.1.f. |

*Itemize loan categories included in Memorandum item 1.f, above that exceed 10 percent of total loans restructured in troubled debt restructurings that are past due 30 days or more or in nonaccrual status (sum of Memorandum items 1.a through 1.f, columns A through C):*

| | RCON | Amount | RCON | Amount | RCON | Amount | |
|---|---|---|---|---|---|---|---|
| (1) Loans secured by farmland in domestic offices | K130 | 0 | K131 | 0 | K132 | 0 | M.1.f.(1) |
| (2) Not applicable | RCFD | | RCFD | | RCFD | | |
| (3) Loans to finance agricultural production and other loans to farmers | K138 | 0 | K139 | 0 | K140 | 0 | M.1.f.(3) |
| (4) Loans to individuals for household, family, and other personal expenditures: | | | | | | | |
| (a) Credit cards | K274 | 0 | K275 | 0 | K276 | 0 | M.1.f.(4)(a) |
| (b) Automobile loans | K277 | 0 | K278 | 0 | K279 | 0 | M.1.f.(4)(b) |
| (c) Other (includes revolving credit plans other than credit cards and other consumer loans) | K280 | 0 | K281 | 0 | K282 | 0 | M.1.f.(4)(c) |

09/2016

The Bank of New York Mellon
Legal Title of Bank

FDIC Certificate Number: 00639

## Schedule RC-N—Continued

Memoranda—Continued

| Dollar Amounts in Thousands | (Column A) Past due 30 through 89 days and still accruing | | (Column B) Past due 90 days or more and still accruing | | (Column C) Nonaccrual | | |
|---|---|---|---|---|---|---|---|
| | RCFD | Amount | RCFD | Amount | RCFD | Amount | |
| 1. g. **Total loans restructured in troubled debt restructurings included in Schedule RC-N, items 1 through 7, above (sum of Memorandum item 1.a.(1) through 1.f)1**......... | HK26 | 3,000 | HK27 | 0 | HK28 | 62,000 | 1.g |
| 2. Loans to finance commercial real estate, construction, and land development activities (not secured by real estate) included in Schedule RC-N, items 4 and 7, above.................... | 6558 | 0 | 6559 | 0 | 6560 | 0 | M.2. |
| 3. Loans secured by real estate to non-U.S. addressees (domicile) (included in Schedule RC-N, item 1, above)............................ | 1248 | 0 | 1249 | 0 | 1250 | 0 | M.3. |
| 4. Not applicable | | | | | | | |
| 5. Loans and leases held for sale and loans measured at fair value (included in Schedule RC-N, items 1 through 8, above): | | | | | | | |
| a. Loans and leases held for sale......................... | C240 | 0 | C241 | 0 | C226 | 0 | M.5.a. |
| b. Loans measured at fair value: | | | | | | | |
| (1) Fair value................................................ | F664 | 0 | F665 | 0 | F666 | 0 | M.5.b.(1) |
| (2) Unpaid principal balance............................ | F667 | 0 | F668 | 0 | F669 | 0 | M.5.b.(2) |

| Dollar Amounts in Thousands | (Column A) Past due 30 through 89 days | | (Column B) Past due 90 days or more | | |
|---|---|---|---|---|---|
| | RCFD | Amount | RCFD | Amount | |
| 6. Derivative contracts: | | | | | |
| Fair value of amounts carried as assets........................... | 3529 | 0 | 3530 | 0 | M.6. |

| | RCFD | Amount | |
|---|---|---|---|
| 7. Additions to nonaccrual assets during the quarter.................................................................. | C410 | 2,000 | M.7. |
| 8. Nonaccrual assets sold during the quarter.......................................................................... | C411 | 2,000 | M.8. |

| Dollar Amounts in Thousands | (Column A) Past due 30 through 89 days and still accruing | | (Column B) Past due 90 days or more and still accruing | | (Column C) Nonaccrual | | |
|---|---|---|---|---|---|---|---|
| | RCFD | Amount | RCFD | Amount | RCFD | Amount | |
| 9. Purchased credit-impaired loans accounted for in accordance with FASB ASC 310-30 (former AICPA Statement of Position 03-3): | | | | | | | |
| a. Outstanding balances................................. | L183 | 0 | L184 | 0 | L185 | 0 | M.9.a. |
| b. Amount included in Schedule RC-N, items 1 through 7, above.................... | L186 | 0 | L187 | 0 | L188 | 0 | M.9.b. |

1. Exclude amounts reported in Memorandum items 1.f.(1) through 1.f.(4) when calculating the total in Memorandum item 1.g.

The Bank of New York Mellon
Legal Title of Bank
FDIC Certificate Number: 00639

## Schedule RC-O—Other Data for Deposit Insurance and FICO Assessments

*All FDIC-insured depository institutions must complete items 1 through 9, 10, and 11, Memorandum item 1, and, if applicable, item 9.a,*
*Memorandum items 2 through 4 and 6 through 18 each quarter. Unless otherwise indicated, complete items 1 through 11 and Memorandum*
*items 1 through 4 on an "unconsolidated single FDIC certificate number basis" (see instructions) and*
*complete Memorandum items 6 through 18 on a fully consolidated basis.*

| | | | Dollar Amounts in Thousands | RCFD | Amount | |
|---|---|---|---|---|---|---|
| 1. | Total deposit liabilities before exclusions (gross) as defined in Section 3(l) of the Federal Deposit Insurance Act and FDIC regulations............................................................ | | | F236 | 237,166,000 | 1. |
| 2. | Total allowable exclusions, including interest accrued and unpaid on allowable exclusions (including foreign deposits)........................................................................................ | | | F237 | 116,954,000 | 2. |
| 3. | Total foreign deposits, including interest accrued and unpaid thereon (included in item 2 above)................................................................................................ | | | **RCFN** F234 | 116,954,000 | 3. |
| 4. | Average consolidated total assets for the calendar quarter............................................ | | | **RCFD** K652 | 271,702,000 | 4. |
| | a. Averaging method used (for daily averaging, enter 1, for weekly averaging, enter 2)............................ | | | **Number** K653 | 1 | 4.a. |
| | | | | | **Amount** | |
| 5. | Average tangible equity for the calendar quarter[1]........................................................ | | | K654 | 20,628,000 | 5. |
| 6. | Holdings of long-term unsecured debt issued by other FDIC-insured depository institutions .................................................................................................................... | | | K655 | 430,000 | 6. |
| 7. | Unsecured "Other borrowings" with a remaining maturity of (sum of items 7.a through 7.d must be less than or equal to Schedule RC-M, items 5.b.(1)(a)–(d) minus item 10.b): | | | | | |
| | a. One year or less.................................................................................................... | | | G465 | 4,159,000 | 7.a. |
| | b. Over one year through three years........................................................................ | | | G466 | 0 | 7.b. |
| | c. Over three years through five years...................................................................... | | | G467 | 0 | 7.c. |
| | d. Over five years.................................................................................................... | | | G468 | 0 | 7.d. |
| 8. | Subordinated notes and debentures with a remaining maturity of (sum of items 8.a. through 8.d. must equal Schedule RC, item 19): | | | | | |
| | a. One year or less.................................................................................................... | | | G469 | 0 | 8.a. |
| | b. Over one year through three years........................................................................ | | | G470 | 0 | 8.b. |
| | c. Over three years through five years...................................................................... | | | G471 | 0 | 8.c. |
| | d. Over five years.................................................................................................... | | | G472 | 515,000 | 8.d. |
| 9. | Reciprocal brokered deposits (included in Schedule RC-E, Part I, Memorandum item 1.b)............................ | | | **RCON** G803 | 0 | 9. |
| | *Item 9.a is to be completed on a fully consolidated basis by all institutions that own another insured depository institution.* | | | | | |
| | a. Fully consolidated reciprocal brokered deposits......................................................... | | | L190 | | 9.a. |
| 10. | Banker's bank certification: Does the reporting institution meet both the statutory definition of a banker's bank and the business conduct test set forth in FDIC regulations?............................................ | | | **RCFD** K656 | **Yes / No** NO | 10. |
| | *If the answer to item 10 is "YES," complete items 10.a and 10.b.* | | | | **Amount** | |
| | a. Banker's bank deduction...................................................................................... | | | K657 | | 10.a. |
| | b. Banker's bank deduction limit............................................................................... | | | K658 | | 10.b. |
| 11. | Custodial bank certification: Does the reporting institution meet the definition of a custodial bank set forth in FDIC regulations?.................................................................................................... | | | K659 | **Yes / No** YES | 11. |
| | *If the answer to item 11 is "YES," complete items 11.a and 11.b.[2]* | | | | **Amount** | |
| | a. Custodial bank deduction...................................................................................... | | | K660 | 165,579,000 | 11.a. |
| | b. Custodial bank deduction limit............................................................................... | | | K661 | 119,597,000 | 11.b. |

1 See instructions for averaging methods. For deposit insurance assessment purposes, tangible equity is defined as Tier 1 capital as set forth in the
banking agencies' regulatory capital standards and reported in Schedule RC-R, Part I, item 26, except as described in the instructions.

2 If the amount reported in item 11.b is zero, item 11.a may be left blank.

The Bank of New York Mellon
Legal Title of Bank

FDIC Certificate Number: 00639

FFIEC 031
Page 53 of 84
RC-38

## Schedule RC-O—Continued

**Memoranda**

| | Dollar Amounts in Thousands | RCON | Amount | |
|---|---|---|---|---|
| 1. Total deposit liabilities of the bank, including related interest accrued and unpaid, less allowable exclusions, including related interest accrued and unpaid (sum of Memorandum items 1.a.(1), 1.b.(1), 1.c.(1), and 1.d.(1) must equal Schedule RC-O, item 1 less item 2): | | | | |
| a. Deposit accounts (excluding retirement accounts) of $250,000 or less:[1] | | | | |
| (1) *Amount* of deposit accounts (excluding retirement accounts) of $250,000 or less | | F049 | 2,202,000 | M.1.a.(1) |
| (2) *Number* of deposit accounts (excluding retirement accounts) of $250,000 or less | F050 | Number 125,107 | | M.1.a.(2) |
| b. Deposit accounts (excluding retirement accounts) of more than $250,000:[1] | | | | |
| (1) *Amount* of deposit accounts (excluding retirement accounts) of more than $250,000 | | F051 | 113,722,000 | M.1.b.(1) |
| (2) *Number* of deposit accounts (excluding retirement accounts) of more than $250,000 | F052 | Number 15,438 | | M.1.b.(2) |
| c. Retirement deposit accounts of $250,000 or less:[1] | | | | |
| (1) *Amount* of retirement deposit accounts of $250,000 or less | | F045 | 4,288,000 | M.1.c.(1) |
| (2) *Number* of retirement deposit accounts of $250,000 or less | F046 | Number 251,343 | | M.1.c.(2) |
| d. Retirement deposit accounts of more than $250,000:[1] | | | | |
| (1) *Amount* of retirement deposit accounts of more than $250,000 | | F047 | 0 | M.1.d.(1) |
| (2) *Number* of retirement deposit accounts of more than $250,000 | F048 | Number 0 | | M.1.d.(2) |

*Memorandum item 2 is to be completed by banks with $1 billion or more in total assets.[2]*

| | RCON | Amount | |
|---|---|---|---|
| 2. Estimated amount of uninsured deposits in domestic offices of the bank and in insured branches in Puerto Rico and U.S. territories and possessions, including related interest accrued and unpaid (see instructions)[3] | 5597 | 110,561,000 | M.2. |

3. Has the reporting institution been consolidated with a parent bank or savings association in that parent bank's or parent savings association's Call Report?
   If so, report the legal title and FDIC Certificate Number of the parent bank or parent savings association:

| | RCON | FDIC Cert. No. | |
|---|---|---|---|
| TEXT A545 | A545 | 0 | M.3. |

| | RCFN | Amount | |
|---|---|---|---|
| 4. **Dually payable deposits in the reporting institution's foreign branches** | GW43 | 0 | M.4. |

5. Not applicable

---

1 The dollar amounts used as the basis for reporting in Memorandum items 1.a through 1.d reflect the deposit insurance limits in effect on the report date
2 The $1 billion asset size test is based on the total assets reported on the *June 30, 2016,* Report of Condition.
3 Uninsured deposits should be estimated based on the deposit insurance limits set forth in Memorandum items 1.a through 1.d

03/2017

The Bank of New York Mellon
Legal Title of Bank
FDIC Certificate Number: 00639

FFIEC 031
Page 54 of 84
RC-39

## Schedule RC-O—Continued

*Amounts reported in Memorandum items 6 through 9, 14 through 17 will not be made available to the public on an individual institution basis.*

**Memoranda—Continued**

| | Dollar Amounts in Thousands | RCFD | Amount | |
|---|---|---|---|---|
| *Memorandum items 6 through 12 are to be completed by "large institutions" and "highly complex institutions" as defined in FDIC regulations.* | | | | |
| 6. Criticized and classified items: | | | | |
|   a. Special mention.......................................................... | | K663 | | M.6.a. |
|   b. Substandard.............................................................. | | K664 | | M.6.b. |
|   c. Doubtful.................................................................... | | K665 | | M.6.c. |
|   d. Loss......................................................................... | | K666 | | M.6.d. |
| 7. "Nontraditional 1–4 family residential mortgage loans" as defined for assessment purposes only in FDIC regulations: | | | | |
|   a. Nontraditional 1-4 family residential mortgage loans ....... | | N025 | | M.7.a. |
|   b. Securitizations of nontraditional 1-4 family residential mortgage loans ............ | | N026 | | M.7.b. |
| 8. "Higher-risk consumer loans" as defined for assessment purposes only in FDIC regulations: | | | | |
|   a. Higher-risk consumer loans....................................... | | N027 | | M.8.a. |
|   b. Securitizations of higher-risk consumer loans............... | | N028 | | M.8.b. |
| 9. "Higher-risk commercial and industrial loans and securities" as defined for assessment purposes only in FDIC regulations: | | | | |
|   a. Higher-risk commercial and industrial loans and securities............ | | N029 | | M.9.a. |
|   b. Securitizations of higher-risk commercial and industrial loans and securities.......... | | N030 | | M.9.b. |
| 10. Commitments to fund construction, land development, and other land loans secured by real estate for the consolidated bank: | | | | |
|   a. Total unfunded commitments....................................... | | K676 | 756,000 | M.10.a. |
|   b. Portion of unfunded commitments guaranteed or insured by the U.S. government (including the FDIC)............... | | K677 | 0 | M.10.b. |
| 11. Amount of other real estate owned recoverable from the U.S. government under guarantee or insurance provisions (excluding FDIC loss-sharing agreements)............ | | K669 | 0 | M.11. |
| 12. Nonbrokered time deposits of more than $250,000 in domestic offices (included in Schedule RC-E, Part I, Memorandum item 2.d).................... | | RCON K678 | 24,362,000 | M.12. |
| *Memorandum item 13.a is to be completed by "large institutions" and "highly complex institutions" as defined in FDIC regulations. Memorandum items 13.b through 13.h are to be completed by "large institutions" only.* | | | | |
| 13. Portion of funded loans and securities in domestic and foreign offices guaranteed or insured by the U.S. government (including FDIC loss-sharing agreements): | | RCFD | | |
|   a. Construction, land development, and other land loans secured by real estate......... | | N177 | 0 | M.13.a. |
|   b. Loans secured by multifamily residential and nonfarm nonresidential properties............ | | N178 | | M.13.b. |
|   c. Closed-end loans secured by first liens on 1-4 family residential properties........... | | N179 | | M.13.c. |
|   d. Closed-end loans secured by junior liens on 1–4 family residential properties and revolving, open-end loans secured by 1–4 family residential properties and extended under lines of credit........... | | N180 | | M.13.d. |
|   e. Commercial and industrial loans.................................. | | N181 | | M.13.e. |
|   f. Credit card loans to individuals for household, family, and other personal expenditures........ | | N182 | | M.13.f. |
|   g. All other loans to individuals for household, family, and other personal expenditures....... | | N183 | | M.13.g. |
|   h. Non-agency residential mortgage-backed securities.......... | | M963 | | M.13.h. |
| *Memorandum items 14 and 15 are to be completed by "highly complex institutions" as defined in FDIC regulations.* | | | | |
| 14. Amount of the institution's largest counterparty exposure............. | | K673 | | M.14. |
| 15. Total amount of the institution's 20 largest counterparty exposures............ | | K674 | | M.15. |

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

## Schedule RC-O—Continued

Memoranda—Continued

| | | Dollar Amounts in Thousands | RCFD | Amount | |
|---|---|---|---|---|---|

*Memorandum item 16 is to be completed by "large institutions" and "highly complex institutions" as defined in FDIC regulations.*

16. Portion of loans restructured in troubled debt resturcturings that are in compliance with their modified terms and are guaranteed or insured by the U.S. Government (incuding the FDIC) (included in Schedure RC-C, Part I, Memorandum item 1)............................................................ **L189** | 0 | M.16.

*Memorandum item 17 is to be completed on a fully consolidated basis by those "large institutions" and "highly complex institutions" as defined in FDIC regulations that own another insured depository institution.*

17. Select fully consolidated data for deposit insurance assessment purposes:

    a. Total deposit liabilities before exclusions (gross) as defined in Section 3(1) of the Federal Deposit Insurance Act and FDIC regulations............................................................ **L194** | | M.17.a

    b. Total allowable exclusions, including interest accrued and unpaid on allowable exclusions (including foreign deposits)............................................................ **L195** | | M.17.b

    c. Unsecured "Other borrowings" with a remaining maturity of one year or less............................................................ **L196** | | M.17.c

    d. Estimated amount of uninsured deposits in domestic offices of the institutions and in Insured branches in Puerto Rico and U.S. territories and possessions, including related interest accrued and unpaid............................................................ RCON **L197** | | M.17.d

06/20

FFIEC 031
Page 56 of 84
RC-41

The Bank of New York Mellon
Legal Title of Bank

FDIC Certificate Number: 00639

## Schedule RC-O—Continued

*Memorandum item 18 is to be completed by "large institutions" and "highly complex institutions" as defined in FDIC regulations.*

*Amounts reported in Memorandum item 18 will not be made available to the public on an individual institution basis.*

| Dollar Amounts in Thousands | | (Column A) ≤1% Amount | (Column B) 1.01–4% Amount | (Column C) 4.01–7% Amount | (Column D) 7.01–10% Amount | (Column E) 10.1–14% Amount | (Column F) 14.01–16% Amount | (Column G) 16.01–18% Amount | (Column H) 18.01–20% Amount | |
|---|---|---|---|---|---|---|---|---|---|---|
| 18. | Outstanding balance of 1–4 family residential mortgage loans, consumer loans, and consumer leases by two-year probability of default: | | | | | | | | | |
| | a. "Nontraditional 1–4 family residential mortgage loans" as defined for assessment purposes only in FDIC regulations | RCFD M964 | RCFD M965 | RCFD M966 | RCFD M967 | RCFD M968 | RCFD M969 | RCFD M970 | RCFD M971 | M.18.a. |
| | b. Closed-end loans secured by first liens on 1–4 family residential properties | RCFD M979 | RCFD M980 | RCFD M981 | RCFD M982 | RCFD M983 | RCFD M984 | RCFD M985 | RCFD M986 | M.18.b. |
| | c. Closed-end loans secured by junior liens on 1–4 family residential properties | RCFD M994 | RCFD M995 | RCFD M996 | RCFD M997 | RCFD M998 | RCFD M999 | RCFD N001 | RCFD N002 | M.18.c. |
| | d. Revolving, open-end loans secured by 1–4 family residential properties and extended under lines of credit | RCFD N010 | RCFD N011 | RCFD N012 | RCFD N013 | RCFD N014 | RCFD N015 | RCFD N016 | RCFD N017 | M.18.d. |
| | e. Credit cards | RCFD N040 | RCFD N041 | RCFD N042 | RCFD N043 | RCFD N044 | RCFD N045 | RCFD N046 | RCFD N047 | M.18.e. |
| | f. Automobile loans | RCFD N055 | RCFD N056 | RCFD N057 | RCFD N058 | RCFD N059 | RCFD N060 | RCFD N061 | RCFD N062 | M.18.f. |
| | g. Student loans | RCFD N070 | RCFD N071 | RCFD N072 | RCFD N073 | RCFD N074 | RCFD N075 | RCFD N076 | RCFD N077 | M.18.g. |
| | h. Other consumer loans and revolving credit plan other than credit cards | RCFD N085 | RCFD N086 | RCFD N087 | RCFD N088 | RCFD N089 | RCFD N090 | RCFD N091 | RCFD N092 | M.18.h. |
| | i. Consumer leases | RCFD N100 | RCFD N101 | RCFD N102 | RCFD N103 | RCFD N104 | RCFD N105 | RCFD N106 | RCFD N107 | M.18.i. |
| | j. Total | RCFD N115 | RCFD N116 | RCFD N117 | RCFD N118 | RCFD N119 | RCFD N120 | RCFD N121 | RCFD N122 | M.18.j. |

Two-year probability of default (PD)

03/2014

The Bank of New York Mellon
Legal Title of Bank
FDIC Certificate Number: 00639

## Schedule RC-O—Continued

*Memorandum item 18 is to be completed by "large institutions" and "highly complex institutions" as defined in FDIC regulations.*

*Amounts reported in Memorandum item 18 will not be made available to the public on an individual institution basis.*

| Dollar Amounts in Thousands | (Column I) 20.01–22% Amount | (Column J) 22.01–26% Amount | (Column K) 26.01–30% Amount | (Column L) >30% Amount | (Column M) Unscorable Amount | (Column N) Total Amount | (Column O) PDs Were Derived Using [1] Number | |
|---|---|---|---|---|---|---|---|---|
| 18. Outstanding balance of 1–4 family residential mortgage loans, consumer loans, and consumer leases by two-year probability of default: | | | | | | | | |
| a. "Nontraditional 1–4 family residential mortgage loans" as defined for assessment purposes only in FDIC regulations. | RCFD M972 | RCFD M973 | RCFD M974 | RCFD M975 | RCFD M976 | RCFD M977 | RCFD M978 | M.18.a. |
| b. Closed-end loans secured by first liens on 1–4 family residential properties. | RCFD M987 | RCFD M988 | RCFD M989 | RCFD M990 | RCFD M991 | RCFD M992 | RCFD M993 | M.18.b. |
| c. Closed-end loans secured by junior liens on 1–4 family residential properties. | RCFD N003 | RCFD N004 | RCFD N005 | RCFD N006 | RCFD N007 | RCFD N008 | RCFD N009 | M.18.c. |
| d. Revolving, open-end loans secured by 1–4 family residential properties and extended under lines of credit. | RCFD N018 | RCFD N019 | RCFD N020 | RCFD N021 | RCFD N022 | RCFD N023 | RCFD N024 | M.18.d. |
| e. Credit cards. | RCFD N048 | RCFD N049 | RCFD N050 | RCFD N051 | RCFD N052 | RCFD N053 | RCFD N054 | M.18.e. |
| f. Automobile loans. | RCFD N063 | RCFD N064 | RCFD N065 | RCFD N066 | RCFD N067 | RCFD N068 | RCFD N069 | M.18.f. |
| g. Student loans. | RCFD N078 | RCFD N079 | RCFD N080 | RCFD N081 | RCFD N082 | RCFD N083 | RCFD N084 | M.18.g. |
| h. Other consumer loans and revolving credit plan other than credit cards. | RCFD N093 | RCFD N094 | RCFD N095 | RCFD N096 | RCFD N097 | RCFD N098 | RCFD N099 | M.18.h. |
| i. Consumer leases. | RCFD N108 | RCFD N109 | RCFD N110 | RCFD N111 | RCFD N112 | RCFD N113 | RCFD N114 | M.18.i. |
| j. Total. | RCFD N123 | RCFD N124 | RCFD N125 | RCFD N126 | RCFD N127 | RCFD N128 | | M.18.j. |

1 For PDs derived using scores and default rate mappings provided by a third-party vendor, enter 1; for PDs derived using an internal approach, enter 2; for PDs derived using third-party vendor mappings for some loans within a product type and an internal approach for other loans within the same product type, enter 3. If the total reported in column N for a product type is zero, enter 0.

The Bank of New York Mellon
Legal Title of Bank

FDIC Certificate Number: 00639

## Schedule RC-P—1–4 Family Residential Mortgage Banking Activities in Domestic Offices

Schedule RC-P is to be completed by (1) all banks with $1 billion or more in total assets1 and (2) banks with less than $1 billion in total assets at which either 1–4 family residential mortgage loan originations and purchases for resale2 from all sources, loan sales, or quarter-end loans held for sale or trading in domestic offices exceed $10 million for two consecutive quarters.

| | Dollar Amounts in Thousands | RCON | Amount | |
|---|---|---|---|---|
| 1. | Retail originations during the quarter of 1–4 family residential mortgage loans for sale[2]: | | | |
| | a. Closed-end first liens | F066 | 0 | 1.a. |
| | b. Closed-end junior liens | F067 | 0 | 1.b. |
| | c. Open-end loans extended under lines of credit: | | | |
| | (1) Total commitment under the lines of credit | F670 | 0 | 1.c.(1) |
| | (2) Principal amount funded under the lines of credit | F671 | 0 | 1.c.(2) |
| 2. | Wholesale originations and purchases during the quarter of 1–4 family residential mortgage loans for sale[2]: | | | |
| | a. Closed-end first liens | F068 | 0 | 2.a. |
| | b. Closed-end junior liens | F069 | 0 | 2.b. |
| | c. Open-end loans extended under lines of credit: | | | |
| | (1) Total commitment under the lines of credit | F672 | 0 | 2.c.(1) |
| | (2) Principal amount funded under the lines of credit | F673 | 0 | 2.c.(2) |
| 3. | 1-4 family residential mortgage loans sold during the quarter: | | | |
| | a. Closed-end first liens | F070 | 0 | 3.a. |
| | b. Closed-end junior liens | F071 | 0 | 3.b. |
| | c. Open-end loans extended under lines of credit: | | | |
| | (1) Total commitment under the lines of credit | F674 | 0 | 3.c.(1) |
| | (2) Principal amount funded under the lines of credit | F675 | 0 | 3.c.(2) |
| 4. | 1–4 family residential mortgage loans held for sale or trading at quarter-end (included in Schedule RC, items 4.a and 5): | | | |
| | a. Closed-end first liens | F072 | 0 | 4.a. |
| | b. Closed-end junior liens | F073 | 0 | 4.b. |
| | c. Open-end loans extended under lines of credit: | | | |
| | (1) Total commitment under the lines of credit | F676 | 0 | 4.c.(1) |
| | (2) Principal amount funded under the lines of credit | F677 | 0 | 4.c.(2) |
| 5. | Noninterest income for the quarter from the sale, securitization, and servicing of 1–4 family residential mortgage loans (included in Schedule RI, items 5.c, 5.f, 5.g, and 5.i): | RIAD | | |
| | a. Closed-end 1–4 family residential mortgage loans | F184 | 0 | 5.a. |
| | b. Open-end 1–4 family residential mortgage loans extended under lines of credit | F560 | 0 | 5.b. |
| 6. | Repurchases and indemnifications of 1–4 family residential mortgage loans during the quarter: | RCON | | |
| | a. Closed-end first liens | F678 | 0 | 6.a. |
| | b. Closed-end junior liens | F679 | 0 | 6.b. |
| | c. Open-end loans extended under line of credit: | | | |
| | (1) Total commitment under the lines of credit | F680 | 0 | 6.c.(1) |
| | (2) Principal amount funded under the lines of credit | F681 | 0 | 6.c.(2) |
| 7. | Representation and warranty reserves for 1-4 family residential mortgage loans sold: | | | |
| | a. For representations and warranties made to U.S. government agencies and government-sponsored agencies | L191 | | 7.a. |
| | b. For representations and warranties made to other parties | L192 | | 7.b. |
| | c. Total representation and warranty reserves (sum of items 7.a and 7.b) | M288 | 0 | 7.c. |

1. The $1 billion asset size test is based on the total assets reported on the June 30, 2016, Report of Condition.
2. Exclude originations and purchases of 1–4 family residential mortgage loans that are held for investment.

03/2017

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

## Schedule RC-Q—Assets and Liabilities Measured at Fair Value on a Recurring Basis

Schedule RC-Q is to be completed by banks that:
(1) Had total assets of $500 million or more as of the beginning of their fiscal year; or
(2) Had total assets of less than $500 million as of the beginning of their fiscal year and either:
   (a) Have elected to report financial instruments or servicing assets and liabilities at fair value under a fair value option with changes in fair value recognized in earnings, or
   (b) Are required to complete Schedule RC-D, Trading Assets and Liabilities.

| Dollar Amounts in Thousands | (Column A) Total Fair Value Reported on RC | | LESS: Amounts Netted in the Determination of Total Fair Value (Column B) | | (Column C) LEVEL 1 Fair Value Measurement | | (Column D) LEVEL 2 Fair Value Measurement | | (Column E) LEVEL 3 Fair Value Measurement | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | RCON | Amount | RCON | Amount | RCON | Amount | RCON | Amount | RCON | Amount | |
| **Assets** | | | | | | | | | | | |
| 1. Available-for-sale securities | 1773 | 76,289,000 | G474 | 0 | G475 | 16,983,000 | G476 | 59,306,000 | G477 | 0 | 1. |
| 2. Federal funds sold and securities purchased under agreements to resell | G478 | 0 | G479 | 0 | G480 | 0 | G481 | 0 | G482 | 0 | 2. |
| 3. Loans and leases held for sale | G483 | 0 | G484 | 0 | G485 | 0 | G486 | 0 | G487 | 0 | 3. |
| 4. Loans and leases held for investment | G488 | 0 | G489 | 0 | G490 | 0 | G491 | 0 | G492 | 0 | 4. |
| 5. Trading assets: | | | | | | | | | | | |
| a. Derivative assets | 3543 | 3,197,000 | G493 | 8,450,000 | G494 | 3,000 | G495 | 11,644,000 | G496 | 0 | 5.a. |
| b. Other trading assets | G497 | 5,000 | G498 | 5,000 | G499 | 0 | G500 | 0 | G501 | 0 | 5.b. |
| (1) Nontrading securities at fair value with changes in fair value reported in current earnings (included in Schedule RC-Q, item 5.b. above) | F240 | 0 | F684 | 0 | F692 | 0 | F241 | 0 | F242 | 0 | 5.b.(1) |
| 6. All other assets | G391 | 345,000 | G392 | 0 | G395 | 0 | G396 | 345,000 | G804 | 0 | 6. |
| 7. Total assets measured at fair value on a recurring basis (sum of items 1 through 5.b plus item 6) | G502 | 79,836,000 | G503 | 8,450,000 | G504 | 16,991,000 | G505 | 71,295,000 | G506 | 0 | 7. |
| **Liabilities** | | | | | | | | | | | |
| 8. Deposits | F252 | 0 | F686 | 0 | F694 | 0 | F253 | 0 | F254 | 0 | 8. |
| 9. Federal funds purchased and securities sold under agreements to repurchase | G507 | 0 | G508 | 0 | G509 | 0 | G510 | 0 | G511 | 0 | 9. |
| 10. Trading liabilities: | | | | | | | | | | | |
| a. Derivative liabilities | 3547 | 2,395,000 | G512 | 8,856,000 | G513 | 3,000 | G514 | 11,248,000 | G515 | 0 | 10.a. |
| b. Other trading liabilities | G516 | 14,000 | G517 | 14,000 | G518 | 14,000 | G519 | 0 | G520 | 0 | 10.b. |
| 11. Other borrowed money | G521 | 0 | G522 | 0 | G523 | 0 | G524 | 0 | G525 | 0 | 11. |
| 12. Subordinated notes and debentures | G526 | 0 | G527 | 0 | G528 | 0 | G529 | 0 | G530 | 0 | 12. |
| 13. All other liabilities | G805 | 812,000 | G806 | 0 | G807 | 0 | G808 | 812,000 | G809 | 0 | 13. |
| 14. Total liabilities measured at fair value on a recurring basis (sum of items 8 through 13) | G531 | 3,221,000 | G532 | 8,856,000 | G533 | 17,000 | G534 | 12,060,000 | G535 | 0 | 14. |

The Bank of New York Mellon
Legal Title of Bank
FDIC Certificate Number: 00639

# Schedule RC-Q—Continued

Dollar Amounts in Thousands

**Memoranda**

| | | (Column A) Value Reported on Schedule RC RCFD Amount | LESS: Amounts Netted (Column B) in the Determination of Total Fair Value RCFD Amount | Level 1 Fair Value Measurements RCFD Amount | Level 2 Fair Value Measurements RCFD Amount | Level 3 Fair Value Measurements RCFD Amount | |
|---|---|---|---|---|---|---|---|
| 1. All other assets (itemize and describe amounts included in Schedule RC-Q, item 6, that are greater than $100,000 and exceed 25 percent of item 6): | | | | | | | |
| a. | Mortgage servicing assets | G536 0 | G537 0 | G538 0 | G539 0 | G540 0 | M.1.a. |
| b. | Nontrading derivative assets | G541 344,000 | G542 344,000 | G543 0 | G544 344,000 | G545 0 | M.1.b. |
| c. | TEXT G546 | G546 0 | G547 0 | G548 0 | G549 0 | G550 0 | M.1.c. |
| d. | TEXT G551 | G551 0 | G552 0 | G553 0 | G554 0 | G555 0 | M.1.d. |
| e. | TEXT G556 | G556 0 | G557 0 | G558 0 | G559 0 | G560 0 | M.1.e. |
| f. | TEXT G561 | G561 0 | G562 0 | G563 0 | G564 0 | G565 0 | M.1.f. |
| 2. All other liabilities (itemize and describe amounts included in Schedule RC-Q, item 13, that are greater than $100,000 and exceed 25 percent of item 13): | | | | | | | |
| a. | Loan commitments (not accounted for as derivatives) | F261 0 | F689 0 | F697 0 | F262 0 | F263 0 | M.2.a. |
| b. | Nontrading derivative liabilities | G566 812,000 | G567 0 | G568 812,000 | G569 0 | G570 0 | M.2.b. |
| c. | TEXT G571 | G571 0 | G572 0 | G573 0 | G574 0 | G575 0 | M.2.c. |
| d. | TEXT G576 | G576 0 | G577 0 | G578 0 | G579 0 | G580 0 | M.2.d. |
| e. | TEXT G581 | G581 0 | G582 0 | G583 0 | G584 0 | G585 0 | M.2.e. |
| f. | TEXT G586 | G586 0 | G587 0 | G588 0 | G589 0 | G590 0 | M.2.f. |

The Bank of New York Mellon
Legal Title of Bank

FDIC Certificate Number: 00639

FFIEC 031
Page 61 of 84
RC-46

## Schedule RC-Q—Continued

Memoranda—Continued

| Dollar Amounts in Thousands | RCFD | (Column A) Consolidated Bank Amount | RCON | (Column B) Domestic Offices Amount | |
|---|---|---|---|---|---|
| 3. Loans measured at fair value (included in Schedule RC-C, Part I, items 1 through 9): | | | | | |
| a. Loans secured by real estate: | F608 | 0 | F578 | 0 | M.3.a. |
| (1) Construction, land development, and other land loans | | | F578 | 0 | M.3.a.(1) |
| (2) Secured by farmland (including farm residential and other improvements) | | | F579 | 0 | M.3.a.(2) |
| (3) Secured by 1–4 family residential properties: | | | | | |
| (a) Revolving, open-end loans secured by 1–4 family residential properties and extended under lines of credit | | | F580 | 0 | M.3.a.(3)(a) |
| (b) Closed-end loans secured by 1–4 family residential properties: | | | | | |
| (1) Secured by first liens | | | F581 | 0 | M.3.a.(3)(b)(1) |
| (2) Secured by junior liens | | | F582 | 0 | M.3.a.(3)(b)(2) |
| (4) Secured by multifamily (5 or more) residential properties | | | F583 | 0 | M.3.a.(4) |
| (5) Secured by nonfarm nonresidential properties | | | F584 | 0 | M.3.a.(5) |
| b. Commercial and industrial loans | F585 | 0 | F585 | 0 | M.3.b. |
| c. Loans to individuals for household, family, and other personal expenditures (i.e., consumer loans) (includes purchased paper): | | | | | |
| (1) Credit cards | F586 | 0 | F586 | 0 | M.3.c.(1) |
| (2) Other revolving credit plans | F587 | 0 | F587 | 0 | M.3.c.(2) |
| (3) Automobile loans | K196 | 0 | K196 | 0 | M.3.c.(3) |
| (4) Other consumer loans | K208 | 0 | K208 | 0 | M.3.c.(4) |
| d. Other loans | F589 | 0 | F589 | 0 | M.3.d. |

| Dollar Amounts in Thousands | RCFD | (Column A) Consolidated Bank Amount | RCON | (Column B) Domestic Offices Amount | |
|---|---|---|---|---|---|
| 4. Unpaid principal balance of loans measured at fair value (reported in Schedule RC-Q, Memorandum item 3): | | | | | |
| a. Loans secured by real estate: | F609 | 0 | F590 | 0 | M.4.a |
| (1) Construction, land development, and other land loans | | | F590 | 0 | M.4.a.(1) |
| (2) Secured by farmland (including farm residential and other improvements) | | | F591 | 0 | M.4.a.(2) |
| (3) Secured by 1–4 family residential properties: | | | | | |
| (a) Revolving, open-end loans secured by 1–4 family residential properties and extended under lines of credit | | | F592 | 0 | M.4.a.(3)(a) |
| (b) Closed-end loans secured by 1–4 family residential properties: | | | | | |
| (1) Secured by first liens | | | F593 | 0 | M.4.a.(3)(b)(1) |
| (2) Secured by junior liens | | | F594 | 0 | M.4.a.(3)(b)(2) |
| (4) Secured by multifamily (5 or more) residential properties | | | F595 | 0 | M.4.a.(4) |
| (5) Secured by nonfarm nonresidential properties | | | F596 | 0 | M.4.a.(5) |
| b. Commercial and industrial loans | F597 | 0 | F597 | 0 | M.4.b. |
| c. Loans to individuals for household, family, and other personal expenditures (i.e., consumer loans) (includes purchased paper): | | | | | |
| (1) Credit cards | F598 | 0 | F598 | 0 | M.4.c.(1) |
| (2) Other revolving credit plans | F599 | 0 | F599 | 0 | M.4.c.(2) |
| (3) Automobile loans | K195 | 0 | K195 | 0 | M.4.c.(3) |
| (4) Other consumer loans | K209 | 0 | K209 | 0 | M.4.c.(4) |
| d. Other loans | F601 | 0 | F601 | 0 | M.4.d. |

03/2017

The Bank of New York Mellon
Legal Title of Bank
RSSD ID:

FFIEC 031
Page 62 of 84
RC-47

# Schedule RC-R -Regulatory Capital

## Part I –Regulatory Capital Components and Ratios

Part I is to be completed on a consolidated basis.

| | Dollar Amounts in Thousands | RCFA | Amount | |
|---|---|---|---|---|
| **Common Equity Tier 1 Capital** | | | | |
| 1. | Common stock plus related surplus, net of treasury stock and unearned employee stock ownership plan (ESOP) shares................................................ | P742 | 11,879,000 | 1. |
| | | RCFD | | |
| 2. | Retained earnings.................................................................................. | 3632 | 15,995,000 | 2. |
| | | RCFA | | |
| 3. | Accumulated other comprehensive income (AOCI)....................................... | B530 | -1,314,000 | 3. |
| | a. AOCI opt-out election (enter "1" for Yes; enter "0" for No.) (Advanced approaches institutions must enter "0" for No.)........................ | 0=No 1=Yes | RCOA P838    0 | 3.a. |
| | | RCFA | Amount | |
| 4. | Common equity tier 1 minority interest includable in common equity tier 1 capital........ | P839 | 0 | 4. |
| 5. | Common equity tier 1 capital before adjustments and deductions (sum of items 1 through 4)........ | P840 | 26,560,000 | 5. |
| **Common Equity Tier 1 Capital: Adjustments and Deductions** | | | | |
| 6. | LESS: Goodwill net of associated deferred tax liabilities (DTLs)........................ | P841 | 5,677,000 | 6. |
| 7. | LESS: Intangible assets (other than goodwill and mortgage servicing assets (MSAs)), net of associated DTLs........ | P842 | 541,000 | 7. |
| 8. | LESS: Deferred tax assets (DTAs) that arise from net operating loss and tax credit carryforwards, net of any related valuation allowances and net of DTLs...................... | P843 | 31,000 | 8. |
| 9. | AOCI-related adjustments (if entered "1" for Yes in item 3.a, complete only items 9.a through 9.e; if entered "0" for No in item 3.a, complete only item 9.f): | | | |
| | a. LESS: Net unrealized gains (losses) on available-for-sale securities (if a gain, report as a positive value; if a loss, report as a negative value)...................... | P844 | | 9.a. |
| | b. LESS: Net unrealized loss on available-for-sale preferred stock classified as an equity security under GAAP and available-for-sale equity exposures (report loss as a positive value)........ | P845 | | 9.b. |
| | c. LESS: Accumulated net gains (losses) on cash flow hedges (if a gain, report as a positive value; if a loss, report as a negative value)...................... | P846 | | 9.c. |
| | d. LESS: Amounts recorded in AOCI attributed to defined benefit postretirement plans resulting from the initial and subsequent application of the relevant GAAP standards that pertain to such plans (if a gain, report as a positive value; if a loss, report as a negative value)........ | P847 | | 9.d. |
| | e. LESS: Net unrealized gains (losses) on held-to-maturity securities that are included in AOCI (if a gain, report as a positive value; if a loss, report as a negative value)........ | P848 | | 9.e. |
| | f. To be completed only by institutions that entered "0" for No in item 3.a: LESS: Accumulated net gain (loss) on cash flow hedges included in AOCI, net of applicable income taxes, that relates to the hedging of items that are not recognized at fair value on the balance sheet (if a gain, report as a positive value; if a loss, report as a negative value)........ | P849 | 6,000 | 9.f. |
| 10. | Other deductions from (additions to) common equity tier 1 capital before threshold-based deductions: | | | |
| | a. LESS: Unrealized net gain (loss) related to changes in the fair value of liabilities that are due to changes in own credit risk (if a gain, report as a positive value; if a loss, report as a negative value)........ | Q258 | 2,000 | 10.a. |
| | b. LESS: All other deductions from (additions to) common equity tier 1 capital before threshold-based deductions.................................................. | P850 | 0 | 10.b. |
| 11. | LESS: Non-significant investments in the capital of unconsolidated financial institutions in the form of common stock that exceed the 10 percent threshold for non-significant investments........ | P851 | 0 | 11. |
| 12. | Subtotal (item 5 minus items 6 through 11)............................................ | P852 | 20,303,000 | 12. |

The Bank of New York Mellon
Legal Title of Bank

RSSD ID:

## Schedule RC-R - Continued

### Part I.—Continued

| | Dollar Amounts in Thousands | RCFA | Amount | |
|---|---|---|---|---|
| 13. | LESS: Significant investments in the capital of unconsolidated financial institutions in the form of common stock, net of associated DTLs, that exceed the 10 percent common equity tier 1 capital deduction threshold.............................................................................................. | P853 | 0 | 13. |
| 14. | LESS: MSAs, net of associated DTLs, that exceed the 10 percent common equity tier 1 capital deduction threshold......................................................................................................... | P854 | 0 | 14. |
| 15. | LESS: DTAs arising from temporary differences that could not be realized through net operating loss carrybacks, net of related valuation allowances and net of DTLs, that exceed the 10 percent common equity tier 1 capital deduction threshold......................................................... | P855 | 0 | 15. |
| 16. | LESS: Amount of significant investments in the capital of unconsolidated financial institutions in the form of common stock, net of associated DTLs; MSAs, net of associated DTLs; and DTAs arising from temporary differences that could not be realized through net operating loss carrybacks, net of related valuation allowances and net of DTLs; that exceeds the 15 percent common equity tier 1 capital deduction threshold .......................................................... | P856 | 0 | 16. |
| 17. | LESS: Deductions applied to common equity tier 1 capital due to insufficient amounts of additional tier 1 capital and tier 2 capital to cover deductions ............................................... | P857 | 0 | 17. |
| 18. | Total adjustments and deductions for common equity tier 1 capital (sum of items 13 through 17)............ | P858 | 0 | 18. |
| 19. | **Common equity tier 1 capital** (item 12 minus item 18)............................................................ | P859 | 20,303,000 | 19. |
| **Additional Tier 1 Capital** | | | | |
| 20. | Additional tier 1 capital instruments plus related surplus............................................................ | P860 | 0 | 20. |
| 21. | Non-qualifying capital instruments subject to phase out from additional tier 1 capital............... | P861 | 424,000 | 21. |
| 22. | Tier 1 minority interest not included in common equity tier 1 capital............................................ | P862 | 0 | 22. |
| 23. | Additional tier 1 capital before deductions (sum of items 20, 21, and 22)................................. | P863 | 424,000 | 23. |
| 24. | LESS: Additional tier 1 capital deductions.................................................................................... | P864 | 9,000 | 24. |
| 25. | **Additional tier 1 capital** (greater of item 23 minus item 24 or zero)....................................... | P865 | 415,000 | 25. |
| **Tier 1 Capital** | | | | |
| 26. | **Tier 1 capital** (sum of items 19 and 25) .................................................................................. | 8274 | 20,718,000 | 26. |
| **Tier 2 Capital** | | | | |
| 27. | Tier 2 capital instruments plus related surplus............................................................................ | P866 | 424,000 | 27. |
| 28. | Non-qualifying capital instruments subject to phase out from tier 2 capital................................ | P867 | 0 | 28. |
| 29. | Total capital minority interest that is not included in tier 1 capital............................................... | P868 | 0 | 29. |
| 30. a. | Allowance for loan and lease losses includable in tier 2 capital............................................. | 5310 | 235,000 | 30.a. |
| b. | (Advanced approaches institutions that exit parallel run only): Eligible credit reserves includable in tier 2 capital............................................................................................. | RCFW 5310 | 44,000 | 30.b. |
| 31. | Unrealized gains on available-for-sale preferred stock classified as an equity security under GAAP and available-for-sale equity exposures includable in tier 2 capital.............................. | RCFA Q257 | 0 | 31. |
| 32. a. | Tier 2 capital before deductions (sum of items 27 through 30.a, plus item 31) ................... | P870 | 659,000 | 32.a. |
| b. | (Advanced approaches institutions that exit parallel run only): Tier 2 capital before deductions (sum of items 27 through 29, plus items 30.b and 31)................................ | RCFW P870 | 468,000 | 32.b. |
| 33. | LESS: Tier 2 capital deductions...................................................................................................... | RCFA P872 | 1,000 | 33. |
| 34. a. | **Tier 2 capital** (greater of item 32.a minus item 33, or zero)................................................ | 5311 | 658,000 | 34.a. |
| b. | (Advanced approaches institutions that exit parallel run only): Tier 2 capital (greater of item 32.b minus item 33, or zero)............................................................................... | RCFW 5311 | 467,000 | 34.b. |
| **Total Capital** | | | | |
| 35. a. | **Total capital** (sum of items 26 and 34.a)............................................................................. | RCFA 3792 | 21,376,000 | 35.a. |
| b. | (Advanced approaches institutions that exit parallel run only): Total capital (sum of items 26 and 34.b)..................................................................................................... | RCFW 3792 | 21,185,000 | 35.b. |

The Bank of New York Mellon
Legal Title of Bank
RSSD ID:

FFIEC 031
Page 64 of 84
RC-49

## Schedule RC-R—Continued
### Part I.—Continued

| Dollar Amounts in Thousands | RCFD | Amount | |
|---|---|---|---|
| **Total Assets for the Leverage Ratio** | | | |
| 36. Average total consolidated assets............................................................ | 3368 | 271,702,000 | 36. |
| | RCFA | | |
| 37. LESS: Deductions from common equity tier 1 capital and additional tier 1 capital (sum of items 6, 7, 8, 10.b, 11, 13 through 17, and certain elements of item 24 - see instructions)............. | P875 | 6,257,000 | 37. |
| 38. LESS: Other deductions from (additions to) assets for leverage ratio purposes.............. | B596 | -1,088,000 | 38. |
| 39. **Total assets for the leverage ratio** (item 36 minus items 37 and 38)............... | A224 | 266,533,000 | 39. |
| **Total Risk-Weighted Assets** | | | |
| 40. a. **Total risk-weighted assets** (from Schedule RC-R, Part II, item 31)............... | A223 | 116,955,800 | 40.a. |
| b. (Advanced approaches institutions that exit parallel run only): Total risk-weighted assets | RCFW | | |
| using advanced approaches rule (from FFIEC 101 Schedule A, item 60)............... | A223 | 137,112,980 | 40.b. |

| | Column A | | Column B | | |
|---|---|---|---|---|---|
| | RCFA | Percentage | RCFW | Percentage | |
| **Risk-Based Capital Ratios** | | | | | |
| 41. Common equity tier 1 capital ratio (Column A: item 19 divided by item 40.a) | | | | | |
| (Advanced approaches institutions that exit parallel run only: Column B: item 19 | | | | | |
| divided by item 40.b)............................................................ | P793 | 17.3595% | P793 | 14.8075% | 41. |
| 42. Tier 1 capital ratio (Column A: item 26 divided by item 40.a) | | | | | |
| (Advanced approaches institutions that exit parallel run only: Column B: item 26 | | | | | |
| divided by item 40.b)............................................................ | 7206 | 17.7144% | 7206 | 15.1102% | 42. |
| 43. Total capital ratio (Column A: item 35.a divided by item 40.a) | | | | | |
| (Advanced approaches institutions that exit parallel run only: Column B: item 35.b | | | | | |
| divided by item 40.b)............................................................ | 7205 | 18.2770% | 7205 | 15.4508% | 43. |

| | RCFA | Percentage | |
|---|---|---|---|
| **Leverage Capital Ratios** | | | |
| 44. Tier 1 leverage ratio (Item 26 divided by item 39)............................ | 7204 | 7.7731% | 44. |
| 45. Advanced approaches institutions only: Supplementary leverage ratio information: | | | |
| | | Amount | |
| a. Total leverage exposure ................................................... | H015 | 292,759,000 | 45.a. |
| | | Percentage | |
| b. Supplementary leverage ratio ............................................. | H036 | 7.0768% | 45.b. |

| | RCFA | Percentage | |
|---|---|---|---|
| **Capital Buffer** | | | |
| 46 Institution-specific capital buffer necessary to avoid limitations on distributions and discretionary bonus payments: | | | |
| a. Capital conservation buffer............................................... | H311 | 7.4508% | 46.a. |
| | RCFW | | |
| b. (Advanced approaches institutions that exit parallel run only); Total applicable capital buffer............. | H312 | 5.7500% | 46.b. |

| | RCFA | Amount | |
|---|---|---|---|
| Institutions must complete items 47 and 48 if the amount in item 46.a (or the lower of item 46.a or 46.b for an advanced approaches institution that has exited parallel run) is less than or equal to the applicable minimum capital conservation buffer: | | | |
| 47. Eligible retained income............................................................ | H313 | | 47. |
| 48 Distributions and discretionary bonus payments during the quarter............... | H314 | | 48. |

*Report each ratio and buffer as a percentage, rounded to four decimal places, e.g., 12.3456.

09/20

FFIEC 031
Page 65 of 84
RC-50

The Bank of New York Mellon
Legal Title of Bank
FDIC Certificate Number: 00639

## Schedule RC-R—Continued
### Part II. Risk-Weighted Assets

Institutions are required to assign a 100 percent risk weight to all assets not specifically assigned a risk weight under Subpart D of the federal banking agencies' regulatory capital rules[1] and not deducted from tier 1 or tier 2 capital.

| Dollar Amounts in Thousands | (Column A) Totals from Schedule RC — Amount | (Column B) Adjustments to Totals Reported in Column A — Amount | (Column C) 0% Amount | (Column D) 2% Amount | (Column E) 4% Amount | (Column F) 10% Amount | (Column G) 20% Amount | (Column H) 50% Amount | (Column I) 100% Amount | (Column J) 150% Amount | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Balance Sheet Asset Categories[2]** | | | | | | | | | | | |
| 1. Cash and balances due from depository institutions | RCFD D957 94,192,000 | RCFD S396 0 | RCFD D958 73,582,000 | | | | RCFD D959 17,450,000 | RCFD S397 2,224,000 | RCFD D960 404,000 | RCFD S398 582,000 | 1. |
| 2. Securities: | | | | | | | | | | | |
| a. Held-to-maturity securities | RCFD D961 39,298,000 | RCFD S399 0 | RCFD D962 13,328,000 | RCFD H174 | RCFD HJ75 | | RCFD D963 25,956,000 | RCFD D964 14,000 | RCFD D965 0 | RCFD S400 0 | 2.a. |
| b. Available-for-sale securities | RCFD D966 69,815,000 | RCFD S402 0 | RCFD D967 32,745,000 | RCFD H176 | RCFD HJ77 | | RCFD D968 32,088,000 | RCFD D969 2,240,000 | RCFD D970 2,742,000 | RCFD S403 0 | 2.b. |
| 3. Federal funds sold and securities purchased under agreements to resell: | | | | | | | | | | | |
| a. Federal funds sold in domestic offices | RCON D971 0 | | RCON D972 0 | | | | RCON D973 0 | RCON S410 0 | RCON D974 0 | RCON S411 0 | 3.a. |
| b. Securities purchased under agreements to resell | RCFD H171 14,181,000 | RCFD H172 14,181,000 | | | | | | | | | 3.b. |
| 4. Loans and leases held for sale: | | | | | | | | | | | |
| a. Residential mortgage exposures | RCFD S413 0 | RCFD S414 0 | RCFD H173 0 | | | | RCFD S415 0 | RCFD S416 0 | RCFD S417 0 | | 4.a. |
| b. High volatility commercial real estate exposures | RCFD S419 0 | RCFD S420 0 | RCFD H174 0 | | | | RCFD H175 0 | RCFD H176 0 | RCFD H177 0 | RCFD S421 0 | 4.b. |
| c. Exposures past due 90 days or more or on nonaccrual[3] | RCFD S423 0 | RCFD S424 0 | RCFD S425 0 | RCFD H178 0 | RCFD HJ79 0 | | RCFD S426 0 | RCFD S427 0 | RCFD S428 0 | RCFD S429 0 | 4.c. |

1. For national banks and federal savings associations, 12 CFR Part 3; for state member banks, 12 CFR Part 217; and for state nonmember banks and state savings associations, 12 CFR Part 324.

2. All securitization exposures held as on-balance sheet assets of the reporting institution are to be excluded from lines 1 through 8 and are to be reported instead in item 9.

3. For loans and leases held for sale, exclude residential mortgage exposures, high volatility commercial real estate exposures, or sovereign exposures that are past due 90 days or more or on nonaccrual.

03/2017

FFIEC 031
Page 66 of 84
RC-51

The Bank of New York Mellon
Legal Title of Bank
FDIC Certificate Number: 00639

## Schedule RC-R—Continued
### Part II—Continued

| Dollar Amounts in Thousands | (Column K)[5] 250% Amount | (Column L) 300% Amount | (Column M) 400% Amount | (Column N) 600% Amount | (Column O) 625% Amount | (Column P) 937.5% Amount | (Column Q) 1250% Amount | (Column R) Application of Other Risk-Weighting Approaches[4] Exposure Amount | (Column S) Risk-Weighted Asset Amount |
|---|---|---|---|---|---|---|---|---|---|
| Balance Sheet Asset Categories (continued) | | | | | | | | | |
| 1. Cash and balances due from depository institutions | | | | | | | | | |
| 2. Securities | | | | | | | | | |
| a. Held-to-maturity securities | RCFD H270 0 | RCFD S405 0 | | RCFD S406 0 | | | | RCFD H271 0 | RCFD H272 0 |
| b. Available-for-sale securities | | | | | | | | | |
| 3. Federal funds sold and securities purchased under agreements to resell: | | | | | | | | RCFD H273 0 | RCFD H274 0 |
| a. Federal funds sold in domestic offices | | | | | | | | | |
| b. Securities purchased under agreements to resell | | | | | | | | | |
| 4. Loans and leases held for sale: | | | | | | | | | |
| a. Residential mortgage exposures | | | | | | | | RCFD H273 0 | RCFD H274 0 |
| b. High volatility commercial real estate exposures | | | | | | | | RCFD H275 0 | RCFD H276 0 |
| c. Exposures past due 90 days or more or on nonaccrual[6] | | | | | | | | RCFD H277 0 | RCFD H278 0 |

4. Includes, for example, investments in mutual funds/investment funds, exposures collateralized by securitization exposures or mutual funds, separate account bank-owned life insurance, and default fund contributions to central counterparties.

5. Column K – 250% risk weight is not applicable until the March 31, 2018, report date.

6. For loans and leases held for sale, exclude residential mortgage exposures, high volatility commercial real estate exposures, or sovereign exposures that are past due 90 days or more or on nonaccrual.

06/2015

FFIEC 031
Page 67 of 84
RC-52

**The Bank of New York Mellon**
Legal Title of Bank
FDIC Certificate Number: 00639

## Schedule RC-R—Continued
### Part II—Continued

Dollar Amounts in Thousands

| | (Column A) Totals from Schedule RC — Amount | (Column B) Adjustments to Totals Reported in Column A — Amount | (Column C) 0% Amount | (Column D) 2% Amount | (Column E) 4% Amount | (Column F) 10% Amount | (Column G) 20% Amount | (Column H) 50% Amount | (Column I) 100% Amount | (Column J) 150% Amount | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **4. Loans and leases held for sale (continued):** | | | | | | | | | | | |
| d. All other exposures | RCFD S431 0 | RCFD S432 0 | RCFD S433 0 | RCFD H480 0 | RCFD H481 0 | | RCFD S434 0 | RCFD S435 0 | RCFD S436 0 | RCFD S437 0 | 4.d. |
| **5. Loans and leases, held for investment:** | | | | | | | | | | | |
| a. Residential mortgage exposures | RCFD S439 713,000 | RCFD S440 0 | RCFD H478 0 | | | | RCFD S441 | RCFD S442 | RCFD S443 713,000 | | 5.a. |
| b. High volatility commercial real estate exposures | RCFD S445 127,000 | RCFD S446 0 | RCFD H479 0 | | | | RCFD H180 0 | RCFD H181 0 | RCFD H182 127,000 | RCFD S447 127,000 | 5.b. |
| c. Exposures past due 90 days or more or on nonaccrual[7] | RCFD S449 45,000 | RCFD S450 0 | RCFD S451 0 | RCFD H482 0 | RCFD H483 0 | | RCFD S452 0 | RCFD S453 0 | RCFD S454 0 | RCFD S455 45,000 | 5.c. |
| d. All other exposures | RCFD S457 28,596,000 | RCFD S458 0 | RCFD S459 3,077,000 | RCFD H484 0 | RCFD H485 0 | | RCFD S460 2,835,000 | RCFD S461 885,000 | RCFD S462 19,624,000 | RCFD S463 2,115,000 | 5.d. |
| 6. LESS: Allowance for loan and lease losses | RCFD 3123 156,000 | RCFD 3123 156,000 | | | | | | | | | 6. |
| 7. Trading assets | RCFD D976 5,201,000 | RCFD S466 136,000 | RCFD D977 0 | RCFD H486 0 | RCFD H487 0 | | RCFD D978 0 | RCFD D979 0 | RCFD D980 0 | RCFD S467 0 | 7. |
| 8. All other assets[8] | RCFD D981 24,882,000 | RCFD S469 8,253,000 | RCFD D982 1,318,000 | RCFD H488 0 | RCFD H489 0 | | RCFD D983 241,000 | RCFD D984 72,000 | RCFD D985 11,727,000 | RCFD H185 275,000 | 8. |
| a. Separate account bank-owned life insurance | | | | | | | | | | | 8.a. |
| b. Default fund contributions to central counterparties | | | | | | | | | | | 8.b. |

7  For loans and leases, held for investment, exclude residential mortgage exposures, high volatility commercial real estate exposures, or sovereign exposures that are past due 90 days or more or on nonaccrual.

8  Includes premises and fixed assets; other real estate owned; investments in unconsolidated subsidiaries and associated companies; direct and indirect investments in real estate ventures; intangible assets; and other assets.

03/2017

The Bank of New York Mellon
Legal Title of Bank
FDIC Certificate Number: 00639

## Schedule RC-R—Continued
### Part II—Continued

| Dollar Amounts in Thousands | (Column K) 250%[10] Amount | (Column L) 300% Amount | (Column M) 400% Amount | (Column N) 600% Amount | (Column O) 625% Amount | (Column P) 937.5% Amount | (Column Q) 1,250% Amount | (Column R) Application of Other Risk Weighting Approaches[9] Exposure Amount | (Column S) Application of Other Risk Weighting Approaches[9] Risk Weighted Asset Amount | |
|---|---|---|---|---|---|---|---|---|---|---|
| 4. Loans and leases held for sale (continued): | | | | | | | | | | |
| d. All other exposures | | | | | | | | RCFD H279  0 | RCFD H280 | 4.d. |
| 5. Loans and leases, held for investment: | | | | | | | | | | |
| a. Residential mortgage exposures | | | | | | | | RCFD H281  0 | RCFD H282  0 | 5.a. |
| b. High volatility commercial real estate exposures | | | | | | | | RCFD H283  0 | RCFD H284  0 | 5.b. |
| c. Exposures past due 90 days or more on nonaccrual[11] | | | | | | | | RCFD H285  0 | RCFD H286  0 | 5.c. |
| d. All other exposures | | | | | | | | RCFD H287  0 | RCFD H288  0 | 5.d. |
| 6. LESS: Allowance for loan and lease losses | | | | | | | | RCFD H291  0 | RCFD H292  0 | 6. |
| 7. Trading assets | RCFD H289 | RCFD H186  0 | RCFD H290 | RCFD H187  0 | | | | RCFD H294  0 | RCFD H295  0 | 7. |
| 8. All other assets[12] | RCFD H293 | RCFD H188  0 | RCFD S470  0 | RCFD S471  18,000 | | | | RCFD H296  20,000 | RCFD H297  285,000 | 8. |
| a. Separate account bank-owned life insurance | | | | | | | | RCFD H296  2,715,000 | RCFD H297  1,468,000 | 8.a. |
| b. Default fund contributions to central counterparties | | | | | | | | RCFD H298  23,000 | RCFD H299  123,000 | 8.b. |

[9] Includes, for example, investments in mutual funds/investment funds, exposures collateralized by securitization exposures or mutual funds, separate account bank-owned life insurance, and default fund contributions to central counterparties.

[10] Column K – 250% risk weight is not applicable until the March 31, 2018, report date.

[11] For loans and leases, held for investment, exclude residential mortgage exposures, high volatility commercial real estate exposures, or sovereign exposures that are past due 90 days or more or on nonaccrual.

[12] Includes premises and fixed assets; other real estate owned; investments in unconsolidated subsidiaries and associated companies; direct and indirect investments in real estate ventures; intangible assets; and other assets.

The Bank of New York Mellon
Legal Title of Bank
FDIC Certificate Number: 00639

FFIEC 031
Page 69 of 84
RC-54

## Schedule RC-R—Continued
### Part II—Continued

**Dollar Amounts in Thousands**

**Securitization Exposures: On- and Off-Balance Sheet**

| | (Column A) Totals — Amount | (Column B) Adjustments to Totals Reported in Column A — Amount | (Column Q) Allocation by Risk Weight Category (Exposure Amount) 1250% — Amount | (Column T) Total Risk Weighted Asset Amount by Calculation Methodology — SSFA[13] Amount | (Column U) Gross-Up Amount | |
|---|---|---|---|---|---|---|
| 9. On-balance sheet securitization exposures: | | | | | | |
| a. Held-to-maturity securities | RCFD S475 135,000 | RCFD S476 135,000 | RCFD S477 0 | RCFD S478 60,000 | RCFD S479 | 9.a. |
| b. Available-for-sale securities | RCFD S480 6,474,000 | RCFD S481 6,474,000 | RCFD S482 0 | RCFD S483 4,177,000 | RCFD S484 0 | 9.b. |
| c. Trading assets | RCFD S485 0 | RCFD S486 0 | RCFD S487 0 | RCFD S488 0 | RCFD S489 0 | 9.c. |
| d. All other on-balance sheet securitization exposures | RCFD S490 99,000 | RCFD S491 99,000 | RCFD S492 0 | RCFD S493 225,000 | RCFD S494 0 | 9.d. |
| 10. Off-balance sheet securitization exposures | RCFD S495 642,000 | RCFD S496 642,000 | RCFD S497 0 | RCFD S498 259,000 | RCFD S499 0 | 10. |

**Dollar Amounts in Thousands**

| | (Column A) Totals from Schedule RC — Amount | (Column B) Adjustments to Totals Reported in Column A — Amount | Allocation by Risk Weight Category | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | (Column C) 0% — Amount | (Column D) 2% — Amount | (Column E) 4% — Amount | (Column F) 10% — Amount | (Column G) 20% — Amount | (Column H) 50% — Amount | (Column I) 100% — Amount | (Column J) 150% — Amount | |
| 11. Total balance sheet assets[14] | RCFD 2170 281,342,000 | RCFD S500 32,207,000 | RCFD D987 124,000,000 | RCFD H290 0 | RCFD H291 0 | RCFD S501 0 | RCFD D988 78,570,000 | RCFD D989 5,435,000 | RCFD D990 35,210,000 | RCFD S503 3,144,000 | 11. |

**Dollar Amounts in Thousands**

| | Allocation by Risk-Weight Category | | | | | | | (Column R) Application of Other Risk Weighting Approaches Exposure Amount | |
|---|---|---|---|---|---|---|---|---|---|
| | (Column K) 250%[15] — Amount | (Column L) 300% — Amount | (Column M) 400% — Amount | (Column N) 600% — Amount | (Column O) 625% — Amount | (Column P) 937.5% — Amount | (Column Q) 1250% — Amount | | |
| 11. Total balance sheet assets[14] | RCFD S504 | RCFD S505 0 | RCFD S506 0 | RCFD S507 18,000 | RCFD S508 0 | RCFD S509 0 | RCFD S510 0 | RCFD H300 2,766,000 | 11. |

[13] Simplified Supervisory Formula Approach.
[14] For each of columns A through R of item 11, report the sum of items 1 through 9. For item 11, the sum of columns B through R must equal column A. Item 11, column A, must equal Schedule RC, item 12.
[15] Column K – 250% risk weight is not applicable until the March 31, 2018, report dates.

FFIEC 031
Page 70 of 84
RC-55

The Bank of New York Mellon
Legal Title of Bank
FDIC Certificate Number: 00539

## Schedule RC-R—Continued
### Part II—Continued

Dollar Amounts in Thousands

| | (Column A) Face, Notional, or Other Amount | CCF[16] | (Column B) Credit Equivalent Amount[17] | (Column C) 0% Amount | (Column D) 2% Amount | (Column E) 4% Amount | (Column F) 10% Amount | (Column G) 20% Amount | (Column H) 50% Amount | (Column I) 100% Amount | (Column J) 150% Amount | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Allocation by Risk Weight Category | | | | | | | |
| **Derivatives, Off-Balance Sheet Items, and Other Items Subject to Risk Weighting (Excluding Securitization Exposures)[18]** | | | | | | | | | | | | |
| 12. Financial standby letters of credit | RCFD D991 3,937,000 | 1.0 | RCFD D992 3,937,000 | RCFD D993 0 | RCFD H492 0 | RCFD H493 0 | | RCFD D994 895,000 | RCFD D995 153,000 | RCFD D996 2,549,000 | RCFD S511 340,000 | 12. |
| 13. Performance standby letters of credit and transaction-related contingent items | RCFD D997 80,000 | 0.5 | RCFD D998 40,000 | RCFD D999 0 | | | | RCFD G603 6,000 | RCFD G604 0 | RCFD G605 34,000 | RCFD S512 0 | 13. |
| 14. Commercial and similar letters of credit with an original maturity of one year or less | RCFD G606 260,000 | 0.2 | RCFD G607 52,000 | RCFD G608 0 | RCFD H494 0 | RCFD H495 0 | | RCFD G609 2,000 | RCFD G610 18,000 | RCFD G611 10,000 | RCFD S513 22,000 | 14. |
| 15. Retained recourse on small business obligations sold with recourse | RCFD G612 0 | 1.0 | RCFD G613 0 | RCFD G614 0 | | | | RCFD G615 0 | RCFD G616 0 | RCFD G617 0 | RCFD S514 0 | 15. |

16. Credit conversion factor.
17. Column A multiplied by credit conversion factor. For each of items 12 through 21, the sum of columns C through J plus column R must equal column B.
18. All derivatives and off-balance sheet items that are securitization exposures are to be excluded from items 12 through 21 and are to be reported instead in item 10.

03/2017

The Bank of New York Mellon
Legal Title of Bank
FDIC Certificate Number: 00639

## Schedule RC-R—Continued
### Part II—Continued

Dollar Amounts in Thousands

| | (Column A) Face, Notional, or Other Amount | CCF[19] | (Column B) Credit Equivalent Amount[20] | Allocation by Risk Weight Category | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | (Column C) 0% Amount | (Column D) 2% Amount | (Column E) 4% Amount | (Column F) 10% Amount | (Column G) 20% Amount | (Column H) 50% Amount | (Column I) 100% Amount | (Column J) 150% Amount | |
| 16. Repo-style transactions[21] | RCFD S515 32,608,000 | 1.0 | RCFD S516 32,608,000 | RCFD S517 0 | RCFD S518 | RCFD S519 | | RCFD S520 9,726,000 | RCFD S521 150,000 | RCFD S522 22,689,000 | RCFD S523 43,000 | 16. |
| 17. All other off-balance sheet liabilities | RCFD G618 0 | 1.0 | RCFD G619 0 | RCFD G620 0 | | | | RCFD G621 0 | RCFD G622 0 | RCFD G623 0 | RCFD S524 0 | 17. |
| 18. Unused commitments: | | | | | | | | | | | | |
| a. Original maturity of one year or less | RCFD S525 28,905,000 | 0.2 | RCFD S526 5,381,000 | RCFD S527 0 | RCFD H96 0 | RCFD H97 0 | | RCFD S528 128,000 | RCFD S529 0 | RCFD S530 5,253,000 | RCFD S531 0 | 18.a. |
| b. Original maturity exceeding one year | RCFD G624 21,744,000 | 0.5 | RCFD G625 10,872,000 | RCFD G626 0 | RCFD H98 0 | RCFD H99 0 | | RCFD G627 7,000 | RCFD G628 124,000 | RCFD G629 10,699,000 | RCFD S539 42,000 | 18.b. |
| 19. Unconditionally cancelable commitments | RCFD S540 0 | 0.0 | RCFD S541 0 | | | | | | | | | 19. |
| 20. Over-the-counter derivatives | | | RCFD S542 8,731,000 | RCFD S543 1,780,000 | RCFD HK00 0 | RCFD HK01 0 | | RCFD S545 1,258,000 | RCFD S546 687,000 | RCFD S547 5,016,000 | RCFD S548 10,000 | 20. |
| 21. Centrally cleared derivatives | | | RCFD S549 1,031,000 | RCFD S550 0 | RCFD S551 517,000 | RCFD S552 0 | RCFD S553 514,000 | RCFD S554 0 | RCFD S555 0 | RCFD S556 0 | RCFD S557 0 | 21. |
| 22. Unsettled transactions (failed trades)[22] | RCFD H191 8,000 | | | RCFD H193 5,000 | | | | RCFD H194 0 | RCFD H195 0 | RCFD H196 2,000 | RCFD H197 0 | 22. |

19. Credit conversion factor.
20. For items 16 through 19, column A is multiplied by credit conversion factor.
21. Includes securities purchased under agreements to resell (reverse repos), securities sold under agreements to repurchase (repos), securities borrowed, and securities lent.
22. For item 22, the sum of columns C through Q must equal column A.

03/2017

FFIEC 031
Page 72 of 84
RC-57

The Bank of New York Mellon
Legal Title of Bank
FDIC Certificate Number: 00639

## Schedule RC-R—Continued
### Part II—Continued

| Dollar Amounts in Thousands | (Column O) Allocation by Risk Weight Category 625% Amount | (Column P) 937.5% Amount | (Column Q) 1250% Amount | (Column R) Application of Other Risk-Weighting Approaches[23] Credit Equivalent Amount | (Column S) Risk Weighted Asset Amount | |
|---|---|---|---|---|---|---|
| 16. Repo-style transactions[24] | RCFD H302 | | | RCFD H301 | RCFD H302 | 0 | 16. |
| 17. All other off-balance sheet liabilities | | | | | | 17. |
| 18. Unused commitments: | | | | | | |
| a. Original maturity of one year or less | | | | RCFD H303 | RCFD H304 0 | 18.a. |
| b. Original maturity exceeding one year | | | | RCFD H307 | RCFD H308 0 | 18.b. |
| 19. Unconditionally cancelable commitments | | | | | | 19. |
| 20. Over-the-counter derivatives | | | | RCFD H309 | RCFD H310 0 | 20. |
| 21. Centrally cleared derivatives | | | | | | 21. |
| 22. Unsettled transactions (failed trades)[25] | RCFD H198 0 | RCFD H199 0 | RCFD H200 1,000 | | | 22. |

23. Includes, for example, exposures collateralized by securitization exposures or mutual funds.
24. Includes securities purchased under agreements to resell (reverse repos), securities sold under agreements to repurchase (repos), securities borrowed, and securities lent.
25. For item 22, the sum of columns C through Q must equal column A.

03/2017

FFIEC 031
Page 73 of 84
RC-58

The Bank of New York Mellon
Legal Title of Bank
FDIC Certificate Number: 00639

## Schedule RC-R—Continued
Part II—Continued

| Dollar Amounts in Thousands | (Column C) 0% Amount | (Column D) 2% Amount | (Column E) 4% Amount | (Column F) 10% Amount | (Column G) 20% Amount | (Column H) 50% Amount | (Column I) 100% Amount | (Column J) 150% Amount | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Allocation by Risk Weight Category | | | | | |
| 23. Total assets, derivatives, off-balance sheet items, and other items subject to risk weighting by riskweight category (for each of columns C through P, sum of items 11 through 22; for column Q, sum of items 10 through 22). | RCFD G630<br>125,765,000 | RCFD S558<br>517,000 | RCFD S559<br>514,000 | RCFD S560<br>0 | RCFD G631<br>90,592,000 | RCFD G632<br>6,567,000 | RCFD G633<br>81,462,000 | RCFD S561 | 23. |
| 24. Risk weight factor | X 0% | X 2% | X 4% | X 10% | X 20% | X 50% | X 100% | X 150% | 24. |
| 25. Risk-weighted assets by risk-weight category (for each column, item 23 multiplied by item 24) | RCFD G634<br>0 | RCFD S569<br>10,340 | RCFD S570<br>20,560 | RCFD S571<br>0 | RCFD G635<br>18,118,400 | RCFD G636<br>3,283,500 | RCFD G637<br>81,462,000 | RCFD S572<br>5,401,500 | 25. |

03/2015

FFIEC 031
Page 74 of 84
RC-59

The Bank of New York Mellon
Legal Title of Bank

FDIC Certificate Number: 00639

## Schedule RC-R—Continued
### Part II—Continued

| | (Column K) | (Column L) | (Column M) | (Column N) | (Column O) | (Column P) | (Column Q) |
|---|---|---|---|---|---|---|---|
| | | | | Allocation by Risk Weight Category | | | |
| Dollar Amounts in Thousands | 250%[26] Amount | 300% Amount | 400% Amount | 600% Amount | 625% Amount | 937.5% Amount | 1250% Amount |
| 23. Total assets, derivatives, off-balance sheet items, and other items subject to risk weighting by risk-weight category (for each of columns c through P, sum of items 11 through 22; for column Q, sum of items 10 through 22) | RCFD S562 | RCFD S563 | RCFD S564 | RCFD S565 | RCFD S566 | RCFD S567 | RCFD S568 1,000. | 23. |
| 24. Risk weight factor | X 250% | X 300% | X 400% | X 600% | X 625% | X 937.5% | X 1250% | 24. |
| 25. Risk-weighted assets by risk-weight category (for each column, item 23 multiplied by item 24) | RCFD S573 0 | RCFD S574 0 | RCFD S575 0 | RCFD S576 108,000 | RCFD S577 0 | RCFD S578 0 | RCFD S579 12,500. | 25. |

| Totals | |
|---|---|
| Dollar Amounts in Thousands | |
| | RCFD | Amount | |
| 26. Risk-weighted assets base for purposes of calculating the allowance for loan and lease losses 1.25 percent threshold | S580 | 114,993,800 | 26. |
| 27. Standardized market-risk weighted assets (applicable only to banks that are covered by the market risk capital rules)[27] | S581 | 1,972,000 | 27. |
| 28. Risk-weighted assets before deductions for excess allowance for loan and lease losses and allocated transfer risk reserve[27] | B704 | 116,955,800 | 28. |
| 29. LESS: Excess allowance for loan and lease losses | A222 | 0 | 29. |
| 30. LESS: Allocated transfer risk reserve | 3128 | 0 | 30. |
| 31. Total risk-weighted assets (item 28 minus items 29 and 30) | G641 | 116,955,800 | 31. |

26. Column K - 250% risk weight is not applicable until the March 31, 2018, report date.
27. Sum of items 2.b through 20, column S; items 9.a, 9.b, 9.c, 9.d, and 10, columns T and U; item 25, columns C through Q; and item 27 (if applicable).

06/2015

FFIEC 031
Page 75 of 84
RC-60

**The Bank of New York Mellon**
Legal Title of Bank
FDIC Certificate Number: 00639

## Schedule RC-R—Continued
## Part II—Continued
### Memoranda

Dollar Amounts in Thousands

| | | RCFD | Amount | |
|---|---|---|---|---|
| 1. Current credit exposure across all derivative contracts covered by the regulatory capital rules ............................... | | G642 | 4,922,000 | M.1. |

Dollar Amounts in Thousands

| | (Column A) One year or less | | (Column B) Over one year through five years | | (Column C) Over five years | | |
|---|---|---|---|---|---|---|---|
| | RCFD | Amount | RCFD | Amount | RCFD | Amount | |
| 2. Notional principal amounts of over-the-counter derivative contracts: | | | | | | | |
| a. Interest rate ............................ | S582 | 14,486,000 | S583 | 58,194,000 | S584 | 59,024,000 | M.2.a. |
| b. Foreign exchange rate and gold ....... | S585 | 575,117,000 | S586 | 4,662,000 | S587 | 2,952,000 | M.2.b. |
| c. Credit (investment grade reference asset) ... | S588 | 0 | S589 | 0 | S590 | 0 | M.2.c. |
| d. Credit (non-investment grade reference asset) ... | S591 | 0 | S592 | 0 | S593 | 0 | M.2.d. |
| e. Equity ................................ | S594 | 230,000 | S595 | 242,000 | S596 | 0 | M.2.e. |
| f. Precious metals (except gold) ........ | S597 | 0 | S598 | 0 | S599 | 0 | M.2.f. |
| g. Other ................................. | S600 | 0 | S601 | 0 | S602 | 0 | M.2.g. |
| 3. Notional principal amounts of centrally cleared derivative contracts: | | | | | | | |
| a. Interest rate ............................ | S603 | 69,476,000 | S604 | 47,993,000 | S605 | 58,955,000 | M.3.a. |
| b. Foreign exchange rate and gold ....... | S606 | 0 | S607 | 0 | S608 | 0 | M.3.b. |
| c. Credit (investment grade reference asset) ... | S609 | 0 | S610 | 180,000 | S611 | 0 | M.3.c. |
| d. Credit (non-investment grade reference asset) ... | S612 | 0 | S613 | 0 | S614 | 0 | M.3.d. |
| e. Equity ................................ | S615 | 87,000 | S616 | 34,000 | S617 | 0 | M.3.e. |
| f. Precious metals (except gold) ........ | S618 | 0 | S619 | 0 | S620 | 0 | M.3.f. |
| g. Other ................................. | S621 | 0 | S622 | 0 | S623 | 0 | M.3.g. |

03/2015

FFIEC 031
Page 76 of 84
RC-61

06/201

The Bank of New York Mellon
Legal Title of Bank
FDIC Certificate Number: 00639

# Schedule RC-S—Servicing, Securitization, and Asset Sale Activities

Dollar Amounts in Thousands

| Bank Securitization Activities | (Column A) 1-4 Family Residential Loans Amount | (Column B) Home Equity Lines Amount | (Column C) Credit Card Receivables Amount | (Column D) Auto Loans Amount | (Column E) Other Consumer Loans Amount | (Column F) Commercial and Industrial Loans Amount | (Column G) All Other Loans, All Leases, and All Other Assets Amount | |
|---|---|---|---|---|---|---|---|---|
| 1. Outstanding principal balance of assets sold and securitized by the reporting bank with servicing retained or with recourse or other seller-provided credit enhancements. | RCFD B705 0 | RCFD B706 0 | RCFD B707 0 | RCFD B708 0 | RCFD B709 0 | RCFD B710 0 | RCFD B711 | 1. |
| 2. Maximum amount of credit exposure arising from recourse or other seller-provided credit enhancements provided to structures reported in item 1 in the form of: | | | | | | | | |
| a. Credit-enhancing interest-only strips (included in Schedules RC-B or RC-F or in Schedule RC, item 5). | RCFD B712 0 | RCFD B713 0 | RCFD B714 0 | RCFD B715 0 | RCFD B716 0 | RCFD B717 0 | RCFD B718 | 2.a. |
| b. Subordinated securities and other residual interest. | RCFD C393 0 | RCFD C394 0 | RCFD C395 0 | RCFD C396 0 | RCFD C397 0 | RCFD C398 0 | RCFD C399 | 2.b. |
| c. Standby letters of credit and other enhancements. | RCFD C400 0 | RCFD C401 0 | RCFD C402 0 | RCFD C403 0 | RCFD C404 0 | RCFD C405 0 | RCFD C406 | 2.c. |
| 3. Reporting bank's unused commitments to provide liquidity to structures reported in item 1. | RCFD B726 0 | RCFD B727 0 | RCFD B728 0 | RCFD B729 0 | RCFD B730 0 | RCFD B731 0 | RCFD B732 | 3. |
| 4. Past due loan amounts included in item 1: | | | | | | | | |
| a. 30-89 days past due. | RCFD B733 0 | RCFD B734 0 | RCFD B735 0 | RCFD B736 0 | RCFD B737 0 | RCFD B738 0 | RCFD B739 | 4.a. |
| b. 90 days or more past due. | RCFD B740 0 | RCFD B741 0 | RCFD B742 0 | RCFD B743 0 | RCFD B744 0 | RCFD B745 0 | RCFD B746 | 4.b. |
| 5. Charge-offs and recoveries on assets sold and securitized with servicing retained or with recourse or other seller-provided credit enhancements (calendar year-to-date): | | | | | | | | |
| a. Charge-offs. | RIAD B747 0 | RIAD B748 0 | RIAD B749 0 | RIAD B750 0 | RIAD B751 0 | RIAD B752 0 | RIAD B753 | 5.a. |
| b. Recoveries. | RIAD B754 0 | RIAD B755 0 | RIAD B756 0 | RIAD B757 0 | RIAD B758 0 | RIAD B759 0 | RIAD B760 | 5.b. |

**The Bank of New York Mellon**
Legal Title of Bank
FDIC Certificate Number: 00639

# Schedule RC-S—Continued

| Dollar Amounts in Thousands | (Column A) 1-4 Family Residential Loans Amount | (Column B) Home Equity Lines Amount | (Column C) Credit Card Receivables Amount | (Column D) Auto Loans Amount | (Column E) Other Consumer Loans Amount | (Column F) Commercial and Industrial Loans Amount | (Column G) All Other Loans, All Leases, and All Other Assets Amount | |
|---|---|---|---|---|---|---|---|---|
| 6. Amount of ownership (or seller's) interests carried as: | | | | | | | | |
| a. Securities (included in Schedule RC-B or in Schedule RC, item 5) | | RCFD B761 0 | RCFD B762 0 | | | RCFD B763 0 | | 6.a. |
| b. Loans (included in Schedule RC-C) | | RCFD B500 0 | RCFD B501 0 | | | RCFD B502 0 | | 6.b. |
| 7. Past due loan amounts included in interests reported in item 6.a: | | | | | | | | |
| a. 30–89 days past due | | RCFD B764 0 | RCFD B765 0 | | | RCFD B766 0 | | 7.a. |
| b. 90 days or more past due | | RCFD B767 0 | RCFD B768 0 | | | RCFD B769 0 | | 7.b. |
| 8. Charge-offs and recoveries on loan amounts included in interests reported in item 6.a (calendar year-to-date): | | | | | | | | |
| a. Charge-offs | | RIAD B770 0 | RIAD B771 0 | | | RIAD B772 0 | | 8.a. |
| b. Recoveries | | RIAD B773 0 | RIAD B774 0 | | | RIAD B775 0 | | 8.b. |
| **For Securitization Facilities Sponsored By or Otherwise Established By Other Institutions** | | | | | | | | |
| 9. Maximum amount of credit exposure arising from credit enhancements provided by the reporting bank to other institutions' securitization structures in the form of standby letters of credit, purchased subordinated securities, and other enhancements | RCFD B776 0 | RCFD B777 0 | RCFD B778 0 | RCFD B779 0 | RCFD B780 0 | RCFD B781 0 | RCFD B782 0 | 9. |
| 10. Reporting bank's unused commitments to provide liquidity to other institutions' securitization structures | RCFD B783 0 | RCFD B784 0 | RCFD B785 0 | RCFD B786 0 | RCFD B787 0 | RCFD B788 0 | RCFD B789 511,000 | 10. |

06/2012

FFIEC 031
Page 78 of 84
RC-63

**The Bank of New York Mellon**
Legal Title of Bank
FDIC Certificate Number: 00639

# Schedule RC-S—Continued

| Dollar Amounts in Thousands | (Column A) 1–4 Family Residential Loans Amount | (Column B) Home Equity Lines Amount | (Column C) Credit Card Receivables Amount | (Column D) Auto Loans Amount | (Column E) Other Consumer Loans Amount | (Column F) Commercial and Industrial | (Column G) All Other Loans, All Leases, and All Other Assets Amount | |
|---|---|---|---|---|---|---|---|---|
| | | | | | Loans | | | |

**Bank Asset Sales**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 11. Assets sold with recourse or other seller-provided credit enhancements and not securitized by the reporting bank | RCFD B790 0 | RCFD B791 0 | RCFD B792 0 | RCFD B793 0 | RCFD B794 0 | RCFD B795 0 | RCFD B796 0 | 11. |
| 12. Maximum amount of credit exposure arising from recourse or other seller-provided credit enhancements pro-vided to assets reported in item 11 | RCFD B797 0 | RCFD B798 0 | RCFD B799 0 | RCFD B800 0 | RCFD B801 0 | RCFD B802 0 | RCFD B803 0 | 12. |

## Memoranda

| Dollar Amounts in Thousands | | RCFD | Amount | |
|---|---|---|---|---|
| 1. Small business obligations transferred with recourse under Section 208 of the Riegle Community Development and Regulatory Improvement Act of 1994: | | | | |
| a. Outstanding principal balance | | A249 | 0 | M.1.a. |
| b. Amount of retained recourse on these obligations as of the report date | | A250 | 0 | M.1.b. |
| 2. Outstanding principal balance of assets serviced for others (includes participations serviced for others): | | | | |
| a. Closed-end 1–4 family residential mortgages serviced with recourse or other servicer-provided credit enhancements | | B804 | 0 | M.2.a. |
| b. Closed-end 1–4 family residential mortgages serviced with no recourse or other servicer-provided credit enhancements | | B805 | 0 | M.2.b. |
| c. Other financial assets (includes home equity lines) | | A591 | 0 | M.2.c. |
| d. 1–4 family residential mortgages serviced for others that are in process of foreclosure at quarter-end (includes closed-end and open-end loans) | | F699 | 0 | M.2.d. |
| 3. Asset-backed commercial paper conduits:[2] | | | | |
| a. Maximum amount of credit exposure arising from credit enhancements provided to conduit structures in the form of standby letters of credit, subordinated securities, and other enhancements: | | | | |
| (1) Conduits sponsored by the bank, a bank affiliate, or the bank's holding company | | B806 | 0 | M.3.a.(1) |
| (2) Conduits sponsored by other unrelated institutions | | B807 | 0 | M.3.a.(2) |
| b. Unused commitments to provide liquidity to conduit structures: | | | | |
| (1) Conduits sponsored by the bank, a bank affiliate, or the bank's holding company | | B808 | 0 | M.3.b.(1) |
| (2) Conduits sponsored by other unrelated institutions | | B809 | 44,000 | M.3.b.(2) |
| 4. Outstanding credit card fees and finance charges included in schedule RC-S, item 1 column C[3] | | C407 | | M.4. |

1 Memorandum item 2. c is to be completed if the principal balance of other financial assets serviced for others is more than $10 million.
2 Memorandum items 3.a.(1) through 3.b.(2) are to be completed by banks with $1 billion or more in total assets.
3 Memorandum item 4 is to be completed by banks that (1) together with affiliated institutions, have outstanding credit card receivables (as defined in the instructions) that exceed $500 million as of the report date, or (2) are credit card specialty banks as defined for Uniform Bank Performance Report purposes

09/2011

The Bank of New York Mellon
Legal Title of Bank
FDIC Certificate Number: 00639

## Schedule RC-T—Fiduciary and Related Services

| | RCFD | Yes / No | |
|---|---|---|---|
| 1. Does the institution have fiduciary powers? (If "NO," do not complete Schedule RC-T.)................................................... | A345 | YES | 1. |
| 2. Does the institution exercise the fiduciary powers it has been granted?.......................................................................... | A346 | YES | 2. |
| 3. Does the institution have any fiduciary or related activity (in the form of assets or accounts) to report in this schedule? (If "NO," do not complete the rest of Schedule RC-T.) ............................................................ | B867 | YES | 3. |

If the answer to item 3 is "YES," complete the applicable items of Schedule RC-T, as follows:

Institutions with total fiduciary assets (item 10, sum of columns A and B) greater than $250 million (as of the preceding December 31) or with gross fiduciary and related services income greater than 10 percent of revenue (net interest income plus noninterest income) for the preceding calendar year must complete:
- Items 4 through 22.a and Memorandum item 3 quarterly,
- Items 23 through 26 annually with the December report, and
- Memorandum items 1, 2, and 4 annually with the December report.

Institutions with total fiduciary assets (item 10, sum of columns A and B) greater than $100 million but less than or equal to $250 million (as of the preceding December 31) that do not meet the fiduciary income test for quarterly reporting must complete:
- Items 4 through 26 annually with the December report, and
- Memorandum items 1 through 4 annually with the December report.

Institutions with total fiduciary assets (item 10, sum of columns A and B) of $100 million or less (as of the preceding December 31) that do not meet the fiduciary income test for quarterly reporting must complete:
- Items 4 through 13 annually with the December report, and
- Memorandum items 1 through 3 annually with the December report.

| Dollar Amounts in Thousands | (Column A) Managed Assets Amount | (Column B) Non-Managed Assets Amount | (Column C) Number of Managed Accounts Number | (Column D) Number of Non-Managed Accounts Number | |
|---|---|---|---|---|---|
| **Fiduciary and related assets** | RCFD B868 | RCFD B869 | RCFD B870 | RCFD B871 | |
| 4. Personal trust and agency accounts................... | 69,000 | 14,000 | 26 | 8 | 4. |
| 5. Employee benefit and retirement-related trust and agency accounts: | | | | | |
| a. Employee benefit—defined contribution................................................ | RCFD B872 / 591,000 | RCFD B873 / 129,965,000 | RCFD B874 / 9 | RCFD B875 / 80 | 5.a. |
| b. Employee benefit—defined benefit............... | RCFD B876 / 6,942,000 | RCFD B877 / 462,050,000 | RCFD B878 / 84 | RCFD B879 / 427 | 5.b. |
| c. Other employee benefit and retirement-related accounts.......................................... | RCFD B880 / 73,351,000 | RCFD B881 / 154,895,000 | RCFD B882 / 45 | RCFD B883 / 384 | 5.c. |
| 6. Corporate trust and agency accounts................ | RCFD B884 / 957,000 | RCFD B885 / 1,285,426,000 | RCFD C001 / 72 | RCFD C002 / 29,845 | 6. |
| 7. Investment management and investment advisory agency accounts................................. | RCFD B886 / 233,000 | RCFD J253 / 3,147,000 | RCFD B888 / 30 | RCFD J254 / 170 | 7. |
| 8. Foundation and endowment trust and agency accounts........................................... | RCFD J255 / 633,000 | RCFD J256 / 3,155,000 | RCFD J257 / 17 | RCFD J258 / 15 | 8. |
| 9. Other fiduciary accounts.................................. | RCFD B890 / 33,819,000 | RCFD B891 / 553,195,000 | RCFD B892 / 149 | RCFD B893 / 1,045 | 9. |
| 10. Total fiduciary accounts (sum of items 4 through 9)............................. | RCFD B894 / 116,595,000 | RCFD B895 / 2,591,847,000 | RCFD B896 / 432 | RCFD B897 / 31,974 | 10. |
| 11. Custody and safekeeping accounts................... | | RCFD B898 / 22,597,253,000 | | RCFD B899 / 30,383 | 11. |

06/201

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

## Schedule RC-T—Continued

| Dollar Amounts in Thousands | (Column A) Managed Assets Amount | (Column B) Non-Managed Assets Amount | (Column C) Number of Managed Accounts Number | (Column D) Number of Non-Managed Accounts Number | |
|---|---|---|---|---|---|
| 12. Fiduciary accounts held in foreign offices (included in items 10 and 11)... | RCFN B900 2,275,000 | RCFN B901 7,896,134,000 | RCFN B902 52 | RCFN B903 11,614 | 12. |
| 13. Individual Retirement Accounts, Health Savings Accounts, and other similar accounts (included in items 5. c and 11)............ | RCFD J259 0 | RCFD J260 18,000 | RCFD J261 0 | RCFD J262 7 | 13. |

| Fiduciary and Related Services Income | Dollar Amounts in Thousands | RIAD | Amount | |
|---|---|---|---|---|
| 14. Personal trust and agency accounts............................................................... | | B904 | 0 | 14. |
| 15. Employee benefit and retirement-related trust and agency accounts: | | | | |
| a. Employee benefit—defined contribution ................................................ | | B905 | 21,000 | 15.a. |
| b. Employee benefit—defined benefit ...................................................... | | B906 | 74,000 | 15.b. |
| c. Other employee benefit and retirement-related accounts........................... | | B907 | 36,000 | 15.c. |
| 16. Corporate trust and agency accounts.......................................................... | | A479 | 267,000 | 16. |
| 17. Investment management and investment advisory agency accounts.................... | | J315 | 2,000 | 17. |
| 18. Foundation and endowment trust and agency accounts................................... | | J316 | 1,000 | 18. |
| 19. Other fiduciary accounts......................................................................... | | A480 | 143,000 | 19. |
| 20. Custody and safekeeping accounts............................................................ | | B909 | 3,387,000 | 20. |
| 21. Other fiduciary and related services income................................................ | | B910 | 0 | 21. |
| 22. Total gross fiduciary and related services income (sum of items 14 through 21) (must equal Schedule RI, item 5.a.) | | 4070 | 3,931,000 | 22. |
| a. Fiduciary and related services income—foreign offices (included in item 22)...................................... | B912 | 867,000 | | 22.a |
| 23. Less: Expenses.................................................................................... | | C058 | | 23. |
| 24. Less: Net losses from fiduciary and related services...................................... | | A488 | | 24. |
| 25. Plus: Intracompany income credits for fiduciary and related services.................. | | B911 | | 25. |
| 26. Net fiduciary and related services income.................................................... | | A491 | | 26. |

**Memoranda**

| Dollar Amounts in Thousands | (Column A) Personal Trust and Agency and Investment Management Agency Accounts RCFD | Amount | (Column B) Employee Benefit and Retirement-Related Trust and Agency Accounts RCFD | Amount | (Column C) All Other Accounts RCFD | Amount | |
|---|---|---|---|---|---|---|---|
| 1. Managed assets held in fiduciary accounts: | | | | | | | |
| a. Noninterest-bearing deposits.................. | J263 | | J264 | | J265 | | M.1.a. |
| b. Interest-bearing deposits....................... | J266 | | J267 | | J268 | | M.1.b. |
| c. U.S.Treasury and U.S.Government agency obligations................................ | J269 | | J270 | | J271 | | M.1.c. |
| d. State, county and municipal obligations..... | J272 | | J273 | | J274 | | M.1.d. |
| e. Money market mutual funds..................... | J275 | | J276 | | J277 | | M.1.e. |
| f. Equity mutual funds.............................. | J278 | | J279 | | J280 | | M.1.f. |
| g. Other mutual funds............................... | J281 | | J282 | | J283 | | M.1.g. |
| h. Common trust funds and collective investment funds................................... | J284 | | J285 | | J286 | | M.1.h. |
| I. Other short-term obligations.................... | J287 | | J288 | | J289 | | M.1.i. |

06/2012

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

## Schedule RC-T—Continued

**Memoranda—Continued**

| | | (Column A) Personal Trust and Agency and Investment Management Agency Accounts | | (Column B) Employee Benefit and Retirement-Related Trust and Agency Accounts | | (Column C) All Other Accounts | | |
|---|---|---|---|---|---|---|---|---|
| Dollar Amounts in Thousands | | RCFD | Amount | RCFD | Amount | RCFD | Amount | |
| 1. j. | Other notes and bonds................... | J290 | | J291 | | J292 | | M.1.j. |
| k. | Investments in unregistered funds and private equity investments........................... | J293 | | J294 | | J295 | | M.1.k. |
| l. | Other common and preferred stocks............ | J296 | | J297 | | J298 | | M.1.l. |
| m. | Real estate mortgages....................... | J299 | | J300 | | J301 | | M.1.m. |
| n. | Real estate............... | J302 | | J303 | | J304 | | M.1.n. |
| o. | Miscellaneous assets........................ | J305 | | J306 | | J307 | | M.1.o. |
| p. | Total managed assets held in fiduciary accounts (for each column, sum of Memorandum items 1.a through 1.o)............ | J308 | | J309 | | J310 | | M.1.p. |

| | | (Column A) Managed Assets | | (Column B) Number of Managed Accounts | | |
|---|---|---|---|---|---|---|
| Dollar Amounts in Thousands | | RCFD | Amount | RCFD | Number | |
| 1. q. | Investments of managed fiduciary accounts in advised or sponsored mutual funds........................ | J311 | | J312 | | M.1.q. |

| | | (Column A) Number of Issues | | (Column B) Principal Amount Outstanding | | |
|---|---|---|---|---|---|---|
| Dollar Amounts in Thousands | | RCFD | Number | | Amount | |
| 2. | Corporate trust and agency accounts: | | | | | |
| a. | Corporate and municipal trusteeships........................ | B927 | | RCFD B928 | | M.2.a. |
| | (1) Issues reported in Memorandum item 2.a that are in default............ | J313 | | RCFD J314 | | M.2.a.(1) |
| b. | Transfer agent, registrar, paying agent, and other corporate agency..... | B929 | | | | M.2.b. |

| | | (Column A) Number of Funds | | (Column B) Market Value of Fund Assets | | |
|---|---|---|---|---|---|---|
| Dollar Amounts in Thousands | | RCFD | Number | RCFD | Amount | |
| 3. | Collective investment funds and common trust funds: | | | | | |
| a. | Domestic equity....................................... | B931 | 127 | B932 | 113,002,000 | M.3.a. |
| b. | International/Global equity.............................. | B933 | 81 | B934 | 34,719,000 | M.3.b. |
| c. | Stock/Bond blend....................................... | B935 | 94 | B936 | 7,137,000 | M.3.c. |
| d. | Taxable bond.......................................... | B937 | 85 | B938 | 37,272,000 | M.3.d. |
| e. | Municipal bond........................................ | B939 | 1 | B940 | 0 | M.3.e. |
| f. | Short-term investments/Money market.................... | B941 | 12 | B942 | 41,374,000 | M.3.f. |
| g. | Specialty/Other....................................... | B943 | 19 | B944 | 1,653,000 | M.3.g. |
| h. | Total collective investment funds (sum of Memorandum items 3.a through 3.g)........... | B945 | 419 | B946 | 235,157,000 | M.3.h. |

06/2012

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

FFIEC 031
Page 82 of 84
RC-67

## Schedule RC-T—Continued

| Dollar Amounts in Thousands | (Column A) Gross Losses Managed Accounts | | (Column B) Gross Losses Non-Managed Accounts | | (Column C) Recoveries | | |
|---|---|---|---|---|---|---|---|
| | RIAD | Amount | RIAD | Amount | RIAD | Amount | |
| 4. Fiduciary settlements, surcharges, and other losses: | | | | | | | |
| a. Personal trust and agency accounts.................................... | B947 | | B948 | | B949 | | M.4.a. |
| b. Employee benefit and retirement-related trust and agency accounts........................................................................... | B950 | | B951 | | B952 | | M.4.b. |
| c. Investment management and investment advisory agency accounts........................................................................... | B953 | | B954 | | B955 | | M.4.c. |
| d. Other fiduciary accounts and related services.................... | B956 | | B957 | | B958 | | M.4.d. |
| e. Total fiduciary settlements, surcharges, and other losses (sum of Memorandum items 4.a through 4.d) (sum of columns A and B minus column C must equal Schedule RC-T, item 24)................................................... | B959 | | B960 | | B961 | | M.4.e. |

Person to whom questions about Schedule RC-T—Fiduciary and Related Services should be directed:

Name and Title (TEXT B962)

E-mail Address (TEXT B926)

Telephone: Area code/phone number/extension (TEXT B963)

FAX: Area code/phone number (TEXT B964)

06/2012

**The Bank of New York Mellon**
Legal Title of Bank

FDIC Certificate Number: 00639

## Schedule RC-V—Variable Interest Entities

| Dollar Amounts in Thousands | (Column A) Securitization Vehicles | | (Column B) ABCP Conduits | | (Column C) Other VIEs | | |
|---|---|---|---|---|---|---|---|
| | RCFD | Amount | RCFD | Amount | RCFD | Amount | |
| 1. Assets of consolidated variable interest entities (VIEs) that can be used only to settle obligations of the consolidated VIEs: | | | | | | | |
| a. Cash and balances due from depository institutions | J981 | 0 | J982 | 0 | J983 | 0 | 1.a. |
| b. Held-to-maturity securities | J984 | 0 | J985 | 0 | J986 | 0 | 1.b. |
| c. Available-for-sale securities | J987 | 0 | J988 | 0 | J989 | 0 | 1.c. |
| d. Securities purchased under agreements to resell | J990 | 0 | J991 | 0 | J992 | 0 | 1.d. |
| e. Loans and leases held for sale | J993 | 0 | J994 | 0 | J995 | 0 | 1.e. |
| f. Loans and leases held for investment | J996 | 0 | J997 | 0 | J998 | 0 | 1.f. |
| g. Less: Allowance for loan and lease losses | J999 | 0 | K001 | 0 | K002 | 0 | 1.g. |
| h. Trading assets (other than derivatives) | K003 | 0 | K004 | 0 | K005 | 0 | 1.h. |
| i. Derivative trading assets | K006 | 0 | K007 | 0 | K008 | 0 | 1.i. |
| j. Other real estate owned | K009 | 0 | K010 | 0 | K011 | 0 | 1.j. |
| k. Other assets | K012 | 0 | K013 | 0 | K014 | 0 | 1.k. |
| 2. Liabilities of consolidated VIEs for which creditors do not have recourse to the general credit of the reporting bank: | | | | | | | |
| a. Securities sold under agreements to repurchase | K015 | 0 | K016 | 0 | K017 | 0 | 2.a. |
| b. Derivative trading liabilities | K018 | 0 | K019 | 0 | K020 | 0 | 2.b. |
| c. Commercial paper | K021 | 0 | K022 | 0 | K023 | 0 | 2.c. |
| d. Other borrowed money (exclude commercial paper) | K024 | 0 | K025 | 0 | K026 | 0 | 2.d. |
| e. Other liabilities | K027 | 0 | K028 | 0 | K029 | 0 | 2.e. |
| 3. All other assets of consolidated VIEs (not included in items 1.a through 1.k above) | K030 | 0 | K031 | 0 | K032 | 0 | 3. |
| 4. All other liabilties of consolidated VIEs (not included in items 2.a through 2.e above) | K033 | 0 | K034 | 0 | K035 | 0 | 4. |

03/201

# WORLD INTELLECTUAL PROPERTY ORGANIZATION

## SPECIAL UNION FOR THE INTERNATIONAL CLASSIFICATIONS OF GOODS AND SERVICES FOR THE PURPOSE OF THE REGISTRATION OF MARKS
## (NICE UNION)

## 1.    XNCL Master Files Specification

| Date | By | Version | Status | Modification |
|------|-----|---------|--------|--------------|
| June 22, 2011 | VANESSA MEDINA VELASQUEZ | 0.1 | Draft | Creation |
| August 10, 2011 | Dustin Phillips | 0.2 | | Meeting with PF |
| August 15, 2011 | Dustin Phillips | 0.3 | PF Approved | Comments from PF |
| March 13, 2013 | Sébastien Fievet | 1.0 | Final | QA |
| November 11, 2013 | Patrick Fiévet | 1.1 | Revised | Add Fixed texts |
| February 11, 2015 | Olivier Collioud | 3.10 | Revised | Removal of Edition-Version element in the taxonomy. Addition of "edition" and "version" mandatory attributes to the root element of all master files. Split taxonomy modifications. |
| October 21, 2016 | Olivier Collioud | 3.20 | PF Approved | Change name of Modifications and Taxonomy files. |
| March 8, 2017 | Grégoire Isoz, Frédéric Hogbé-Nlend | 3.21 | Revised | Change Zip files to XML files. Addition of "targetKind" mandatory attribute for ClassLink, GoodOrServiceLink and HierarchyGroupLink. Removal of the text content for HierarchyGroupLink Decouple optional files for individual loading |

BILLING CODES:  4810-33-P; 6714-01-P

**DEPARTMENT OF THE TREASURY**
**Office of the Comptroller of the Currency**
**12 CFR Parts 12 and 151**
**[Docket ID OCC-2017-0013]**
**RIN 1557-AE24**

**FEDERAL DEPOSIT INSURANCE CORPORATION**
**12 CFR Part 344**
**RIN 3064-AE64**

**SECURITIES TRANSACTION SETTLEMENT CYCLE**

**AGENCY:** Office of the Comptroller of the Currency, Treasury ("OCC"); and Federal Deposit

Insurance Corporation ("FDIC").

**ACTION:** Final rule.

**SUMMARY:** The OCC and the FDIC ("Agencies") are adopting a final rule to shorten the

standard settlement cycle for securities purchased or sold by national banks, federal savings

associations, and FDIC-supervised institutions. The Agencies' final rule is consistent with an

industry-wide transition to a two business-day settlement cycle, which is designed to reduce

settlement exposure and align settlement practices across all market participants.

**DATES:** This final rule is effective [INSERT FIRST CALENDAR QUARTER DATE

FOLLOWING 30 DAYS FROM DATE OF PUBLICATION IN FEDERAL REGISTER].

**FOR FURTHER INFORMATION CONTACT:**

OCC: David Stankiewicz, Special Counsel, Securities and Corporate Practices Division, (202)

649-5510; Daniel Perez, Attorney, Legislative and Regulatory Activities Division, (202) 649-

5490 or, for persons who are deaf or hearing-impaired, TTY, (202) 649-5597; or Patricia Dalton,

Technical Expert, Asset Management Group, Market Risk, at (202) 649-6360.

FDIC: Thomas F. Lyons, Chief, (202) 898-6850; Michael W. Orange, Senior Trust Examination Specialist, (678) 916-2289, Policy & Program Development, Risk Management Policy Branch, Division of Risk Management Supervision; Annmarie H. Boyd, Counsel, (202) 898-3714; Benjamin J. Klein, Counsel, (202) 898-7027, Bank Activities Unit, Supervision and Legislation Branch, Legal Division.

**SUPPLEMENTARY INFORMATION:**

## I.   Background

On September 5, 2017, the securities industry in the United States transitioned from a standard securities settlement cycle of three business days after the date of the contract, commonly known as "T+3," to a two-business day standard, or "T+2." The transition was the culmination of a multi-year securities industry initiative and rule changes implemented by the U.S. Securities and Exchange Commission and securities self-regulatory organizations (such as the Financial Industry Regulatory Authority and the Municipal Securities Rulemaking Board). In connection with the transition to T+2, on June 9, 2017, the OCC issued Bulletin 2017-22, which notified national banks, federal savings associations ("FSAs"), federal branches, and federal agencies (together, "OCC-supervised institutions") that they should be in compliance with T+2 as of September 5, 2017. The FDIC issued similar guidance applicable to FDIC-supervised institutions[1] through Financial Institution Letter 32-2017 on July 26, 2017.

Regulations governing recordkeeping and confirmation requirements for the securities transactions of national banks and FSAs, both for the bank's own account and for customers, are

---

[1] "FDIC-supervised institution" means any insured depository institution for which the FDIC is the appropriate Federal banking agency pursuant to section 3(q) of the Federal Deposit Insurance Act, 12 U.S.C. 1813(q). 12 CFR 344.3(h). Pursuant to section 3(q), the FDIC is the appropriate Federal banking agency with respect to: (1) any State nonmember insured bank; (2) any foreign bank having an insured branch; and (3) any State savings association. 12 U.S.C. 1813(q)(2).

set out in parts 12 and 151 of the OCC's regulations, respectively. Regulations governing the same for FDIC-supervised institutions are set out in part 344 of the FDIC's regulations. These regulations require that banks generally not effect or enter into a contract for the purchase or sale of a security that provides for payment of funds and delivery of securities later than the third business day after the date of the contract, unless otherwise expressly agreed to by the parties at the time of the transaction.

## II.   Notice of Proposed Rulemaking

On September 11, 2017, the Agencies published in the Federal Register a notice of proposed rulemaking that would amend regulations applicable to OCC-supervised institutions and FDIC-supervised institutions (together, "banks") by aligning those regulations with T+2.[2] In the notice of proposed rulemaking, the Agencies proposed to amend their respective regulations by directly changing the settlement period applicable to banks from three business days to two. The Agencies also proposed an alternative approach, which would achieve the same immediate result but operate by tying the settlement period applicable to banks to the "standard settlement cycle followed by registered broker dealers in the United States."

The Agencies received three responses to their request for comment. The Investment Company Institute ("ICI") and the Securities Industry and Financial Markets Association ("SIFMA") both "strongly" supported the proposal as a path to aligning the Agencies' regulations with those applicable to other market participants in the United States. A third commenter, an individual, also expressed support for the final rule. Both ICI and SIFMA expressed a preference for the alternative approach. After considering these comments, the Agencies decided to adopt the alternative approach in order to maintain alignment more readily

---

[2] 82 FR 42619 (Sep. 11, 2017).

3

between the settlement period applicable to banks and the standard settlement cycle followed by registered broker dealers in the United States.

### III.    <u>Description of the Final Rule</u>

The final rule will require banks to settle most securities transactions within the number of business days in the "standard settlement cycle followed by registered broker dealers in the United States" unless otherwise agreed to by the parties at the time of the transaction. Banks will be able to determine the number of business days in the standard settlement cycle followed by registered broker dealers in the United States by referencing SEC Rule 15c6-1, 17 CFR 240.15c6-1(a). Effective September 5, 2017, and as of the date of publication of this final rule, the standard settlement cycle followed by registered broker dealers in the United States is two business days after the date of the contract.

The final rule amends the OCC and FDIC regulations at parts 12, 151, and 344, which govern the recordkeeping and confirmation requirements for bank securities transactions. In order to accommodate the change described above, the Agencies made certain additional, purely editorial changes to the language of these parts. The additional changes were intended to make the regulations easier to follow and understand in light of the revisions necessary to implement the alternative approach.

The effective date for this final rule is [INSERT FIRST CALENDAR QUARTER DATE FOLLOWING 30 DAYS FROM DATE OF PUBLICATION IN FEDERAL REGISTER.] The Agencies understand that, consistent with the industry's transition to T+2, banks are already in compliance with a two-day settlement standard as a practical matter.

### IV.    <u>Regulatory Analysis</u>

<u>Paperwork Reduction Act</u>

| Number of Loans* | | | | | | | |
|---|---|---|---|---|---|---|---|
| Assessment Area | Home Mortgage | Small Business | Small Farm | Community Development | Total | %State Loans | %State Deposits |
| DFW AA | 2,046 | 6,209 | 119 | 60 | 8,434 | 93.7 | 96.6 |
| Van Zandt non-MSA AA | 223 | 293 | 47 | 1 | 564 | 6.2 | 3.4 |
| Statewide/Regional | | | | 4 | 4 | 0.1 | |
| Total | 2,269 | 6,502 | 166 | 65 | 9,002 | 100.0 | 100.0 |

*The tables present the data for all assessment areas. The narrative below addresses performance in full-scope areas only.

| Dollar Volume of Loans ($000) * | | | | | | | |
|---|---|---|---|---|---|---|---|
| Assessment Area | Home Mortgage | Small Business | Small Farm | Community Development | Total | %State* Loans | %State Deposits |
| DFW AA | 567,958 | 803,040 | 11,633 | 67,955 | 1,450,586 | 94.8 | 96.6 |
| Van Zandt non-MSA AA | 42,465 | 18,075 | 4,263 | 1,707 | 66,510 | 4.3 | 3.4 |
| Statewide/Regional | | | | 12,489 | 12,489 | 0.9 | |
| Total | 610,423 | 821,115 | 15,896 | 82,151 | 1,529,585 | 100.0 | 100.0 |

*The tables present the data for all assessment areas. The narrative below addresses performance in full-scope areas only.

During the evaluation period, the bank originated 2,269 home mortgage loans totaling $610.4 million, 6,502 small business loans totaling $821 million, 166 loans to small farms totaling $15.9 million, and 65 CD loans totaling $82.2 million. As of our evaluation date, 93.7 percent of the loans originated during the evaluation period were concentrated in the DFW AA. Similarly, 96.6 percent of total deposits were in the DFW AA. The deposit and lending concentrations within this AA reflect the principal location of the bank's commercial and retail customer base, branch locations, and the bank's lending focus.

Market share information for loans and deposits show that ANBTX operates in a highly competitive banking environment. As of June 30, 2021, ANBTX ranked 14th out of 159 institutions in deposit market share in the DFW AA. Operating 25 locations in this AA, the bank had a deposit market share of 1.01 percent. Collectively, Bank of America, N.A., JPMorgan Chase Bank, N.A., Wells Fargo Bank, N.A. and Texas Capital Bank dominate the market with 68.6 percent of total deposit market share.

According to 2021 aggregate HMDA data, ANBTX achieved a 0.25 percent market share of mortgage loans of mortgage loans in this AA, by number of loans, ranking 83rd of 1,121 reporting lenders. The market share by dollar volume was similar at 0.24 percent, which is below deposit market share representation. Given the highly competitive home mortgage market in the AA from specialized home mortgage companies and state and nationwide banks that offer a wider selection of mortgage products, the lending activity for home mortgages is adequate. The top five mortgage lenders accounted for approximately 20 percent of mortgage production by count. The top five lenders are Rocket Mortgage, Wells Fargo Bank, N.A., Lakeview Loan Servicing, LLC, JPMorgan Chase Bank, N.A, and Freedom Mortgage Corporation.

ANBTX's small business lending activity is excellent given the significant level of competition within the DFW AA from national and regional lenders. The 2021 Peer Small Business Data indicates that ANBTX achieved a 1.01 percent market share of small loans to businesses in this AA, by number of loans, ranking 19th among 339 lenders. The market share by dollar volume was 3.2 percent, which exceeds the deposit market share. The top three lenders for small business lending were American

We also considered information from five previously conducted community contacts for the purpose of determining a community profile, identifying opportunities for participation by local financial institutions, and determining the performance of local financial institutions in meeting the credit needs of the community. Contacts included nonprofit/government entities involved in affordable housing and economic development, as well as a local food bank. Community contacts indicated that affordable housing is the biggest need in the DFW AA. Housing prices have risen at a faster pace than working class wages, resulting in a significant need for affordable housing options for LMI individuals. According to Moody's Analytic Report, average housing prices have steadily risen with the average home in the DPI MD costing $271.7 thousand, $282 thousand, and $324 thousand during the years of 2019, 2020, and 2021, respectively. For the FWAG MD, average housing costs $250 thousand, $261 thousand, and $301 thousand, respectively. Contacts also communicated the need for various financial literacy programs that benefit LMI individuals as well as local small businesses, with a particular emphasis on educating the public on lower cost alternatives to payday lenders. One contact from a nonprofit indicated that low-income individuals served by the organization frequently seek financial advice from their organization due to the established trust. As such, the contact emphasized that local banks could partner with certain community groups for hosting financial literacy and money management programs. Significant needs within the MSA include:

- Affordable Housing;
- Financial education and personal money management courses tailored to LMI individuals;
- Small Business Financing;
- Partnerships and investments in local Certified Development Financial Institutions (CDFI);
- Affordable loan products for contractors that support building affordable housing and rehabilitation of homes in LMI income geographies;
- Investments in federally designated Opportunity Zones to drive capital to targeted census tracts.
- Job training programs, including on-the-job training programs

The following table provides a summary of the demographics that include housing, business, and farm information for the DFW AA.

## DFW AA

| Table A – Demographic Information of the Assessment Area | | | | | | |
|---|---|---|---|---|---|---|
| Assessment Area: American NB of Texas - DFW AA | | | | | | |
| Demographic Characteristics | # | Low % of # | Moderate % of # | Middle % of # | Upper % of # | NA* % of # |
| Geographies (Census Tracts) | 1,114 | 14.4 | 28.0 | 26.1 | 30.9 | 0.6 |
| Population by Geography | 5,700,071 | 12.1 | 27.8 | 27.6 | 32.3 | 0.1 |
| Housing Units by Geography | 2,182,383 | 12.5 | 26.4 | 28.1 | 32.8 | 0.2 |
| Owner-Occupied Units by Geography | 1,176,577 | 5.9 | 22.1 | 29.9 | 41.9 | 0.1 |
| Occupied Rental Units by Geography | 832,658 | 19.9 | 31.6 | 26.2 | 21.9 | 0.4 |
| Vacant Units by Geography | 173,148 | 21.7 | 30.1 | 24.4 | 23.4 | 0.3 |
| Businesses by Geography | 623,117 | 7.2 | 19.7 | 26.6 | 45.7 | 0.8 |
| Farms by Geography | 10,306 | 5.4 | 19.2 | 29.9 | 45.0 | 0.5 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Family Distribution by Income Level | 1,382,086 | 24.7 | 16.9 | 18.1 | 40.2 | 0.0 |
| Household Distribution by Income Level | 2,009,235 | 24.9 | 16.9 | 17.8 | 40.5 | 0.0 |
| Median Family Income MSA - 19124<br>Dallas-Plano-Irving, TX | | $71,149 | Median Housing Value | | | $174,005 |
| Median Family Income MSA - 23104<br>Fort Worth-Arlington-Grapevine, TX | | $69,339 | Median Gross Rent | | | $973 |
| | | | Families Below Poverty Level | | | 12.3% |

*Source: 2015 ACS and 2020 D&B Data*
*Due to rounding, totals may not equal 100.0%*
*(\*) The NA category consists of geographies that have not been assigned an income classification.*

## Scope of Evaluation in Texas

Our scope for the state of Texas included a full-scope review of the DFW AA. As noted above, our analysis of ANBTX's performance in Dallas, Tarrant, Johnson, Collin, Hunt, Kaufman, and Rockwall Counties was combined, analyzed, and presented as one AA. This AA represented the most predominant deposit concentration, lending activity, and branch distribution. The Van Zandt non-MSA AA is not located within an MSA, and ANBTX operates only two branch locations with 3.4 percent of its total deposits in the AA. Therefore, the Van Zandt non-MSA AA was selected for a limited-scope review.

Our analysis of lending activity focused on home mortgage and small business loans, which included PPP loan originations in 2020 and 2021. Due to the lack of business revenue information for PPP loans reported on the CRA LAR, we placed more weight on home mortgage lending for the income distribution performance test. In the remaining areas, we placed the more weight on small business lending which is the bank's largest product by number of loans and primary lending focus.

## CONCLUSIONS WITH RESPECT TO PERFORMANCE TESTS IN TEXAS

## LENDING TEST

The bank's performance under the Lending Test in Texas is rated High Satisfactory.

## Conclusions for Area Receiving a Full-Scope Review

Based on the full-scope review, the bank's performance in the DFW AA was good.

## Lending Activity

Lending levels within the DFW AA reflected good responsiveness to the AA's credit needs. The bank originated a good volume of loans in the AA relative to its capacity based on deposits, competition, market presence, and business strategy. The proportion of reported bank loans in each AA was comparable to the proportion of bank deposits in the respective AAs. Although small farm loans reported on the CRA LAR are included below, we identified small business loan products and home mortgages as the primary lending products and analyzed those two lending products for purposes of the Lending Test.